Crystal Foley (SBN 224627)
cfoley@simmonsfirm.com
**Simmons Hanly Conroy LLC**
100 N. Sepulveda Blvd., Suite 1350
Los Angeles, CA 90245
Phone: (310) 322-3555
Facsimile:  (310) 322-3655

Paul J. Hanly, Jr.
(*pro hac vice* to be submitted)
phanly@simmonsfirm.com
Mitchell M. Breit
(*pro hac vice* to be submitted)
mbreit@simmonsfirm.com
**Simmons Hanly Conroy LLC**
112 Madison Avenue
New York, NY 10016-7416
Telephone:  (212) 784-6400
Facsimile:  (212) 213-5949

Attorneys for Plaintiff                    Additional Counsel on Signature Page

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

SHERIDA JOHNSON on behalf of herself
and all others similarly situated,

                              Plaintiff,

         v.

NISSAN NORTH AMERICA, INC. AND
NISSAN MOTOR CO., LTD.,

                              Defendants.

Case No.:

**CLASS ACTION COMPLAINT**
**DEMAND FOR JURY TRIAL**

## INTRODUCTION

        Plaintiff Sherida Johnson ("Plaintiff") on behalf of herself and all others similarly situated, brings this action against Defendants Nissan North America, Inc. and Nissan Motor Co., Ltd. (collectively "Nissan"). Plaintiff's allegations herein are based upon personal knowledge as to her own acts and experiences in this matter, the investigation of counsel, and upon information and belief as to all other matters.

### I.    SUMMARY OF CASE

        1.        Historically, automobile sunroofs have been modestly sized, spanning just a small

1

portion of the roof over the driver and front passenger seats.

2.     Starting in the mid-2000s, automobile manufacturers expanded sunroofs in size so that now a sunroof (*i.e.*, sheet(s) of glass) accounts for nearly the entire roof of a vehicle.  These expanded sunroofs are often referred to as "panoramic."

3.     While panoramic sunroofs are aesthetically pleasing, and thus command a premium price, they also pose new and significant engineering challenges. Replacing metal portions of automobile roofs with large plates of glass requires precision in the strengthening, attachment, and stabilization of the glass.

4.     Nissan and other manufacturers failed to meet these engineering challenges, with at least three manufacturers issuing safety recalls due to the panoramic sunroofs' propensity to spontaneously shatter.[1]

5.     The shattering events are so powerful that startled drivers compare it to the sound of a gunshot, after which glass fragments rain down upon the occupants of the vehicle, sometimes while driving at highway speeds.

6.     Nissan does not warn current or potential drivers of the danger(s) associated with the panoramic sunroof feature.

7.     Nissan continues to sell and lease its vehicles with this panoramic sunroof feature to consumers.

8.     Nissan does not disclose any known or potential defect nor the known or potential danger(s) of the panoramic sunroof to current or potential Nissan vehicle owners.

9.     Nissan knew or should have known about this problem since at least October 2008 due to, for example, the NHTSA's July 25, 2014 letter to Nissan informing Nissan of the

---

[1] Nissan refers to the enlarged sunroof feature as Panoramic Moonroof, Power Panoramic Moonroof, Dual Power Panoramic Moonroof, Dual Panorama Moonroof, and Dual Opening Glass Moonroof depending upon the vehicle model. Regardless of the vehicle model, all will be referred to as "panoramic sunroofs" or "defective sunroofs" in this complaint.

CLASS ACTION COMPLAINT

ongoing investigation into "spontaneous sunroof shattering" and requesting information from Nissan about its panoramic sunroofs (https://static.nhtsa.gov/odi/inv/2014/INIM-EA14002-63590.pdf; *accessed December 21,2016*); the Nissan dealer field reports concerning "shattered sunroof glass" and "sunroof burst while driving" produced by Nissan on 9-5-2014 in response to the NHTSA's investigation inquiry (https://static.nhtsa.gov/odi/inv/2014/INRD-EA14002-60025P.pdf; *accessed December 21, 2016*); the consumer complaints relating to defective and "exploded" sunroofs that Nissan produced on 9-5-2014 in response to the NHTSA's investigation inquiry (https://static.nhtsa.gov/odi/inv/2014/INRD-EA14002-60026P.pdf; *accessed December 21, 2016*); and the forty-seven (47) NHTSA complaints relating to the shattering of Nissan vehicle sunroofs lodged from October 29, 2008 through April 28, 2015 (http://www-odi.nhtsa.dot.gov/owners/SearchSafetyIssues *accessed December 21, 2016*).

10.    Nissan's conduct violates federal and California consumer protection and warranty laws.  On behalf of the California State Class that Plaintiff proposes to represent, Plaintiff seeks an award of damages and appropriate equitable relief, including an order enjoining Nissan from continuing to sell vehicles with defective panoramic sunroofs and requiring Nissan to disclose the defect to current owners of the Class Vehicles (defined below) and repair their vehicles with non-defective panoramic sunroofs.

## II.    PARTIES

11.    Sherida Johnson is a citizen and resident of Murrieta, Riverside County, California.

12.    Defendant Nissan North America, Inc. is a California corporation with its headquarters and principal place of business in Franklin, Tennessee.

13.    Defendant Nissan Motor Company, Ltd., along with its subsidiaries, develops, manufactures, and sells automotive vehicles worldwide.  Nissan's global headquarters are

located in Yokohama, Japan.

14.     At all times relevant to this action, Nissan designed, manufactured, marketed, distributed, and warranted the vehicles at issue in the State of California and throughout the United States.

### III.     JURISDICTION AND VENUE

15.     This Court has jurisdiction over this class action under the Class Action Fairness Act, 23 U.S.C. § 1332(d). There are at least one hundred members of the proposed class(es). The aggregated claims of the individual class members exceed the sum value of $5,000,000.00, exclusive of interest and costs.

16.     This Court may exercise jurisdiction over Nissan because it is registered to conduct business in California (*e.g.*, California Secretary of State Entity Number: C0403111), it has sufficient minimum contacts in California, and it intentionally avails itself of the markets within California through the promotion, sale, marketing, and distribution of its vehicles, thus rendering jurisdiction by this Court proper and necessary.

17.     Subject-matter jurisdiction also arises under Magnuson-Moss Warranty Act claims asserted under 15 U.S.C. § 2301, *et seq*.

18.   Venue is proper in this District under 28 U.S.C. § 1391 because Nissan transacts business in this District, and a substantial part of the events or omissions giving rise to Plaintiff's and proposed Class Members' claims occurred in this District. Additionally, Nissan distributes in this district, receives substantial compensation and profits from sales, maintenance and service of affected vehicles in this District, and has and continues to conceal and make material omissions in this District so as to subject it to *in personam* jurisdiction in this District.

## IV.   SUBSTANTIVE ALLEGATIONS

### A.  The Nissan Panoramic Sunroof Defect

19.    Defendants manufacture, market, and distribute mass produced automobiles in the United States under the Nissan brand name.

20.    The Nissan automobile models that are the subject of this case are the 2008-present Rogue, Maxima, Sentra, Pathfinder, and Altima models; 2009-present Murano models; and 2011-present Juke models with factory-installed panoramic sunroofs (collectively, the "Class Vehicles").  Plaintiff anticipates amending the Class Vehicles definition upon Nissan identifying in discovery all of its vehicles manufactured and sold with the panoramic sunroof feature.

21.    Starting in at least the 2008 model year, Nissan introduced vehicles with an optional upgrade of a factory-installed panoramic sunroof.

22.    At that time, panoramic sunroofs were relatively new; these sunroofs are both wider and longer than traditional sunroofs, covering most of the vehicle's roof.  See an example description from Nissan's marketing of the "massive" feature in its 2017 Nissan Maxima:



(https://www.nissanusa.com/buildyournissan/vehicle-

images/2017/MAX/XGC70NIC051C0/13ca05699b6f32dda734c4ae53b91dba/Maxima/SL/Dual-

Panel-Panoramic-Moonroof/Interior; *accessed December 22, 2016*).

23.    Nissan generally markets the panoramic sunroofs as a luxury upgrade and charges several thousand dollars for the upgrade.  See an example advertisement for the panoramic sunroof feature as part of the "Premium" package offered by Nissan in its 2016 Nissan Murano:



(http://cdn.dealereprocess.com/cdn/brochures/nissan/2016-murano.pdf; *accessed December 22, 2016*).

24.    The actual material cost of the panoramic sunroofs is relatively low, making the

6

option one of the most profitable features in the automotive industry.

25.     Panoramic sunroofs are made of tempered or laminated glass that attaches to tracks, which in turn are set within a frame attached to the vehicle.

26.     Most panoramic sunroofs, including those offered by Nissan, include a retractable sunshade.

27.     The panoramic sunroofs in all of Nissan's models are substantially similar in design and manufacture. Examples of Nissan's panoramic sunroofs appear in the photographs below:

a.     **2008 Nissan Maxima**



(http://www.motorologist.com/wp-content/uploads/2008-Nissan-Maxima-brochure.pdf; *accessed December 22, 2016*).

//

//

//

//

//

//

//

//

CLASS ACTION COMPLAINT

b.   **2014 Nissan Pathfinder**



(http://blog.tischerauto.com/tag/2014-nissan-pathfinder/; *accessed December 22, 2016*).

c.   **2015 Nissan Rogue**

THE SUN, THE MOON, THE SKY, THE VIEW...



The available Power Panoramic Moonroof means that no matter where you're sitting in the 2015 Nissan Rogue®, you've got a window seat.

(http://www.nissanofreno.com/2015-reno-nissan-models/nissan-rogue/features-interior.html; *accessed December 22, 2016*).

d.   **2016 Nissan Murano**



(http://www.colenissan.com/New-2016-Nissan-Murano-Bluefield-WV; *accessed December 22, 2016*).

        e.     **2017 Nissan Rogue**



**LET EVERYONE TAKE IN A COMMANDING VIEW**

With an available Power Panoramic Moonroof that opens up even to the rear seats, everyone onboard can have breathtaking vistas of the sky and stars above.

(https://www.nissanusa.com/crossovers/rogue/features; *accessed December 22, 2016*).

       28.    Panoramic sunroofs, like these, present manufacturing, design, and safety challenges for manufacturers because the large plates of glass take up much of the surface area of

the vehicle's roof.

29.    One of the challenges is the material make-up of the glass. Whereas some manufacturers, such as Volvo and Honda, have used a *laminated* glass, other manufacturers, such as Nissan, Ford, Kia, Hyundai, and Volkswagen, have opted to install panoramic sunroofs with *tempered* glass that features large areas of ceramic paint.

30.    In the automotive industry, tempered or toughened glass is made generally in the same manner: a piece of annealed glass is shaped and cut as to original equipment manufacturing ("OEM") standards. The glass is heated and then rapidly cooled, *i.e.*, tempered. The tempering process creates an outer layer of compression shrink-wrapped around the middle of the glass that is constantly pressing outwards, otherwise known as causing tension or tensile force. The compressive and tensile layers create a stronger piece of glass as compared to non-tempered glazing. If the compressive layer is compromised, however, the entire piece of glass fails catastrophically, and often explosively.

31.    The problems with panoramic sunroofs are compounded by automakers', including Nissan's, use of thinner glass. Nissan, as well as other manufacturers, use thinner glass in panoramic sunroofs to save weight and thus improve fuel efficiency because Nissan, like other automobile manufacturers, are under mandates to improve fuel efficiency. Thinner glass, however, is very difficult to temper properly (especially when thicknesses are 4mm or less) as the compressive layers are thinner, increasing the probability for the glass to be compromised and result in catastrophic failure.

32.    Additionally, the tempered glass used in Nissan sunroofs in the Class Vehicles features a ceramic paint applied prior to tempering. Automotive ceramic paint or ceramic enamels are composed of fine powders of low melting glass frit fluxes (ground glass), pigments, and other additive oxides, sulfides, or metals. After application of the ceramic enamel, the glass

CLASS ACTION COMPLAINT

is then tempered, as described above.  These ceramic enamels are applied on the top around the edges of panoramic sunroof glazing and serve aesthetic and functional purposes.  The ceramic paint area appears as a "black band" along the edge of the glass.

33.     Ceramic enamels are known "adulterants" in automotive glass tempering and these adulterants significantly weaken the structural strength and integrity of the Class Vehicles' tempered panoramic sunroof glazing.  Among other factors, ceramic enamels compromise glass strength because: (1) the enamels have different thermal expansion coefficients than the glass substrates (the glass and the paint expand at different rates), resulting in residual stress between the ceramic enamel and the glass substrate; and (2) the glass frit will ion exchange with the glass substrate lessening or eliminating the compressive layer above the tensile region thereby significantly weakening it.

34.     The ceramic paint area was relatively small in conventional sunroofs, but ceramic paint areas have become larger with the advent of panoramic sunroofs and the result is that the glass has become progressively weaker – more likely to spontaneously burst or explode – and, for the unsuspecting driver and passengers, more dangerous.

35.     In 2013, the Korea Automobile Testing & Research Institute ("KATRI"), a vehicle safety testing institute, concluded that the enamel used for ceramic paint areas in panoramic sunroofs like those installed in Nissan vehicles impairs the strength of the glass, making the glass not only less durable than the usual toughened glass, but also less durable than ordinary glass.

36.     Following KATRI's report, an Informal Working Group on Panoramic Sunroof Glazing was established by the United Nations Economic Commission for Europe to evaluate the safety of panoramic sunroofs.  The Working Group is chaired by a representative from KATRI and was assembled to assess whether to amend the UN regulations on safety glazing. At the end

11

CLASS ACTION COMPLAINT

of June 2016, the Working Group confirmed that conventional automotive glass enamels weaken the mechanical strength of panoramic sunroof glazing.

37.     Another challenge presented by the panoramic sunroofs is the need to ensure the sunroof glass is fastened to the vehicle with a sufficient degree of tightness.  Nissan and other manufacturers seek to fasten the sunroof in a manner that reduces road and wind noise, as well as to make the sunroofs less susceptible to leaking rainwater.  At the same time, the sunroof may be weakened with the application of pressure, as flexing and vibration caused during ordinary driving can impose stress and ultimately lead to shattering the glass.

38.     In the Nissan models at issue, the compromised tempered glass cannot withstand the pressures and flexing that the sunroof frame and vehicle demand, even when the vehicle and sunroof are brand new.  The consequence is that under ordinary driving conditions, and in some instances when the vehicle is parked or not otherwise in motion, the glass spontaneously shatters.

**B.  Consumer Complaints Reveal the Magnitude of the Defect**

39.     At least ninety Nissan vehicle owners reported an incident of their panoramic sunroof shattering to the NHTSA.  A brief summary of those consumer complaints appear below:

| Date of NHTSA Complaint | Date of Incident | Model Year | Nissan Model | NHTSA ID Number | NHTSA Consumer Complaint Excerpt |
|---|---|---|---|---|---|
| 12/1/2016 | 12/7/2015 | 2010 | Rogue | 10929496 | "sunroof of my car (while I was driving) exploded!" |
| 11/22/2016 | 11/22/2016 | 2013 | Altima | 10927522 | "sunroof exploded" |
| 11/16/2016 | 11/16/2016 | 2012 | Murano | 10926518 | "sunroof had exploded" |
| 11/7/2016 | 10/18/2016 | 2011 | Altima | 10924701 | "sunroof exploded" |
| 11/3/2016 | 11/3/2016 | 2016 | Murano | 10924150 | "moon roof exploded/shattered" |

CLASS ACTION COMPLAINT

| 10/26/2016 | 9/21/2016 | 2012 | Altima | 10919166 | "sunroof glass was exploded" |
| 10/19/2016 | 10/11/2016 | 2012 | Murano | 10917415 | "sunroof of my 2012 Nissan Murano exploded" |
| 10/7/2016 | 7/20/2016 | 2014 | Maxima | 10914504 | "sunroof exploded twice" |
| 10/4/2016 | 8/4/2016 | 2014 | Murano | 10913846 | "opened shade to sunroof and found that glass had exploded upward and shattered" |
| 10/3/2016 | 12/7/2015 | 2010 | Rogue | 10913565 | "thought someone shot at my car!...it was my sunroof that was coming apart" |
| 9/8/2016 | 9/3/2016 | 2014 | Rogue | 10904604 | "sunroof explodes, shatters" |
| 8/27/2016 | 8/27/2016 | 2010 | Maxima | 10901989 | "panoramic sunroof exploded outward" |
| 8/5/2016 | 7/21/2016 | 2016 | Murano | 10893526 | "sunroof exploded" |
| 7/23/2016 | 7/8/2016 | 2015 | Altima | 10887973 | "sunroof exploded/shattered for no apparent reason" |
| 6/22/2016 | 6/21/2016 | 2015 | Rogue | 10875763 | "panoramic sunroof had shattered into little pieces of glass" |
| 6/20/2016 | 6/18/2016 | 2015 | Murano | 10875213 | "moon roof 'exploded'" |
| 6/15/2016 | 6/13/2016 | 2011 | Maxima | 10874398 | "sunroof exploded" |
| 5/24/2016 | 5/19/2016 | 2014 | Maxima | 10870531 | "sunroof exploded" |
| 5/20/2016 | 5/17/2016 | 2015 | Murano | 10869976 | "sunroof exploded" |
| 5/9/2016 | 5/6/2016 | 2013 | Sentra | 10864022 | "sunroof appeared to have exploded" |
| 5/7/2016 | 5/6/2016 | 2016 | Maxima | 10863699 | "sunroof was shattered" |
| 4/26/2016 | 4/22/2016 | 2012 | Maxima | 10861458 | "sunroof exploded spontaneously" |
| 4/8/2016 | 2/16/2016 | 2015 | Pathfinder | 10854479 | "sunroof shattered into many pieces" |
| 3/30/2016 | 9/12/2015 | 2012 | Murano | 10852547 | "sunroof glass broke for no apparent reason" |

CLASS ACTION COMPLAINT

| 3/10/2016 | 3/5/2016 | 2015 | Pathfinder | 10846054 | "suddenly our sunroof exploded" |
|---|---|---|---|---|---|
| 1/9/2016 | 1/9/2016 | 2011 | Maxima | 10819168 | "panoramic sunroof suddenly exploded out of nowhere" |
| 12/29/2015 | 12/16/2015 | 2013 | Altima | 10816880 | "sunroof exploded" |
| 12/10/2015 | 12/8/2015 | 2014 | Maxima | 10809463 | "sunroof was shattered" |
| 11/24/2015 | 11/23/2015 | 2011 | Maxima | 10806483 | "sunroof busted while I was driving" |
| 11/16/2015 | 11/15/2015 | 2010 | Murano | 10790760 | "sunroof exploded" |
| 10/13/2015 | 10/12/2015 | 2013 | Altima | 10781698 | "sunroof glass exploded" |
| 9/14/2015 | 5/4/2015 | 2015 | Pathfinder | 10763594 | "moon roof had shattered" |
| 8/11/2015 | 5/21/2015 | 2015 | Rogue | 10747827 | "sunroof was completely shattered" |
| 8/8/2015 | 7/1/2013 | 2014 | Rogue | 10747202 | "sunroof exploded" |
| 8/7/2015 | 6/18/2015 | 2010 | Murano | 10746996 | "moon roof blew up" |
| 8/5/2015 | 8/3/2015 | 2014 | Rogue | 10746442 | "sunroof explosion" |
| 8/3/2015 | 7/30/2015 | 2014 | Pathfinder | 10745896 | "I hear what sounds like an explosion….glass was gone from the center of my sunroof" |
| 7/15/2015 | 6/25/2015 | 2009 | Murano | 10734238 | "sunroof glass literally exploded outward" |
| 7/13/2015 | 7/12/2015 | 2009 | Rogue | 10733762 | "sunroof exploded" |
| 6/26/2015 | 6/25/2015 | 2012 | Altima | 10730510 | "sunroof spontaneously exploded" |
| 5/21/2015 | 5/17/2015 | 2012 | Sentra | 10717879 | "sunroof glass shattered" |
| 5/12/2015 | 3/16/2015 | 2007 | Maxima | 10715989 | "moon rood exploded" |
| 4/28/2015 | 4/25/2015 | 2012 | Murano | 10713272 | "sunroof exploded" |
| 4/1/2015 | 3/28/2015 | 2011 | Sentra | 10703144 | "heard an explosion….saw a huge hole in the sunroof and the remaining window was shattered" |
| 3/24/2015 | 3/23/2015 | 2015 | Altima | 10701307 | "sunroof apparently exploded" |

14

CLASS ACTION COMPLAINT

| 2/23/2015 | 2/22/2015 | 2011 | Maxima | 10689956 | "sunroof 'exploded'" |
|---|---|---|---|---|---|
| 2/17/2015 | 2/13/2015 | 2009 | Murano | 10683749 | "sunroof over driver and passenger seats literally exploded" |
| 1/5/2015 | 1/4/2015 | 2009 | Murano | 10670015 | "sunroof on my 2009 Murano exploded" |
| 11/28/2014 | 11/25/2014 | 2009 | Murano | 10661179 | "sunroof shattered without warning" |
| 11/4/2014 | 11/3/2014 | 2012 | Sentra | 10652611 | "sunroof exploded" |
| 11/3/2014 | 10/28/2014 | 2009 | Maxima | 10652006 | "sunroof glass abruptly fractured" |
| 10/7/2014 | 10/6/2014 | 2013 | Juke | 10641939 | "sunroof had shattered" |
| 10/3/2014 | 9/29/2014 | 2011 | Murano | 10641082 | "sunroof of my 2011 Nissan Murano exploded suddenly" |
| 10/1/2014 | 9/24/2014 | 2012 | Sentra | 10640510 | "I heard a loud explosion, sounded like a gunshot. Then I noticed the car sunroof pieces shattered all over" |
| 9/17/2014 | 9/16/2014 | 2012 | Murano | 10637055 | "sunroof literally exploded upward for no reason" |
| 9/2/2014 | 3/15/2014 | 2013 | Sentra | 10630114 | "exploded sunroof" |
| 8/22/2014 | 8/21/2014 | 2009 | Murano | 10627566 | "sunroof on the 2009 Murano exploded" |
| 7/21/2014 | 7/20/2014 | 2011 | Maxima | 10614894 | "moon roof imploded" |
| 6/23/2014 | 6/23/2014 | 2012 | Sentra | 10605360 | "sunroof shattered" |
| 6/18/2014 | 6/9/2014 | 2013 | Pathfinder | 10599068 | "sunroof exploded outward" |
| 6/6/2014 | 5/25/2014 | 2009 | Rogue | 10596713 | "sunroof exploded on the highway without notice" |
| 6/2/2014 | 6/2/2014 | 2012 | Sentra | 10595476 | "sunroof shattered" |
| 5/29/2014 | 5/26/2014 | 2013 | Altima | 10594715 | "entire sunroof had blown out" |
| 4/30/2014 | 4/26/2014 | 2012 | Murano | 10585763 | "heard a very loud startling sound, which sounded like a gunshot and what I thought I heard along with |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | a smash noise….it was your sunroof" |
| 4/10/2014 | 4/8/2014 | 2009 | Maxima | 10578895 | "sunroof glass made a loud noise and the glass shattered above my head" |
| 3/31/2014 | 3/29/2014 | 2011 | Murano | 10575918 | "suddenly the roof just exploded" |
| 2/7/2014 | 2/7/2014 | 2012 | Sentra | 10563356 | "heard a loud noise like an explosion and heard glass cracking and looked at sunroof.  It had exploded and burst into pieces" |
| 1/8/2014 | 1/2/2014 | 2013 | Juke | 10559119 | "sunroof exploded upward" |
| 12/19/2013 | 12/6/2013 | 2012 | Murano | 10556614 | "sunroof exploded" |
| 12/10/2013 | 12/5/2013 | 2010 | Pathfinder | 10555529 | "shattering sunroof" |
| 9/20/2013 | 9/7/2013 | 2010 | Murano | 10544549 | "sunroof exploded leaving a round, upward protruding glass hole larger than a basketball" |
| 7/19/2013 | 7/18/2013 | 2011 | Murano | 10525702 | "sunroof glass literally exploded!" |
| 7/5/2013 | 7/4/2013 | 2012 | Sentra | 10523304 | "suddenly moon roof exploded" |
| 4/25/2013 | 4/24/2013 | 2008 | Sentra | 10509560 | "sunroof glass appeared to have 'exploded'" |
| 4/22/2013 | 4/20/2013 | 2012 | Altima | 10509152 | "sunroof shattered without warrant" |
| 3/28/2013 | 2/21/2013 | 2009 | Murano | 10504856 | "sunroof exploded outward" |
| 1/20/2013 | 1/11/2012 | 2010 | Murano | 10493536 | "sunroof exploded" |
| 11/25/2012 | 11/18/2012 | 2011 | Murano | 10485963 | "sunroof exploded (it sounded like a gunshot went off)" |
| 11/18/2012 | 11/17/2012 | 2013 | Altima | 10485641 | "moon roof spontaneously exploded" |
| 10/7/2012 | 10/2/2012 | 2012 | Murano | 10478938 | "moon roof inexplicably exploded from inside out" |
| 3/13/2012 | 3/10/2012 | 2011 | Murano | 10451414 | "sunroof shattered" |

CLASS ACTION COMPLAINT

| 9/13/2011 | 9/12/2011 | 2011 | Murano | 10425334 | "moon roof had exploded" |
|---|---|---|---|---|---|
| 9/9/2011 | 9/6/2011 | 2011 | Murano | 10424454 | "sunroof exploded" |
| 7/3/2011 | 7/2/2011 | 2009 | Murano | 10410329 | "sunroof exploded out" |
| 5/18/2011 | 5/11/2011 | 2010 | Maxima | 10401448 | "sunroof exploded" |
| 2/1/2011 | 1/21/2011 | 2009 | Altima | 10379898 | "sunroof glass had shattered (more like exploded) leaving about a 2 foot circular hole in the glass" |
| 11/4/2010 | 10/16/2010 | 2010 | Murano | 10363977 | "glass of the sunroof suddenly and spontaneously shattered into bits" |
| 10/8/2010 | 10/4/2010 | 2009 | Murano | 10359683 | "sunroof suddenly exploded and shattered" |
| 10/29/2008 | 10/19/2008 | 2005 | Maxima | 10247175 | "moon roof suddenly implode" |

(http://www-odi.nhtsa.dot.gov/owners/SearchSafetyIssues; *accessed* December 22, 2016).[2]

40.     Below are full text examples of the complaints lodged with the NHTSA.   The complaints are also viewable online at www.safercar.gov.[3]

     a.    2008 Nissan Rogue:
Glass from moonroof exploded/shattered to pieces while driving. Temperature was 50 degrees, speed of 60 mph, nothing hit the glass to cause it to break.  Took delivery of the car 1 week prior to incident.  Dealer replaced glass and said it was defective. (NHTSA ID: 10230496 – Date Complaint Filed: 06/10/2008)

     b.    2008 Nissan Altima:
On March 22, 2008 at approximately 1:30 PM I was driving my 2008 Nissan Altima down Knik-Goose Bay RD in Wasilla Alaska when my moon/sun roof blow out.  I had just speed up to about 50 MPH and had no other vehicles in my immediate vicinity when I heard a loud pop and glass falling on me.   After the glass had

---

[2] The searches yielding these results can be replicated by accessing the cited website address, selecting "Keyword (Complaints Only)," entering the word "sunroof" in the available text box, selecting 2000 from the "Start" dropdown box, selecting 2016 from the "End" dropdown box, selecting Nissan from the "Make" dropdown box, and then depressing the "GO" button.  Repeat these same steps replacing the term "sunroof" with the term "moonroof."

[3] These consumer complaints are reproduced verbatim, and include uncorrected spelling and grammatical errors in the original.

fallen on me I reached over and felt my check where I noticed a ¾ inch gash in my face with blood pouring out of it.  Luckily I was able to keep my composure and keep my vehicle on the road.  The dealership nor Nissan USA could and still has not given me an explanation on why or how this could have happened. (NHTSA ID: 10222188 – Date Complaint Filed: 03/24/2008)[4]

c. 2009 Nissan Murano:

Sunroof exploded out while traveling at highway speed (70 mph) at approximately 0930 am.  Weather conditions: clear and sunny.  Road conditions: dry and smooth, no debris. No other vehicles to the front or sides so it is impossible to be road debris damage such as rocks or other debris.  Appears to be a product or design defect.  (NHTSA ID: 10410329 – Date Complaint Filed: 07/03/2011)

d. 2009 Nissan Murano:

My sunroof over driver and passenger seats literally exploded while driving on interstate – sunny 38 degree day, not under a bridge or near other cars.  The noise was deafening, and glass came crashing on my (the driver) head and on the children in the back seat.  The roof was exploded upward like a volcano.  Nothing hit the roof, as we were shaken but able to pull over and check the car for any evidence of something crashing into sunroof.  But the roof exploded upward and outward as it became obvious that a large chunk of glass from roof was missing.  The sunroof was closed, but the sun shade was open.  Reported the problem to Nissan, but they have yet to get back to me.  This is a major problem and a huge safety concern.  This problem seems to stem from a pressure problem within the Murano.   This is extremely dangerous!! Sunroof is being replaced, but I'm now terrified to drive my car, seeing as how this can happen again, and we may not be as fortunate to pull over safely and make it to the side of road! Nissan must deal with this problem! This can potentially be a fatal flaw on the Murano.       (NHTSA  ID:  10683749C – Complaint  Filed:  02/17/2015)

e. 2009 Nissan Altima:

I have a 2009 Nissan Altima with just over 13000 miles on it.  Last week as I was driving to work at about 65 mph I heard what sounded like a shotgun blast over my head.  The sunroof glass had shattered (more like exploded) leaving about a 2 foot circular hole in the glass.  At first I thought something must have hit me but when  I  pulled  over  I  could  obviously  see  that  the  glass  was

---

[4] The narrative for this consumer complaint is taken from a document accompanying the NHTSA complaint.

mushroomed out as if it had exploded from the inside out, not pushed in. I took the car to my Nissan dealer and they agreed that that there was no evidence that anything had hit the glass and that it had simply spontaneously shattered. They also pointed out chips in the paint on the roof and trunk lid caused by the pieces of broken glass. After first denying any coverage, Nissan now has agreed to pay for the new glass as a "goodwill repair" but they still refuse to pay for installation or the paint damage. The dealership picked up the installation and my insurance company is covering the $2500 of paint damage. I did contact Nissan consumer affairs to appeal their decision but was very curtly denied again. (NHTSA ID: 10379898 – Date Complaint Filed: 02/01/2011)

f.      2009 Nissan Rogue:

I was driving on the highway nothing more than 50 mph. and my sunroof exploded on the highway with out notice. The glass cut my skin on my hand. And was a loud exploding sound. As I done research on my exploding sound roof incident on google on the internet. I found out I was not the only one that has experienced this sunroof glass exploding while driving. Nothing fell on my car. But caused glass to fall on me and almost a accident from shock of this happening. I am begging you to please make the 2009 Nissan Rogue sunroofs a recall. Because I was lucky enough not to die. But there may not be someone else that is luck. I just got glass cuts. I spoke to Nissan and they told me 800 dollars to fix a manufacture defect. (NHTSA ID: 10596713 – Date Complaint Filed: 06/06/2014)

g.      2010 Nissan Murano:

2010 Nissan Murano. While driving on highway, the glass of the sunroof suddenly and spontaneously shattered into bits. It was not hit by any object, as traffic was clear on the highway and there was no overpass in the area. Nissan said they found no manufacturer's defect, and my insurance would not cover it as glass. I paid for repair out of pocket. (NHTSA ID: 10363977 – Date Complaint Filed: 11/04/2010)

h.      2010 Nissan Murano:

For the second time in 6 months, my sunroof exploded. The first time was in July, 2012, and I will file a separate report for that incident.. Both times the dealer said they were not responsible. Out of the blue, it sounded like a gun shot, it was so loud. The glass was pushed up with the force, with a big circle of glass missing. I was not following another car and there was no stone kicked up as claimed by the dealer. With the cold air outside, the glass was pushed up with the pressure. The first time it happened

CLASS ACTION COMPLAINT

was in the summer, and with the pressure the glass was pushed inward.  This seems to be a design flaw, as many others on the internet have claimed the same problem, even though the dealers claim they have not heard of this probem.  This problem should not be ignored, as sooner or later this issue will result in serious accidents, possibly a fatality, and it would be difficult for Nissan to say they were not aware of this problem.  It is outrageous that I am afraid to drive this car when at any time, the sun roof may once again explode for no apparent reason.  This dangerous situation is not what I signed up for when I bought this car and I am upset that this problem is not being acknowledged by Nissan. (NHTSA ID: 10493536 – Date Complaint Filed: 01/20/2013)

i.      2011 Nissan Murano:

Sunroof of my 2011 Nissan Murano exploded suddenly while driving down the highway on a clear day and no other cars in the area.  The malfunction of the sunroof exploding caused the sunroof glass to protrude outward into a done shape while glass pieces shattered into the cabin of the Murano.   Upon contacting the Nissan dealer, they referred me to the national Nissan customer service number, but after 4 days I am still waiting on a call back from the regional Nissan office.  This is a major safety issue that Nissan must take responsibility for correcting as soon as possible. (NHTSA ID: 10641082 – Date Complaint Filed: 10/03/2014)

j.      2011 Nissan Maxima:

The rear glass panel of sunroof "exploded' with chunks of glass coming off the panel and over the next few hours the entire panel exhibited major cracking throughout.  Sunroof was closed at the time and outside temperature was about 45 degrees.  Wife was slowing on highway to turn into driveway.  She stated the nearest vehicle was over ¼ mile ahead of her so no possibility of rock being thrown from their tires.  Sounded like a shotgun blast in the car when it occurred.  Since it was the back panel no glass fell into the car that we could see. (NHTSA ID: 10689956 – Date Complaint Filed: 02/23/2015)

k.      2012 Nissan Murano:

I was traveling on the interstate at 75mph when I heard a loud boom.  I looked around and discovered that the moonroof had shattered.  It was a sunny day and there was no traffic around.  The glass is brokern around the edges of the glass.  There is no sign of impact anywhere on the glass. (NHTSA ID: 10682170 – Date Complaint Filed: 02/09/2015)

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

l.      2012 Nissan Sentra:

My sunroof exploded on my 2012 Nissan Sentra.  It was parked in my driveway and all the sudden it just exploded.  There was no reason for this to happen.  No one was around it, no rocks, limbs, hail, no bad weather, or anything. (NHTSA ID: 10652611 – Date Complaint Filed: 11/04/2014)

m.      2012 Nissan Altima:

When I was driving my Nissan Altima 2012 car on 1-625 in Dallas at 2pm CST at around 65 mph speed, I heard huge explosion sound on top of my head. I turned on the hazard light and slowed down the car and pulled over to a shoulder and checked the car. Sunroof glass was exploded and I have seen a 4 inch diameter hole and scatter glass pieces; rest of the glass was also broken/cracked. There was no vehicle at the time the incident occurred and it was not due to the external forces, it was due to internal pressure between the glass and visor. I was so scared when the glass exploded but luckily escaped from the bodily injuries. The sunroof glass on the Nissan Altima 2012 is for sure defective product. Please investigate and save the lives of the drivers. I'm not expecting any financial compensation from Nissan or anybody. I don't want this to happen to anybody please investigate and save drivers. (NHTSA ID: 10919166 – Date Complaint Filed: 10/26/2016)

n.      2012 Nissan Sentra:

Spouse parked and waiting in the car at airport arrival curb around 8:30PM.  As I was walking toward the car, I heard a loud explosion, sounded like a gunshot.  Then I noticed the car sunroof pieces shattered all over.  No cars passing by.  Temp around 90F.  Luckily no passengers close by to the car.  Spouse was in shock and luckily the sunroof cover was closed.  I could not find a cause other than suspecting this is a vehicle manufacturing defect.  The only damage part was sunroof itself.  This is a serious safety issue that deem a safety recall of sunroof replacement.  Luckily no one was injured.  Reported the issue to Nissan Consumer Affair and waiting to hear back from them. (NHTSA ID: 10640510 – Date Complaint Filed: 10/01/2014)

o.      2013 Nissan Pathfinder:

On June 9, 2014, at approximately 9:15 AM while driving down Crain Hwy on Route 5 with my sunroom retracted.  Without warning I heard this loud explosion.  I thought I had a blown tire or someone shot at me.  I kept driving for about a half a mile until I got to a traffic light.  While waiting for the light to turn green, I

looked up and saw that there was noise coming from my 2013 Nissan Pathfinder Platinum sunroof. I closed the sunroof slide because I didn't want any glass to fall on me or into my vehicle. Once I arrived at church, I pulled my sunroof forward to see what was going on. The sunroof exploded outward and all the glass landed inside the headliner because my sunroof was retracted, there weren't any cars in front of me for a rock or some other hard object to hit the sunroof, and there wasn't an overpass for something to fall down from up top. On June 11th, I brought my SUV into Tischer Nissan Service Manager so they could see my vehicle and repair the damaged sunroof. My vehicle has 23,200 miles on it. I showed him stacks of complaints about this sunroof defect and safety issue. I was told that Nissan Regional Manager decided that Nissan wasn't going to pay for my damaged sunroof. The justification was maybe a semi truck may have kicked a rock inside the sunroof and over a period of time, the rock put pressure on the pressure point of the glass which caused the glass to explode. He told me to contact my insurance company. Quite frankly that is an insult to my intelligence. On June 11th, I contacted Nissan Consumer Affairs. I was given a case #. On June 17th, I was informed that my sunroof damage would not be covered under warranty because there are no known defects, something hard must have it, it is temper glass, and to contact my insurance. (NHTSA ID: 10599068 – Date Complaint Filed: 06/18/2014)

p.    2013 Nissan Altima:

The contact owns a 2013 Nissan Altima. The contact stated that while driving at approximately 65 MPH, the sunroof exploded and small particles of glass shattered outside of the vehicle. The sunroof sliding cover was closed when the failure occurred. The vehicle was maneuvered to the side of the road. The vehicle was taken to the dealer where the entire sunroof was replaced. The manufacturer was notified of the failure. The approximate failure mileage was 49,000. (NHTSA ID: 10816880 – Date Complaint Filed: 12/29/2015)

q.    2013 Nissan Juke:

The vehicle was parked. Driver got in and closed the door. After hearing an odd sound of something raining down on the roof area, driver got out and discovered that the sunroof had shattered. Since the sunroof shade was closed, the glass did not enter the vehicle. (NHTSA ID: 10641939 – Date Complaint Filed: 10/07/2014)

CLASS ACTION COMPLAINT

r.      2013 Nissan Juke:

The vehicle was parked.  When the driver's side front door was shut, the sunroof exploded upward.  The explosion sounded like a gunshot. The sunroof shattered completely into small pieces. The sunroof visor was closed, so the glass shards did not enter the vehicle. (NHTSA ID: 10559119 – Date Complaint Filed: 1/08/2014)

s.      2014 Nissan Maxima:

I was driving along the highway on a sunny day, about 75 degrees Fahrenheit, going approximately 65 MPH when I heard a loud exploding type of noise.  The next thing I know I hear rattling overhead.  I don't live far from where the incident happened so continued to drive .25 miles approximately to my residence and immediately get out to inspect my vehicle.  The sunroof was shattered into a million pieces and there was a huge hole right in the middle of it.  I had not opened the sunroof while driving so the visor was thankfully closed when it broke. (NHTSA ID: 10809463 – Date Complaint Filed: 12/10/2015)

t.      2014 Nissan Maxima:

2014 Nissan Maxima with 43000 miles. Sunroof exploded twice while driving on the freeway at 70 mph.  Almost exact same of hole left in roof.  Once on July 20th 2016 and once on August 15 2016 after being replaced with OEM parts.  Danger to my children in the car and others on the road.  Nissan refused to do anything after calling in and speaking with the complaint department.  I have since repaired it a second time and returned it to the dealership – I do not feel safe driving the vehicle. (NHTSA ID: 10914504 – Date Complaint Filed: 10/07/2016)

u.      2015 Nissan Rogue:

2015 Nissan Rogue parked in my garage. I was in driveway heard loud noise like gunshot. Looked a my car and saw that front panoramic sunroof had shattered into little pieces of glass. Thank God I was not driving at time. (NHTSA ID: 10875763 – Date Complaint Filed: 6/22/2016)

v.      2015 Nissan Pathfinder:

While driving the vehicle on February 16, 2016, traveling south west a state road, at approximately 40 mph, the sunroof shattered into many pieces. The glass shards were not contained and entered the vehicle, collapsing on both driver and occupants. The driver was temporally incapacitated as the glass fell on her head and face. When I filed a complaint with Nissan North America, they stated

stated that the sunroof operated as designed. (NHTSA ID: 10854479 – Date Complaint Filed: 4/08/2016)

w.    2016 Nissan Maxima:
I just merged onto the highway going I-55 South from Countryline Rd, when I heard a very loud noise similar to a gun shot in close range and was literally frightening.  Then I heard air seeping through my sunroof area so I pulled over on the side of the highway because I started to shake uncontrollablely and I had my 7 month old in the car as well.  I was able to look on top of the car and saw that the front sunroof was shattered.  I immediately took the vehicle to Gray Daniels Nissan North in Jackson, MS.  They told me that this will have to fall under my insurance but I don't understand why.  This is a defect on how this model car handles pressure causing the sunroof to explode!  My ears and hear are aching fur to the explosive sound. (NHTSA ID: 10863699 – Date Complaint Filed: 05/07/2016)

x.    2016 Nissan Maxima:
Sunroof exploded while driving. No objects fell onto the car. We had no idea what the loud bang/exploding sound was until we were able to safely pull off the road and evaluate. The hole was not inward, like something fell into it, but the glass was pushed upwards. We were on a 4-lane straightaway going maybe 35 or 40 mph and not under any bridges, trees, etc. No vehicles around us, etc. It was about 8:30pm in July in South Carolina. The noise was very loud and very startling! (NHTSA ID: 10893526 – Date Complaint Filed: 8/05/2016)

41.    Few, if any, of the drivers who have contacted the federal government have reported that the shattering occurred because of an external object striking their vehicle.

**C.  Nissan's Knowledge of the Defect**

42.    Nissan has long known that its panoramic sunroofs are prone to unexpected and dangerous shattering.

43.    Like other automobile manufacturers, Nissan monitors the NHTSA website for emerging problems with its vehicles.

44.    Even before the introduction of panoramic sunroofs, the NHTSA played a role in making Nissan aware of the danger created by shattering sunroofs. Nissan's "Skyview" sunroof,

**CLASS ACTION COMPLAINT**

a precursor to panoramic sunroofs, was introduced in the 2003 model year Nissan Maxima.  Due to shattering glass, Nissan issued a recall of 2004 Maxima models in order to replace the "Skyview" sunroof. (NHTSA Campaign #04V3260000).

45.     Since the introduction of panoramic sunroofs, the NHTSA has continued to bring awareness to the issues and danger associated with shattering sunroofs through complaints and investigations.

46.     NHTSA complaints concerning Nissan's shattering panoramic sunroofs have been lodged since as early as 2008.  Since the initial 2008 complaint, another ninety (90) complaints have been logged on the NHTSA website concerning this issue.

47.     On May 14, 2014 NHTSA opened an investigation into spontaneously shattering panoramic sunroofs. (http://www-odi.nhtsa.dot.gov/owners/SearchSafetyIssues, NHTSA Investigation ID Number:  EA 14002; *accessed on December 21, 2016*).

48.     In July 2014, in connection with its shattering panoramic sunroof investigation, the NHTSA requested information from Nissan regarding exploding sunroofs in its vehicles. (https://static.nhtsa.gov/odi/inv/2014/INIM-EA14002-63590.pdf; *accessed December 21, 2016*).

49.     Nissan responded to the NHTSA's inquiry in September 2014 by producing dealer field reports concerning its Pathfinder and Murano panoramic sunroofs that had shattered and were known to Nissan at that time. On the same day, Nissan also produced consumer complaints relating to defective and "exploded" sunroofs in its Pathfinder and Murano models.

50.     Examples from the dealer field reports that Nissan produced appear below and demonstrate Nissan's knowledge of its panoramic sunroofs shattering as early as February 2013. These reports can also be accessed at https://static.nhtsa.gov/odi/inv/2014/INRD-EA14002-60025P.pdf.

a.     2012 Nissan Murano:

Details of Incident:
1. how did the customer notice the incident

The sunroof glass broke.
- A loud noise occurred as the glass broke.

2. What are the incident conditions

According to the customer these are the conditions when the incident occurred:
- On Interstate 10 west of Tucson in the Marana area (mixed concrete and asphalt, at 85 mph.
- HVAC set at ~75, fan speed 2/5, fresh, face.
- Sunroof glass and shade fully closed.
- All vehicle windows closed.

Environmental data the day of the incident:
- Temperature max/min: 50F/32F.
- Precipitation: .5" (rain only, no reported hail)
- Humidity: 91%
- Wind speed max: 9 mph.

3. Inspection done & result

The sunroof glass is broken.
- Glass pane is completely broken into small segments (see photos).
- The remaining glass appears to be raised when viewed horizontally, as if pressure was applied from with the vehicle.

Root cause not determined.
- The customer says they were "going about 85 mph on the freeway" when the incident occurred, with no abnormal influences.
- The customer says that the vehicle has experienced nothing abnormal.
- The vehicle has not been washed by the customer (in service only 13 days).
(Nissan Dealer Field Reports at NA-TR-2013-00633 – Date of Report: Feb. 28, 2013)

b.  2012 Nissan Murano:
Details of Incident:
1. how did the customer notice the incident

The sunroof glass broke.
- A loud noise occurred as the glass broke.

2. What are the incident conditions

According to the customer these are the conditions when the incident occurred:
- On Interstate 17 in North Phoenix area (mixed concrete and asphalt, at 70 mph.
- HVAC set at ~75, fan speed 2/5, fresh, face.
- Sunroof glass and shade fully closed.
- All vehicle windows closed.

Environmental data the day of the incident:
- Temperature max/min: 115F/74F.
- Precipitation: 0"
- Humidity: 51%
- Wind speed max: 10 mph.

3. Inspection done & result

The sunroof glass is broken.
- Glass pane is completely broken into small segments (see photos).
- The remaining glass appears to be raised when viewed horizontally, as if pressure was applied from with the vehicle.

Root cause not determined.
- The customer says they were "going about 70 mph on the freeway" when the incident occurred, with no abnormal influences.
- The customer says that the vehicle has experienced nothing abnormal.
- The vehicle has been washed by all varieties of equipment (hand wash, touch free, rotary brushes, reciprocating straps).
(Nissan Dealer Field Reports at NA-TR-2013-02084 – Date of Report: July 12, 2013)

c.   2014 Nissan Murano:
Details of Incident:
Customer complaint/Inspection done & result:
This vehicle belongs to an NTCNA engineer. TSM spoke with the customer who states that while driving the sunroof glass shattered.  Customer is not aware of anything hitting the glass.

TSM inspected vehicle and observed the edge of the glass sticks upward all around the area that broke.  Please see photos of sunroof glass in related documents.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> Please note: TSM has had feedback from (2) other Detroit area dealers where customers state the sunroof glass had shattered on 2014 Muranos.
>
> TSM will collect the glass frame and sunroof assembly, per FQI engineer's request, and will ship to DS at FQI for further analysis.  TSM taped off the glass so it could be shipped with no further damage.
> (Nissan Dealer Field Reports at NA-TR-2014-02757 – Date of Report: Aug. 8, 2014)

51.     Consumer complaints produced by Nissan can be accessed at https://static.nhtsa.gov/odi/inv/2014/INRD-EA14002-60026P.pdf and include complaints that "the sun roof exploded" as early as February 1, 2013.

52.     A survey of the complaints reveals that the panoramic sunroofs often shatter within weeks or months of purchase, and consumer complaints to both Nissan and the NHTSA, discussed above, show that drivers were reporting this problem as early as 2008.

53.     In addition to monitoring the NHTSA, Nissan internally tracks information regarding the panoramic sunroof failures through the collection of incident reports and other information from drivers and dealers (as evident from its production in the NHTSA's shattering panoramic sunroof investigation), including complaints, warranty claims, replacement parts data, dealings with insurance, and other aggregated data sources.  Nissan has nearly exclusive access to this information, including pre-release testing of vehicle components, so it is implausible that Nissan had no knowledge very early on about the defect.

54.     Nissan is also aware that other manufacturers whose vehicles with similarly designed panoramic sunroofs and similar shattering problems have voluntarily initiated safety recalls to notify drivers of the danger and repair shattered sunroofs free of cost.

55.     Nissan claims its sunroofs shatter as a result of impact from roadway objects.

56.     Rocks or other objects thrown up by cars and trucks on the roadway would not

CLASS ACTION COMPLAINT

impact the sunroof with sufficient force to cause it to shatter, let alone to shatter *outward*, a fact that appears in many consumer complaints and of which Nissan is aware.  Moreover, driver reports specifically contradict Nissan's position.  Significantly, some Nissan panoramic sunroofs have spontaneously shattered *while the vehicle was parked*.

57.     As mentioned above, Nissan has had at least one recall relating to shattering sunroofs.  The recall was for its 2004 Maxima. While Nissan issued a recall that sunroof shattering problem that impacted only one model year of its Maxima, it has done nothing regarding the far more predominant problem relating to the panoramic sunroof shattering that affects potentially hundreds of thousands or more Nissan vehicles.

**D.  The Dangers Posed to Class Vehicle Occupants**

58.     NHTSA, KATRI, and responsible automobile manufacturers have acknowledged that the spontaneous failure of panoramic sunroofs endangers drivers, passengers, and others on the road.

59.     Panoramic sunroofs are an expensive upgrade option that can cost thousands of dollars to replace.

60.     A reasonable person considering whether to purchase or lease a Nissan vehicle would want to be informed about the panoramic sunroof defect so that he or she could opt against paying the thousands of dollars for a "luxury upgrade" or simply forego purchasing or leasing the vehicle altogether.

61.     When the Nissan panoramic sunroofs shatter, they usually make a sudden and extremely loud noise, followed by shards of glass raining down onto the driver and passengers. Drivers report that the falling shards of glass have cut them and their passengers and have also caused damage to the interior of the vehicles.  Drivers have also reported a number of near-miss accidents that occurred after they were startled or distracted by the shattering.  Both Nissan and

**CLASS ACTION COMPLAINT**

the NHTSA have received reports of injuries resulting from Nissan panoramic sunroofs shattering.

62.     Other manufacturers concur. When Volkswagen initiated a safety recall for shattering panoramic sunroofs, for example, it acknowledged that drivers "could be injured by falling glass," and that "[i]f the glass panel were to break while the vehicle is in motion, it could cause driver distraction, increasing the risk of a crash."[5] And when Hyundai initiated its recall, it too acknowledged that the shattering of panoramic sunroofs "relates to motor vehicle safety," including by posing a risk of cutting vehicle occupants.

63.     In connection with the Hyundai recall, the NHTSA wrote that the breaking of the panoramic sunroof could lead "to personal injury or a vehicle crash."  In connection with an Audi recall, the NHTSA wrote that "should the sunroof's glass break while the vehicle is in use, the falling glass could cut and injure the driver or passengers [and] could also distract the driver, increasing the risk of a crash."

64.     KATRI likewise concluded that the sudden shattering of a panoramic sunroof while driving may cause "abrasions due to shattered glass" and also cause the "risk of secondary accidents."

65.     In December 2012, KATRI launched an investigation into exploding panoramic sunroofs of numerous automotive manufacturers, including Nissan.  KATRI's investigation culminated in November 2013, when it met with numerous car manufacturers in Seoul, South Korea, and announced its finding that the ceramic tint in panoramic sunroofs substantially weakens the glass and compromises the safety of the glass.  KATRI recommended widespread

5 Jenna Reed, *VW Recalls Certain Beetle Models Over Potential Panoramic Sunroof Issue*, glassBYTEs.com (Dec.   11, 2014), http://www.glassbytes.com/2014/12/vw-recalls-certain-beetle-models-over-potential-panoramic-sunroof-issue/;
Volkswagen of America, Inc., *Volkswagen Issues Voluntary Recall* (Dec.  7, 2014), https://media.vw.com/release/856/.

recalls.

66.     KATRI's recommendations went unheeded by Nissan.

**E.  Nissan Refuses to Warn Drivers**

67.     Despite the high number of complaints and the danger posed by the defect, Nissan continues to conceal its existence from current drivers and potential customers alike.   Nissan has neither warned consumers at the point of sale/lease nor when drivers who have experienced a shattered sunroof bring their vehicle in for repairs (or instructed its dealerships to do so) making no effort to alert consumers of the risk. Nissan knows of the defect yet continues to profit from the sale and lease of vehicles to unwitting consumers.

68.     Nissan continues to conceal the defect even though it knows that the defect is not reasonably discoverable by drivers unless they experience a failure and are exposed to the attendant safety risks.

69.     Nissan remains silent even as it continues to receive complaints from concerned drivers and NHTSA investigators.

70.     As a result of Nissan's inaction and silence, consumers are unaware that they purchased or leased a vehicle that has a defective sunroof, and continue to drive these unsafe vehicles.   Additionally, drivers who have experienced an exploding sunroof and bring their vehicles to a dealership for repairs are not told that identically defective sunroofs are installed as replacements in their vehicles.

71.     Other manufacturers who have had vehicles with similar panoramic sunroof problems—Audi, Hyundai, and Volkswagen—have voluntarily initiated safety recalls as a result, notifying drivers of the danger and offering to repair the sunroofs free of cost.

**F.  Nissan's Deceptive Warranty Process**

72.     Nissan advertises that "[e]very Nissan is backed by a  36-month/36,000-mile

31

CLASS ACTION COMPLAINT

limited vehicle coverage and a 5-year/60,000-mile limited powertrain coverage." (https://owners.nissanusa.com/nowners/navigation/warrantyContent; *accessed December 24, 2016*). Nissan's marketing and advertising campaign touts the "Nissan Safety Shield" philosophy as a comprehensive approach to safety and claims that Nissan vehicles are of "high quality." Nissan warrants to correct defects in materials or workmanship in all parts and components of new Nissan vehicles.

73.     The relevant terms of the warranties for each of the model years of the Class Vehicles are identical or substantially similar.

74.     Plaintiff and the Class Members experienced damage from the sunroof defect within the warranty periods of their vehicles.  Plaintiff and the Class reasonably expected that any and all damage that resulted from the sunroof defect would be covered under the warranty, and that they would not be charged for such repairs.

75.     Nissan has systematically denied coverage with respect to the defective sunroofs. Plaintiff and numerous class members have been forced to incur substantial repair bills and other related damages, including being forced to make claims under their automotive insurance policies and incurring substantial deductibles.

## V.    PLAINTIFF SHERIDA JOHNSON'S EXPERIENCE

76.     Plaintiff Sherida Johnson recently moved from Japan to California.  This move required a lot of new things in Ms. Johnson's life, such as a new place to live, new job, and new car.

77.     Now, Ms. Johnson lives in Murrieta, California.  Her job at BioScreen Services, Inc. is in Torrance, California – approximately 81.5 miles from her home.  Her commute from home to work takes approximately 1 ½ hours in no traffic.

78.     Ms. Johnson is a single mother of three children (ages 18, 11, and 8).  As a single

CLASS ACTION COMPLAINT

mother and an individual who commutes a significant distance to work daily, the purchase of a vehicle was a big decision in many regards (*e.g.*, financially, safety, efficiency). Ms. Johnson spent a significant amount of time and effort to research several vehicles and their features before selecting a car to purchase. Ms. Johnson's research included investigating safety features, engine specifications, complaints from other owners, reviews, and YouTube videos concerning the vehicles and/or specific features.

79.    Ms. Johnson was willing to and did spend substantial money on a car that was reliable and also provided her with the aesthetically pleasing bonus feature of a panoramic sunroof.

80.    Ultimately, Ms. Johnson selected to purchase a 2016 Nissan Maxima. According to her research, the car seemed to be safe and reliable. Ms. Johnson chose the 2016 Maxima over other cars because the Maxima had the panoramic sunroof feature which Ms. Johnson liked aesthetically.  Additionally, Ms. Johnson believed the Maxima looked similar to a Tesla – a look she found pleasing.  Ms. Johnson's decision to purchase the Nissan Maxima at issue was one that she put a great deal of consideration and monetary investment into.

81.    During her research, Ms. Johnson did not encounter any information indicating that a panoramic sunroof could be dangerous.  Nor did she observe any warnings about the potential for this type of sunroof to spontaneously explode.  She did not know and never thought the panoramic sunroof feature was a danger.

82.    Plaintiff Sherida Johnson purchased a certified pre-owned 2016 Nissan Maxima, VIN: IN4AA6AP6GC397907, with 14,422 miles on it from CarMax Auto Superstores California, LLC[6] in August 2016 for a total cost of purchase on credit, including a $6,000 down payment, of $58,650.00.  Thus, Ms. Johnson's financing consists of 72 payments of $731.25.

---

[6] Located at 7980 Auto Drive, Riverside, California 92504.

The payments began in September 2016.

83. Ms. Johnson, being cautious and respecting safety for herself as well as her three children, paid extra money to purchase a warranty from CarMax to cover her new vehicle.[7]

84. Because the car was a 2016 model of a Nissan Maxima, it also came with a manufacturer's warranty.

85. Ms. Johnson's purchased Maxima was equipped with a factory-installed panoramic sunroof.

86. About three months after purchasing her 2016 Nissan Maxima, Ms. Johnson started her job in Torrance, California. Since then, she has commuted 3 hours a day, five days a week for her job.

87. At approximately 3:40 a.m. on Monday, October 31, 2016, Ms. Johnson began her commute to work. The weather was clear - about 70 degrees, not raining or snowing - and traffic was light. Her Nissan had approximately 20,000 miles on it.  She was on I-15 N going approximately 70 mph about to get on CA-91 W, when she suddenly heard what sounded like a gunshot. Ms. Johnson was startled, confused, and terrified.

88. Ms. Johnson, uncertain as to what had caused the sound, examined her surroundings.  Seeing nothing suggesting a shooter was around, she then began to question whether something was wrong with her vehicle (*e.g.*, had her tire blown out?). The vehicle appeared to be driving correctly, but she pulled over on the side of the highway to examine it. She looked up where her panoramic sunroof shade was open and saw that the sunroof itself had exploded. Some of the shards of glass fell into the car. But large portions of the glass sunroof were simply missing. Ms. Johnson was concerned the glass could have flown off and caused another vehicle to get into an accident.  However, Ms. Johnson saw no other vehicles impacted

---

[7] MaxCare Extended Service Plan Contract #: 7196634294 expiring 8/13/2021 or 100,000 miles.

and noted that no cars were directly beside or behind her when she first heard the loud gunshot-like noise.

89.     Because her vehicle was drivable and because Ms. Johnson had only been employed by BioScreen Services, Inc. for approximately three weeks, she got back into her car, closed the panoramic sunroof shade, said a prayer, and proceeded to drive to work. She arrived at her job a little after 5 a.m.

90.     Below are photographs of the failed sunroof in Ms. Johnson's 2016 Nissan Maxima.





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





91.     On her lunch break on October 31, Ms. Johnson took her car to the nearby Torrance CarMax.  The CarMax employees who saw the car were in dismay at the damage. However, CarMax indicated that, while Ms. Johnson had purchased an additional warranty from CarMax to cover damage to her 2016 Nissan Maxima, they would not be able to repair the panoramic sunroof damage.   CarMax then informed Ms. Johnson that she should call her insurance company.

CLASS ACTION COMPLAINT

92.    Ms. Johnson called her insurance company who instructed her as to some of her options.

93.    Then, Ms. Johnson called a local Nissan dealer, Nissan of South Bay,[8] who, after hearing Ms. Johnson describe the incident, told her to bring the car into the dealer.  Ms. Johnson brought the car into Nissan of South Bay and, despite the fact that Ms. Johnson saw no rocks or debris while driving her car on the highway that morning, was told "something hit glass" (*i.e.*, the panoramic sunroof).

94.    Despite being a 2016 vehicle covered by the original manufacturer's warranty from Nissan and covered by the additional warranty Ms. Johnson purchased from CarMax when she bought the vehicle, Nissan of South Bay informed Ms. Johnson that the sunroof shattering was "not covered under warranty."

95.    The Nissan dealer kept Ms. Johnson's car to perform the repair of the shattered panoramic sunroof.  An employee from the Nissan dealer called Ms. Johnson on approximately Tuesday, November 1, 2016, to inform her that the Nissan part needed for replacement of the sunroof had been ordered.  He also informed her at that time that the car contained a part that was subject to a Nissan recall relating to the anti-lock brake system ("ABS").

96.    Ms. Johnson's 2016 Nissan Maxima's ABS actuator is part of a larger Nissan recall.  The reason for the recall is that the ABS "actuator may leak brake fluid" which will cause "the ABS warning lamp" to "illuminate and remain continually illuminated on the instrument panel."  This continual illumination can "create an electrical short" which "may lead to a fire." (https://www.nissanusa.com/content/nissan-responsive/us/en/recalls-vin/abs.html;  *accessed on December 20, 2016*).

97.    The Nissan dealer kept Ms. Johnson's 2016 Nissan Maxima for approximately

---

[8] Located at 3233 Pacific Coast Highway, Torrance, California 90505.

CLASS ACTION COMPLAINT

one work week – from October 31 through November 4.  They replaced the shattered panoramic sunroof with the ordered Nissan replacement part.  The parts necessary to address the recall were not available at the time and Ms. Johnson was told to bring the car back at another time.

98.     Ms. Johnson paid $1,104.93 in repair costs to the Nissan dealer for the parts and labor associated with the replacement of the defective panoramic sunroof.  The replacement sunroof part (LID ASSY-SUNROOF: FP NUMBER 91210-4RA1A) cost 844.93.     Labor affiliated with the sunroof replacement cost $260.

99.     Ms. Johnson made a claim[9] with her insurance company, Geico, and paid a $50 deductible.  In turn, her insurance company reimbursed her for the cost of the part and $125 worth of labor.  Ms. Johnson paid approximately $185 out-of-pocket for the sunroof replacement for which she was not reimbursed.

100.     Ms. Johnson inquired whether Nissan would pay to replace the sunroof in the event the panoramic sunroof would explode unexpectedly again.  The Nissan dealer replied "no" and told her should would be responsible for any and all repair costs in the future.

101.     Ms. Johnson is afraid the replacement sunroof will explode like the original one did.  She has not used her sunroof since the replacement panoramic sunroof was installed due to this fear.

102.     Ms. Johnson is now scared to drive her vehicle. She would prefer not to drive or even own her 2016 Nissan Maxima anymore.  However, she financed the vehicle and will be making payments on the car through 2021.[10]  Therefore, she feels, economically, she is stuck with this car – forced to drive in fear, 3 hours a day, five days a week, for nearly five more years.  Had Ms. Johnson known of the car's panoramic sunroof defect, she would have bought a less

---

[9] Geico claim number: 0571051900101017.

[10] At the time this Complaint was filed, Ms. Johnson has 67 payments of $731.25 remaining before the financing agreement on her 2016 Nissan Maxima is satisfied in full.

expensive car without the panoramic sunroof upgrade.

103. Had Nissan adequately disclosed the panoramic sunroof defect, Ms. Johnson would not have purchased the vehicle or she would have paid substantially less for it. In addition, Ms. Johnson would not have suffered the economic damages she sustained. Her vehicle remains within the scope of the Nissan new vehicle warranty. She did not receive the benefit of the bargain.

## VI. CLASS ACTION ALLEGATIONS

104. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this case as a class action on behalf of herself and all others similarly situated as members of the following proposed Nationwide and California State Class (collectively, the "Classes"), on their federal and state claims as purchasers and lessees of "Class Vehicles." Class Vehicles include all models below that are equipped with factory-installed panoramic sunroofs:

      a.    model years 2008-present Maxima, Rogue, Sentra, Pathfinder, and Altima;

      b.    model years 2009-present Murano; and

      c.    2011-present Juke.

**Nationwide Class:**

*During the fullest period allowed by law, all persons and entities residing in the United States, including its territories, who purchased or leased a Class Vehicle.*

**California Class:**

*During the fullest period allowed by law, all persons and entities residing in California who purchased or leased a Class Vehicle in California.*

105. Excluded from the proposed class is Nissan; any affiliate, parent, or subsidiary of Nissan; any entity in which Nissan has a controlling interest; any officer, director, or employee of Nissan; any successor or assign of Nissan; anyone employed by counsel in this action; any

judge to whom this case is assigned, his or her spouse; and members of the judge's staff; and anyone who purchased a Class Vehicle for the purpose of resale.

106.    Members of the proposed classes are readily ascertainable because the class definitions are based upon objective criteria.

107.    **Numerosity**. Nissan sold many thousands of Class Vehicles, including a substantial number in California. Members of the proposed classes likely number in the thousands and are thus too numerous to practically join in a single action. Class Members may be notified of the pendency of this action by mail, supplemented by public notice (if deemed necessary or appropriate by the Court).

108.    **Commonality and Predominance**. Common questions of law and fact exist as to all proposed members of the classes and predominate over questions affecting only individual class members. These common questions include:

(a)    Whether the panoramic sunroofs in the Class Vehicles are designed defectively such that they have a propensity to spontaneously shatter;

(b)    Whether Nissan knew or should have known that its panoramic sunroofs are defectively designed such that they have a propensity to spontaneously shatter, and if so, when it discovered this;

(c)    Whether the knowledge of this propensity to shatter would be important to a reasonable person, for example, because, it poses an unreasonable safety hazard;

(d)    Whether Nissan failed to disclose or concealed the existence of the sunroofs' propensity to spontaneously shatter from potential consumers;

(e)    Whether Nissan breached its express warranty obligations;

(f)    Whether Nissan has a pattern and practice of attributing damages claimed by Plaintiff and Class Members to causes other than the complained-of defect;

(g)     Whether should be required to notify Class Members about the sunroofs' propensity to spontaneously shatter and cease its practice of providing replacement sunroofs;

(h)     Whether the Court may enter an injunction requiring Nissan to cease its practice of replacing shattered panoramic sunroofs with identically defective replacement sunroofs;

(i)     Whether this Court should grant other declaratory relief requested herein;

(j)     Whether Nissan had a duty to disclose to Plaintiff and Class Members the true character, quality, and nature of the Class Vehicles and the sunroof defect;

(k)     Whether Nissan's conduct, as alleged herein, violates the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*;

(l)     Whether Nissan's conduct, as alleged herein, violates the consumer protection laws of California; and

(m)     Whether Nissan's conduct, as alleged herein, entitles Plaintiff and Class Members to restitution under federal law and the laws of their respective states.

109.    **Typicality**. Plaintiff's claims are typical of the claims of the proposed classes. Plaintiff and the members of the proposed classes all purchased or leased Class Vehicles with panoramic sunroofs that are inherently susceptible to spontaneously shatter, giving rise to substantially the same claims. As illustrated by class member complaints, some of which have been excerpted above, each vehicle model included in the proposed class definitions suffers from the same or substantially similar defect.

110.    **Adequacy**. Plaintiff is an adequate representative of the proposed classes because her interests do not conflict with the interests of the members of the Classes she seeks to represent. Plaintiff has retained counsel who are competent and experienced in complex class action litigation, and will prosecute vigorously on Class Members' behalf.

111.     **Superiority**. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class Member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Nissan economically feasible. Even if Class Members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the defective panoramic sunroofs, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

112.     In the alternative, the proposed classes may be certified because:

(a)     the prosecution of separate actions by the individual members of the proposed classes would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Nissan;

(b)     the prosecution of individual actions could result in adjudications, which as a practical matter, would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests; and

(c)     Nissan has acted or refused to act on grounds generally applicable to the proposed classes, thereby making appropriate final and injunctive relief with respect to members of the proposed classes as a whole.

## VII.    TOLLING OF THE STATUTES OF LIMITATIONS

113.     **Discovery Rule**. Plaintiff's accrued upon discovery that the panoramic sunroof installed in her Class Vehicle was defective in that this type of sunroof is manufactured in a way

that causes spontaneous shattering, which, in turn, results in costly repairs. While Nissan knew and concealed the fact that the panoramic sunroofs installed in the Class Vehicles have a defect that causes spontaneous shattering, Plaintiff and Class Members could not and did not discover this fact through reasonable diligent investigation until after they experienced such spontaneous shattering first-hand. Even then, Nissan claims its panoramic sunroofs shatter only as a result of impact from objects on the roadway and concealed and conceals from Plaintiff and Class Members that the sunroofs are defective.  Plaintiff and Class Members who experienced exploding sunroofs also could not know that the new sunroofs that were installed in their vehicles presented the same danger of spontaneously shattering.

114.  **Active Concealment Tolling**. Any statutes of limitations are tolled by Nissan's knowing and active concealment of the fact that the panoramic sunroofs installed in the Class Vehicles suffered from an inherent defect. Nissan kept Plaintiff and Class Members ignorant of vital information essential to the pursuit of their claims, without any fault or lack of diligence on the part of Plaintiff or the proposed classes. The details of Nissan's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class Members. Plaintiff and Class Members could not have reasonably discovered the fact that the panoramic sunroofs installed in their Class Vehicles were defective.

115.  **Estoppel**. Nissan was and is under a continuous duty to disclose to Plaintiff and Class Members the true character, quality, and nature of the panoramic sunroofs installed in the Class Vehicles. At all relevant times, and continuing to this day, Nissan knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the panoramic sunroofs installed in the Class Vehicles. The details of Nissan's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class Members. Plaintiff reasonably relied upon Nissan's knowing,

affirmative, and/or active concealment and affirmative misrepresentations. Based on the foregoing, Nissan is estopped from relying on any statutes of limitation in defense of this action.

116.  **Equitable Tolling**. Nissan took active stops to conceal the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and/or leased Class Vehicles with defective panoramic sunroofs. The details of Nissan's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class Members. When Plaintiff learned about this material information, she exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing her claims. Nissan fraudulently concealed its above-described wrongful acts. Should such tolling be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

## VIII.   CLAIMS FOR RELIEF

## COUNT I

## Violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*

**(Plaintiff individually and on behalf of the Nationwide Class and, alternatively, on behalf of the California Class)**

117.  Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

118.  The Magnuson-Moss Warranty Act, 15 U.S.C. §2301(d)(1), provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

119.  Plaintiff and Class Members are "consumers" within the meaning of 15 U.S.C. § 2301(3).

120.  Nissan is a "supplier" and "warrantor" within the meanings of 15 U.S.C. §§ 2301(4)-(5).

121.    Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

122.    Nissan provided a written warranty for each Class Vehicle.  Nissan's express warranties are written warranties within the meaning of the MMWA, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranties are covered under 15 U.S.C. §2301(7).

123.    Nissan breached the warranties by:

    a.    Extending a 36 month/36,000 mile New Vehicle Limited Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee;

    b.    Selling and leasing Class Vehicles with panoramic sunroofs that were defective in material and workmanship, requiring repair or replacement within the warranty periods; and

    c.    Refusing to honor the express warranties by not repairing or replacing the panoramic sunroofs free of charge.

124.    Plaintiff and Class Members own Class Vehicles that experienced spontaneous panoramic sunroof shattering during the period of warranty coverage.

125.    Despite Nissan's warranty, Nissan has not repaired or replaced these shattered panoramic sunroofs and no charge to the consumers. In fact, Nissan has denied claims made under its warranty(ies) by consumers whose Class Vehicle panoramic sunroof shattered.

126.    Nissan's breach of express warranty(ies) has deprived Plaintiff and Class Members of the benefit of the bargain.

127.    Plaintiff and Class Members have had sufficient dealings with either Nissan or its franchisees, representatives, and agents to establish any required privity of contract. Nonetheless,

privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between Nissan and its dealers and specifically of Nissan's express and implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements with the Class Vehicles. The warranty agreements were designed for and intended to benefit the consumers only.

128. The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000.00 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

129. Nissan has been afforded reasonable opportunity to cure its breaches of warranty, including when Plaintiff brought her vehicle in for repair of the defective panoramic sunroof.

130. Pursuant to the provisions of 15 U.S.C. § 2310(e), Plaintiff and Class Members have all sufficiently notified Nissan, thus providing Nissan with reasonable opportunity to correct its business practices and cure its breach of warranties under the MMWA.

131. Nissan has not cured the breach of warranty described above and continues to deny warranty coverage when Class Members present their vehicles for repair after their Class Vehicles' panoramic sunroofs spontaneously shattered.

132. Resorting to any informal dispute settlement procedure or affording Nissan another opportunity to cure its breach of warranty is unnecessary and futile. Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as Nissan has repeatedly failed to disclose the panoramic sunroof defect or provide repairs at no cost and, therefore, has indicated no desire to participate in such a process at this time. Any requirement under the MMWA or otherwise that Plaintiff submit to any informal dispute settlement procedure or otherwise afford Nissan a reasonable opportunity to

cure its breach of warranty(ies) is excused and/or has been satisfied.

133.    As a direct and proximate result of Nissan's warranty(ies) breach, Plaintiff and Class Members sustained damages and other losses to be determined at trial. Nissan's conduct damaged Plaintiff and Class Members, who are entitled to recover damages, specific performance, costs, attorneys' fees, and other appropriate relief.

## COUNT II

### Unjust Enrichment

**(Plaintiff individually and on behalf of the Nationwide Class, and alternatively, on behalf the California Class)**

134.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

135.    As described above, Nissan sold Class Vehicles to Plaintiff and Class Members even though the panoramic sunroofs installed in those Class Vehicles were defective and posed a safety hazard. Nissan failed to disclose its knowledge of the sunroof defect and the defect's attendant risks-- at the point of sale or otherwise.

136.    Nissan unjustly charged and charges Plaintiff and Class Members for repairs and/or replacement of the defective panoramic sunroofs without disclosing that the defect is widespread and that the repairs do not address the root cause of the defect.

137.    As a result of its acts and omissions related to the defective sunroofs, Nissan obtained monies that rightfully belong to Plaintiff and Class Members.

138.    Nissan appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and Class Members who, without knowledge of the defect, paid a higher price for their vehicles than those vehicles were worth. Nissan also received monies for vehicles that Plaintiff and Class Members would not have otherwise purchased had they been aware of the defect.

139.   It would be inequitable and unjust for Nissan to retain these wrongfully obtained profits.

140.   Nissan's retention of these wrongfully-acquired profits would violate fundamental principles of justice, equity, and good conscience.

## COUNT III

### Violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*

**(Plaintiff individually and on behalf of the California Class)**

141.   Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

142.   Nissan has violated and continues to violate California's UCL, Cal. Bus. & Prof. Code § 17200, et seq., which prohibits unlawful, unfair, and fraudulent business acts or practices.

143.   Nissan's acts and practices, alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices, in violation of the UCL. In particular, Nissan sold Class Vehicles to Plaintiff and Class Members even though the panoramic sunroofs installed in those Class Vehicles are defective and pose a safety hazard, and failed to disclose its knowledge of the defect and the attendant risks of the defect at the point of sale or otherwise.

144.   Nissan's business acts and practices are unlawful in that they violate the Consumers Legal Remedies Act, Cal. Civil Code § 1750, et seq. for the reasons set forth below.

145.   Nissan's acts and practices also constitute fraudulent practices in that they are likely to deceive a reasonable consumer. As described above, Nissan knowingly concealed, continues to conceal, failed, and continues to fail to disclose at the point of sale and otherwise that Class Vehicles' panoramic sunroofs have a propensity to spontaneously shatter, endangering the personal safety of drivers. Had Nissan disclosed that information, Plaintiff and Class Members would not have purchased Class Vehicles or would have paid significantly less for

them. Furthermore, Nissan charges for repairs of Plaintiff's and Class Members' shattered panoramic sunroofs without disclosing that the problem is widespread and that the repairs do not address the root cause of the defect.

146.   Nissan's conduct also constitutes unfair business practices for at least the following reasons:

(a)   The gravity of potential harm to Plaintiff and Class Members as a result of Nissan's acts and practices far outweighs any legitimate utility of Nissan's conduct;

(b)   Nissan's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and Class Members; and

(c)   Nissan's conduct undermines or violates stated policies underlying the UCL—to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace.

147.   As a direct and proximate result of Nissan's business practices described herein, Plaintiff and Class Members suffered a foreseeable injury-in-fact and lost money or property because they purchased and paid for Class Vehicles that, had they known of the defect, they would not have purchased or, in the alternative, they only would have purchased for a lower amount.

148.   Plaintiff and Class Members are entitled to equitable relief, including an order directing Nissan to disclose the existence of the defect inherent in its panoramic sunroofs and to provide restitution and disgorgement of all profits paid to Nissan as a result of its unfair, deceptive, and fraudulent practices, reasonable attorneys' fees and costs, and a permanent injunction enjoining such practices.

## **COUNT IV**

**Violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.***

**(Plaintiff individually and on behalf of the California Class)**

149.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

150.     Nissan is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770, and has provided "goods" within the meaning of Cal. Civ. Code §§ 1761 (b) and 1770.

151.     Plaintiff and members of the proposed California Class are "consumers" within the meaning of Cal. Civ. Code §§ 1761(d) and 1770 and have engaged in a "transaction" within the meaning of Cal. Civ. Code §§ 1761 and 1770.

152.     Nissan's acts and practices, which were intended to result and which did result in the sale of Class Vehicles with defective panoramic sunroofs, violate the CLRA for at least the following reasons:

(a)     Nissan represents that its vehicles with panoramic sunroofs had characteristics, values, or benefits which they do not have;

(b)     Nissan advertises its goods with intent not to sell them as advertised;

(c)     Nissan represents that its vehicles and panoramic sunroofs are of a particular standard, quality, or grade when they are not;

(d)     Nissan represents that a transaction conferred or involved rights, remedies, or obligations which they do not; and

(e)     Nissan represents that its goods have been supplied in accordance with a previous representation when they have not.

153.     As described herein, Nissan sold vehicles to Plaintiff and Class Members even though the panoramic sunroofs installed in those Class Vehicles are defective and pose a safety hazard, and Nissan failed to disclose its knowledge of its panoramic sunroof defect and further failed to disclose the attendant risks associated with that defect at the point of sale or otherwise.

Nissan intended that Plaintiff and Class Members rely on this omission in deciding to purchase their vehicles.  Plaintiff and Class Members did in fact rely on said omission.

154.    Had Nissan adequately disclosed the defect inherent in its panoramic sunroofs, Plaintiff and Class Members would not have purchased their Class Vehicle or, in the alternative, they would have only been willing to pay less for their Class Vehicle. Furthermore, Nissan charged Plaintiff and Class Members (and continues to charge) for the repair and replacement of defective panoramic sunroofs without disclosing that this spontaneous shattering problem is widespread and that the repairs do not address the root cause of the defect. Nor does Nissan disclose that the replacement part used in repairs is substantially identical to the original factory-installed panoramic sunroof, such that it may also spontaneously explode.

155.    Pursuant to the provisions of the CLRA, Plaintiff will give notice of the defect to Nissan and upon the expiration of the period described in Cal. Civ. Code Section 1782, subd. (d), Plaintiffs will amend this Complaint to state a claim for damages under the CLRA.

## COUNT V

### Violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 *et seq*.

### (Plaintiff individually and on behalf of the California Class)

156.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

157.    Class Vehicles are "consumer goods" and Plaintiff and Class Members are "buyers" within the meaning of Cal. Civ. Code § 1791. Nissan is also a "manufacturer," "distributor," or "retail seller" within the meaning of Cal. Civ. Code § 1791.

158.    The implied warranty of merchantability included with the sale of each Class Vehicle means that Nissan warranted that each Class Vehicle:

(a)    would pass without objection in trade under the contract description;

(b)     was fit for the ordinary purposes for which the Class Vehicle would be used; and

(c)     conformed to the promises or affirmations of fact made on the container label.

159.    The Class Vehicles would not pass without objection in the automotive trade because their panoramic sunroofs are inherently defective in that they have a propensity to spontaneously explode, shatter, or otherwise fail, making them unfit for the ordinary purpose for which the Class Vehicles are normally used.

160.    The Class Vehicles are not adequately labeled because their labeling fails to disclose the panoramic sunroofs' propensity to spontaneously shatter and does not advise Plaintiff or Class Members of the existence of the defect.

161.    Nissan's actions have deprived Plaintiff and Class Members of the benefit of their bargains and have caused Class Vehicles to be worth less than what Plaintiff and Class Members paid for them.

162.    As a direct and proximate result of Nissan's conduct as described herein, Plaintiff and Class Members received goods in a condition that substantially impairs their value. Plaintiff and Class Members have been damaged by the diminished value of their Class Vehicles, among other ways.

163.    Plaintiff and Class Members are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of Class Vehicles or the overpayment or diminution in value of their Class Vehicles. They are also entitled to all incidental and consequential damages resulting from Nissan's conduct, as well as reasonable attorneys' fees and costs.

CLASS ACTION COMPLAINT

## IX.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of herself and the class request that the Court enter a judgment awarding the following relief:

A.     An order certifying the proposed classes and appointing Plaintiff's counsel to represent the classes;

B.     An order awarding Plaintiff and Class Members their actual damages, punitive damages, and/or any other form of monetary relief provided by law;

C.     An order awarding Plaintiff and Class Members restitution, disgorgement, or other equitable relief as the Court deems proper;

D.     An order requiring Nissan to adequately disclose and repair the defective panoramic sunroofs;

E.     An order awarding Plaintiff and Class Members pre-judgment and post-judgment interest as allowed under the law;

F.     An order awarding Plaintiff and Class Members reasonable attorneys' fees and costs of suit, including expert witness fees; and

G.     An order awarding such other and further relief as this Court may deem just and proper.

//

//

//

//

//

//

//

CLASS ACTION COMPLAINT

## X.   <u>JURY DEMAND</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury all issues so triable under the law.

DATED:  February 1, 2017

Respectfully submitted,

Crystal Foley (SBN 224627)
**SIMMONS HANLY CONROY LLC**
100 N. Sepulveda Blvd., Suite 1350
El Segundo, California 90245
Telephone: (310) 322-3555
cfoley@simmonsfirm.co

Paul J. Hanly, Jr.
(*pro hac vice* to be submitted)
Mitchell M. Breit
(*pro hac vice* to be submitted)
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue
New York, New York 10016-7416
Telephone:  (212) 784-6400
Facsimile:  (212) 213-5949
phanly@simmonsfirm.com
mbreit@simmonsfirm.com

Gregory F. Coleman
(*pro hac vice* to be submitted)
Mark E. Silvey
(*pro hac vice* to be submitted)
Adam A. Edwards
(*pro hac vice* to be submitted)
Lisa A. White
(*pro hac vice* to be submitted)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone:  (865) 247-0080
Facsimile:  (865) 533-0049
greg@gregcolemanlaw.com
mark@gregcolemanlaw.com
adam@gregcolemanlaw.com
lisa@gregcolemanlaw.com

**Attorneys for Plaintiff**

54