UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERIDA JOHNSON, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>NISSAN NORTH AMERICA, INC.,<br><br>　　　　　Defendant. | Case No. 17-cv-00517-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 59 |

## INTRODUCTION

Plaintiffs, purchasers of Nissan vehicles with panoramic sunroofs, allege that the panoramic sunroofs installed in their vehicles spontaneously shatter and that Nissan refuses to repair, replace, or otherwise compensate plaintiffs with respect to these explosions, despite the warranties. They bring suit on behalf of California, New York, Colorado, Florida, and Illinois classes under several theories against defendants Nissan North America, Inc. and Nissan Motor Co., Ltd. Nissan Motor Co., Ltd. has since been dismissed pursuant to stipulation. *See* Dkt. No. 39. Remaining defendant Nissan North America, Inc. ("Nissan") moves to dismiss certain of Plaintiffs' claims. For the reasons set forth below, I GRANT Nissan's motion to dismiss Counts 10, 12, 14, 15, and 16 and DENY Nissan's motion to dismiss the remaining claims.

## BACKGROUND

Nissan manufactures, markets, and distributes automobiles in the United States. Second Amended Complaint ("SAC") ¶ 23 [Dkt No. 56]. Since at least 2008, Nissan has offered vehicles with an optional upgrade of a factory-installed panoramic sunroof. *Id.* ¶ 25. The vehicles with factory-installed panoramic sunroofs at issue in this litigation are Rogue, Maxima, Sentra, Pathfinder, and Altima models from 2008 to the present; Murano models from 2009 to the present; and Juke models from 2011 to the present (collectively, the "Class Vehicles"). *Id.* ¶ 24. The

panoramic sunroofs are considered luxury and expensive upgrade options that can cost upwards of one thousand dollars to purchase or repair. *Id.* ¶ 63. Plaintiffs allege that various design and manufacturing decisions have weakened the integrity of the panoramic sunroofs, increasing the probability for the glass to be compromised and result in catastrophic failure, often "explosively." *Id.* ¶¶ 33–34. These design and manufacturing decisions include using tempered glass, thinner glass, ceramic enamels, and increased application of pressure during installation. *Id.* ¶¶ 32–42. Explosions of the panoramic sunroofs pose various dangers, including cuts from shards of glass, damage to the interior of the vehicles, and distraction or startling while driving that could result in car accidents. *Id.* ¶ 65.

At least 105 Nissan vehicle owners have reported to the National Highway Traffic Safety Administration that their Nissan panoramic sunroofs have shattered. SAC ¶¶ 43–44. These complaints have been lodged since as early as 2008. *Id.* ¶ 50. Plaintiffs allege that Nissan knew or should have known about these complaints as early as 2008, *id.* ¶ 9, and absolutely knew about the complaints of shattering panoramic sunroofs since at least 2013 based on information in Nissan's possession. *Id.* ¶¶ 46, 51–54. Nissan conceals and fails to warn consumers about such complaints and the risks associated with panoramic sunroofs. *Id.* ¶¶ 71–74.

Plaintiff Sherida Johnson purchased a certified pre-owned 2016 Nissan Maxima with a panoramic sunroof from CarMax Auto Superstores California, LLC in August 2016. SAC ¶ 87. While she was commuting to work in that vehicle, the panoramic sunroof shattered. *Id.* ¶¶ 92–93. Ms. Johnson was not physically injured. The vehicle was within the limits of the three-year or 36,000-mile warranty. *Id.* ¶¶ 89, 94. However, an employee from a Nissan dealership informed Ms. Johnson that the panoramic sunroof shattering was not covered under the warranty, and Ms. Johnson paid some $185 (after reimbursements from her insurance company) to repair it. *Id.* ¶¶ 100–105. Similarly, plaintiff Subrina Seenarain purchased a certified pre-owned 2014 Nissan Maxima with a panoramic sunroof from Nissan of Garden City in Hempstead, Nassau County, New York. *Id.* ¶ 110. Her panoramic sunroof shattered while she was driving, and she too was told by a Nissan representative that the damage was not covered by her warranty. *Id.* ¶¶ 115–19. Ms. Seenarain paid over $1,000 to repair the damage. *Id.* ¶ 120. Johnson and Seenarain allege

that they are afraid to drive their vehicles because they fear that the sunroof will shatter again, and no longer use the feature. *Id.* ¶¶ 108, 122.

The SAC names four new plaintiffs who make similar allegations. The panoramic sunroof of Chad Loury's 2012 Nissan Murano, which he purchased from Orange Motors in Ontario, California, shattered while he was driving in August 2015. SAC ¶¶ 124–25. Nissan of Duarte, California refused to repair the sunroof, and he spent $750 in repairs. *Id.* ¶¶ 126–27. Linda Spry purchased a 2012 Nissan Murano from Auto Nation Nissan in Centennial, Colorado, and its panoramic sunroof shattered on October 11, 2016, while she was driving. *Id.* ¶¶ 130–31. Auto Nation Nissan refused to repair her sunroof, despite Spry's extended vehicle warranty, and she paid $1,114 in repairs. *Id.* ¶¶ 132–34. Linda Sullivan purchased a 2012 Nissan Murano from Lokay Nissan in Clearwater, Florida, and on August 12, 2015, the panoramic sunroof shattered while she was driving. *Id.* ¶¶ 137–39. The Lokay Nissan dealership refused to cover the cost of repairs and she had to pay a deductible to her insurance company for the repairs. *Id.* ¶¶ 140–41. Finally, April Ahrens purchased a new 2015 Nissan Rogue from Auffenberg Nissan in O'Fallon, Illinois in April of 2015, and the panoramic sunroof shattered while she was driving on January 21, 2017. *Id.* ¶¶ 144–45. The Watermark Nissan in Marion, Illinois refused to cover the cost of repairs, although her insurance company did after she made a claim. *Id.* ¶¶ 147–48. Her vehicle was repaired with an "equally defective" sunroof. *Id.* ¶ 147.

Plaintiffs now bring several claims individually and on behalf of California, New York, Colorado, Florida, and Illinois classes, representing purchasers and lessees of Class Vehicles. These claims are for violation of the Magnuson-Moss Warranty Act ("MMWA"), individually and on behalf of the state classes; unjust enrichment, individually and on behalf of the state classes; violation of California's Unfair Competition Law ("UCL"), for Johnson and Loury individually and on behalf of the California class; violation of California's Consumer Legal Remedies Act ("CLRA"), for Johnson and Loury individually and on behalf of the California class; deceptive acts and practices under New York General Business Law Section 349, for Seenarain individually and on behalf of the New York class; breach of express warranty under New York law, for Seenarain individually and on behalf of the New York class; breach of implied warranty of

merchantability under New York law, for Seenarain individually and on behalf of the New York class; and false advertising under the New York General Business Law Section 350, for Seenarain individually and on behalf of the New York class; violation of the Colorado Consumer Protection Act ("Colorado CPA"), for Spry individually and on behalf of the Colorado class; breach of implied warranty of merchantability under Colorado law, for Spry individually and on behalf of the Colorado class; breach of express warranty under Colorado law, for Spry individually and on behalf of the Colorado class; violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), for Sullivan individually and on behalf of the Florida class; breach of implied warranty of merchantability under Florida law, for Sullivan individually and on behalf of the Florida class; violation of Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), for Ahrens individually and on behalf of the Illinois class; and breach of implied warranty of merchantability under Illinois law, for Ahrens individually and on behalf of the Illinois class.

Nissan moves to dismiss plaintiffs' MMWA claim, Spry's breach of express warranty claim, Sullivan and Ahren's implied warranty of merchantability claims, and Spry, Sullivan, and Ahrens' consumer-fraud claims.

**LEGAL STANDARD**

Under Federal Rule of Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The court is

not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Claims sounding in fraud or mistake are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that such claims "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This includes claims grounded in fraud brought under Colorado's CPA. *See Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1216 (D. Colo. 2012). To satisfy this standard, a plaintiff must identify the "who, what, when, where, and how" of the misconduct charged, as well as an explanation as to why the statement or omission complained of was false or misleading. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The allegations "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

If the court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

**I.      Whether Plaintiffs Must Allege They Satisfied the MMWA's Informal Dispute Settlement Requirements**

Defendants move to dismiss plaintiffs' MMWA claims because plaintiffs do not allege that they satisfied the Act's informal dispute settlement requirements. The MMWA "encourage[s] warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms." 15 U.S.C. § 2310(a)(1). If a warrantor

5

establishes such a procedure meeting the requirements established by the Federal Trade Commission, and the warrantor "incorporates in a written warranty a requirement that the consumer resort to such a procedure before pursuing any legal remedy" under the MMWA, then neither a consumer nor a class of consumers may proceed with a civil action respecting such a warranty unless the consumer "resorts to such a procedure" or the named plaintiffs "(upon notifying the defendant that they are named plaintiffs in a class action with respect to a warranty obligation) initially resort to such a procedure." 15 U.S.C. § 2310(a)(3).

Plaintiffs do not dispute that Nissan's warranty contained such informal dispute settlement procedures, nor that they failed to follow the warranty procedure prior to filing suit. Instead, plaintiffs allege that following Nissan's informal dispute settlement procedures would have been futile, *see* SAC ¶¶ 184, 228, 314, and that they have no obligation to allege in their complaint that they followed every warranty procedure because they have no obligation to make allegations anticipating Nissan's affirmative defenses. *See Lohr v. Nissan N. Am., Inc.*, No. C16-1023, 2017 WL 1037555, at \*8 (W.D. Wash. Mar. 17, 2017) ("Nissan's exhaustion requirement argument is unconvincing because failure to participate in an informal dispute process is an affirmative defense which Plaintiffs need not anticipate in their complaint."); *Glenn v. Hyundai Motor Am.*, SA CV 15-2052, 2016 WL 3621280, at \*14 (C.D. Cal. June 24, 2016) (rejecting defendant's MMWA informal dispute resolution procedures argument because "Plaintiffs are not required to negate anticipated affirmative defenses in their complaints"); *Salinas v. Ford Motor Co.*, No. 7:15-CV-11, 2015 WL 13121265, at \*5 (S.D. Tex. Sept. 3, 2015) ("[T]he Court agrees with Plaintiff that the MMWA's exhaustion requirement is an affirmative defense, more appropriately addressed on summary judgment than in a motion to dismiss."); *see also Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1040, 1043 (9th Cir. 2011) (holding that § 2310(a) is a prudential and not jurisdictional prerequisite to filing an MMWA claim and that failure to exhaust is an affirmative defense "that may be defeated by compelling reasons").

Even if plaintiffs were required to make such allegations, the SAC contains sufficient allegations to draw the reasonable inference that following Nissan's warranty procedures would have been futile. *See In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 989 (N.D. Cal.

6

2014) (recognizing futility exception, but concluding that plaintiffs' allegations in that case were insufficient to show futility). Plaintiffs allege that "Nissan has repeatedly failed to disclose the panoramic sunroof defect or provide repairs at no cost and, therefore, has indicated no desire to participate in such a process at this time." SAC ¶ 184. Named plaintiffs specifically allege that after their panoramic sunroofs shattered, they each contacted Nissan dealers or Nissan directly, but Nissan refused to cover the damage under the warranty. *Id.* ¶¶ 99–100, 118–19, 126, 132–33, 140, 147. Plaintiffs also allege that "[a]t least 105 Nissan vehicle owners reported an incident of their sunroof shattering to NHTSA," *id.* ¶ 43, dating back to "as early as 2008," *id.* ¶ 50, and that "Nissan has long known that its panoramic sunroofs are prone to unexpected and dangerous shattering," *id.* ¶ 46. Given these allegations and the level of detail provided in the SAC, plaintiffs have sufficiently alleged futility at this stage of the proceedings. Nissan's MMWA exhaustion defense is better suited to be addressed at summary judgment. *See Salinas*, 2015 WL 13121265, at *5.

**II. Whether Spry Sufficiently Alleges a Claim for Express Warranty**

The next issue is whether Spry properly states a claim for express warranty. Nissan argues that she cannot, as her own factual allegations show that her vehicle was not within the coverage period of Nissan's warranty. Spry argues that she alleges that she "had an[] extended warranty for the vehicle," SAC ¶ 133, and that she "experienced defects within the warranty period," *id.* ¶ 312. She argues that her allegations are like Seenarain's, which I previously found sufficient to state a claim. I disagree.

Spry purchased her vehicle in February of 2013, and her panoramic sunroof shattered in October of 2016, more than 36 months later. SAC ¶¶ 130–31. Nissan's warranty provides "basic coverage" for "36 months or 36,000 miles, whichever comes first." Nissan's Request for Judicial Notice Ex. 1 ("Nissan Warranty"), at 6 [Dkt. No. 36-1]. While Spry argues that she had an "extended warranty," she provides no factual allegations regarding the coverage period or terms of this warranty. *See* SAC ¶ 133. Instead, in Count 12 for breach of express warranty, she mentions only the standard warranty: "Nissan provided an express New Vehicle Limited Warranty ("NVLW") for a period of three years or 36,000 miles, whichever occurs first," *id.* ¶ 310, then

7

alleges that she "experienced defects within the warranty period." *Id.* ¶ 312.

In context, clearly some of these allegations must be incorrect. Spry's assertion that she "had an[] extended warranty," alone, does not allow me to conclude that her vehicle was still within that warranty because she does not allege the extended warranty's terms. Seenarain, on the other hand, alleges that her vehicle was under Nissan's standard warranty, that it was a 2014 model when she purchased it, and that the sunroof shattered in September of 2016, thus permitting the reasonable inference that her vehicle was within the standard coverage period. *Id.* ¶¶ 110, 115, 123. For these reasons, I find Spry's breach of express warranty claim insufficient as a matter of law, and I DISMISS Count 12 of the SAC.

### III. Whether Plaintiffs' Florida and Illinois Breach of Implied Warranty Claims Require Privity

Nissan next moves to dismiss the Florida and Illinois breach of implied warranty of merchantability claims for lack of privity.[1] Plaintiffs Sullivan and Ahrens argue first that they allege that they are in "actual or constructive privity" with Nissan because Nissan extended express written warranties to end-user purchasers and lessees, and had "sufficient direct dealings" with plaintiffs to establish any required privity of contract. SAC ¶¶ 344, 382. Plaintiffs cite no authority for the proposition that Nissan's express warranties create privity of contract with plaintiffs so as to give rise to breach of implied warranty claims either under Florida or Illinois law, and I will not be the first to recognize such an expansion of law.

While Sullivan cites *American Coach Lines of Orlando* in support of her contention that she had "sufficient direct dealings with Nissan . . . to establish any required privity of contract," that case discussed the "direct contacts" exception to privity in the context of express warranties only. *See Am. Coach Lines of Orlando, Inc. v. N. Am. Bus Indus., Inc.*, No. 6:09-cv-1999, 2011 WL 653524, at *18 (M.D. Fla. Feb. 14, 2011). And even if Florida law does apply that exception to implied warranty claims, Sullivan's allegations would nonetheless fall short. She does not plead that she had any direct contacts with Nissan the manufacturer at all, let alone sufficient

---

[1] Nissan also apparently moves to dismiss any California implied warranty claims. *See* Mot. at 6–7. Plaintiffs, however, do not bring any implied warranty claims under California law.

8

1    direct contacts to give rise to liability. Similarly, Ahrens provides no support under Illinois law
2    for her "direct contacts" exception to privity, nor does she allege that she had any contacts with
3    Nissan that would allow me to conclude that that exception applied.
4    　　　　Plaintiffs next argue that even if they are not in privity with Nissan, privity is not required
5    because they are third-party beneficiaries of Nissan's contracts with its dealers. SAC ¶¶ 344(b),
6    382(b). Nissan argues that neither Florida nor Illinois recognizes this exception to privity in
7    implied warranty claims. I will address each state's law.

### A. Whether Florida Law Requires Privity of Contract for Breach of Implied Warranty

The parties dispute whether Florida law recognizes a third-party beneficiary exception to Florida's privity requirement for implied warranty claims. Modern Florida courts consistently hold in actions by consumers against vehicle manufacturers that "privity of contract is required to maintain an action for breach of implied warranty," and have not recognized a third-party beneficiary exception. *See Ocana v. Ford Motor Co.*, 992 So. 2d 319, 325 (Fla. Dist. Ct. App. 2008); *Rentas v. DaimlerChrysler Corp.*, 936 So. 2d 747, 751 (Fla. Dist. Ct. App. 2006) (affirming dismissal of breach of implied warranty claim by vehicle purchaser for lack of privity); *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005) ("[A] plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity."); *see also Bailey v. Monaco Coach Corp.*, 168 Fed. App'x 893, 895 (11th Cir. 2006) (reasoning, under Florida law, that "the absence of privity between [plaintiff] and [defendant] is dispositive: [plaintiff's] claim of breach of implied warranty fails as a matter of law").

Sullivan depends on *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223 (S.D. Fla. 2014), a federal case that recognized the third-party beneficiary exception, relying on another federal case from Louisiana that in turn cited a Florida case arising in a different context. *See id.* at 1234. Sullivan also cites several Florida cases, the most recent of which is from 1984, that recognize certain exceptions to privity in various contexts. *See* Opp. at 8–9. Because the weight of the authority from modern Florida courts is consistent, however, I decline to follow *Sanchez-Knutson*, and instead follow the Florida courts' clear guidance that Florida law does not recognize

9

this exception. For these reasons, Sullivan's breach of implied warranty claim in Count 14 is DISMISSED.

### B. Whether Illinois Law Requires Privity of Contract for Breach of Implied Warranty

The parties similarly disagree whether or in what circumstances Illinois law recognizes the third-party exception to privity. Like Florida, however, Illinois requires "vertical privity of contract with the seller" "[i]n order for a plaintiff to file a claim for economic damages under the UCC for breach of an implied warranty." *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 807 N.E. 2d 1165, 1168 (Ill. App. Ct. 2004). Indeed, "[a]lthough this vertical privity requirement has been challenged on a number of occasions, [the Illinois] supreme court has consistently declined to abolish the doctrine in cases where purely economic damages are sought." *Id.* (citing *Rothe v. Maloney Cadillac, Inc.*, 518 N.E. 2d 1028, 1029–30 (1988); *Szajna v. Gen. Motors Corp.*, 503 N.E. 2d 760, 767 (1986)). While Ahrens cites to another federal case recognizing the third-party beneficiary exception to privity under Illinois law, *see Elward v. Electrolux Home Prods., Inc.*, 214 F. Supp. 3d 701, 705–06 (N.D. Ill. 2016), I again decline to follow that court's reasoning because Illinois state courts are clear on Illinois law. Thus, Ahrens may not argue that she is a third-party beneficiary of Nissan's contracts with its dealers; Illinois law recognizes no such exception to the privity requirement. For these reasons, Ahrens' breach of implied warranty claim in Count 16 is also DISMISSED.[2]

### IV. Whether Plaintiffs Sufficiently Allege Consumer Fraud Claims

Nissan next addresses plaintiffs' consumer fraud claims. Nissan first purports to move to dismiss any claims, including concealment claims, based on allegedly false or misleading

---

[2] Nissan also asks that I clarify what I meant in the last Order that Seenarain could take advantage of the third-party beneficiary exception to NY's privity requirement because she had "plausibly allege[d] that she is an intended third-party beneficiary of the contracts between Nissan and its dealers." Order at 14 [Dkt. No. 55]. She alleged that "Plaintiff and New York Class Members are intended third-party beneficiaries of contracts between Nissan and its dealers, franchisees, representatives, and agents," Order at 14 (quoting FAC ¶ 282(b)), as well as that Nissan dealers "have no rights under the warranty agreements provided with the Class Vehicles," Order at 15 (quoting FAC ¶ 292(a)). I accepted Seenarain's allegations as true for purposes of pleading. Discovery will reveal the merits of these allegations.

representations, but does not specify which causes of action with which it takes issue. I will not hazard a guess, but instead note that the previous Order already found that plaintiffs' consumer fraud claims under California law, including those based on theories of concealment, were sufficient to state a claim. *See* Order at 19.

Nissan next moves to dismiss the Illinois, Florida, and Colorado consumer fraud claims on the basis that these plaintiffs' allegations are insufficient to state a nondisclosure claim because they do not contain sufficient detail, nor do they allege a duty to disclose on behalf of Nissan. Nissan separately moves to dismiss Ahrens' Illinois claim on the basis that the ICFA does not recognize nondisclosure claims.

### A. Ahren's ICFA Claim

Illinois law is clear that the ICFA does recognize nondisclosure claims based on concealment or omission of a material fact. Section 2 of the ICFA proscribes "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the *concealment, suppression or omission of any material fact . . . .*" 815 ILCS 505/2 (emphasis added). The plain language of the ICFA thus allows for nondisclosure claims based on a theory of either concealment, suppression, or omission. Moreover, Illinois case law is clear that "[a]n omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud." *White v. DaimlerChrysler Corp.*, 856 N.E. 2d 542, 547 (Ill. App. Ct. 2006).

Nissan appears to argue, however, that in order to bring a successful nondisclosure claim, a plaintiff must allege that she received a communication that was incomplete, not simply that a manufacturer committed a general failure to disclose. *See* Mot. at 11–12. This contention is supported by Illinois law. *See De Bouse v. Bayer*, 922 N.E. 2d 309, 316 (Ill. 2009) ("[W]e have repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission. If there has been no communication with the plaintiff, there have been no statements and no omissions.").

Ahrens' allegations fall short of pleading that she received any communication from Nissan or its dealers sufficient to give rise to a concealment or omission claim under the ICFA.

11

Ahrens simply alleges, without any background information about her decision-making process, pre-purchase research, or her sales experience, that "[i]n April, 20[]15 April Ahrens purchased a new 2015 Nissan Rogue from Auffenberg Nissan in O'Fallon, Illinois." SAC ¶ 144. While Ahrens attempts to liken her allegations to those in *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E. 2d 584, 594–95 (Ill. 1996), in that case, plaintiffs pursued theories of both affirmative misrepresentations and concealment, and alleged that the defendant car company had made statements to a magazine regarding its special safety features. Ahrens' allegations, on the other hand, are far too meager to state a claim under the ICFA. Because Plaintiffs represented at the hearing on this motion, however, that they could amend this claim to add more detail, they are granted leave to amend with respect to Count 15.

**B. Nissan's Knowledge at the Time of the Florida and Colorado Sales**

Nissan also moves to dismiss the Florida and Colorado claims on the basis that plaintiffs do not and cannot allege any duty to disclose on behalf of Nissan. Nissan asserts that they cannot allege any such duty because they plead no facts showing Nissan's knowledge of the shattering panoramic sunroofs at the time that these plaintiffs purchased their vehicles. Spry charges Nissan with certain violations of the Colorado CPA, including:

> (1) knowingly making a false representation as to the characteristics, uses and benefits of the Class Vehicles that had the capacity or tendency to deceive Colorado Class members; (2) representing that the Class Vehicles are of a particular standard, quality and grade even though Nissan knew or should have known they are not; (3) advertising the Class Vehicles with the intent not to sell them as advertised; and (4) failing to disclose material information concerning the Class Vehicles that was known to Nissan at the time of advertisement or sale with the intent to induce Colorado Class members to purchase, lease to retain the Class Vehicles.

SAC ¶ 273. Each of these violations requires that, at the time that plaintiffs purchased their Nissan vehicles or earlier, Nissan had knowledge of the alleged misrepresentation, omission, or concealment. *See also Francis v. Mead Johnson & Co.*, No. 1:10-cv-00701, 2010 WL 5313540, at *5 (D. Colo. Dec. 17, 2010) ("In order to maintain a 'failure to disclose' claim under the CCPA, Plaintiff must adequately allege . . . that Defendant knew [that it failed to disclose information] at the time of the advertisement or sale of the goods, services or property . . . ."). Sullivan also alleges that "Nissan owed Plaintiff and the Florida Class a duty to disclose the foregoing

panoramic sunroof defects and public health and safety risks . . . ." SAC ¶ 327. This allegation also requires knowledge on Nissan's behalf.

Nissan's argument that it did not have the requisite knowledge rests on the facts that Spry and Sullivan purchased their vehicles in February of 2013 and May of 2012, respectively, whereas plaintiffs' SAC alleges that Nissan was not contacted by NHTSA until July of 2014. Mot. at 12–13 (citing SAC ¶¶ 9, 130, 137). Nissan argues that it had no knowledge of the alleged defects in the panoramic sunroofs at the time that both Spry and Sullivan purchased their vehicles, and thus it had no duty to disclose that information.

Nissan cherry picks from the SAC and ignores plaintiffs' well-pleaded allegations regarding Nissan's knowledge. Plaintiffs allege that "Nissan knew or should have known about this problem since at least 2008 due to a number of consumer complaints lodged with NHTSA," SAC ¶ 9, and plaintiffs provide detailed information on these complaints, *see id.* ¶¶ 43–44. Contrary to Nissan's argument, several of these complaints pre-date 2014. *See id.* Plaintiffs further allege that Nissan's response to the NHTSA inquiry provides further support that Nissan knew about the defects in the panoramic sunroofs since at least as early as February of 2013 on the basis of information in its own possession. *See id.* ¶ 54. At this stage of the proceedings, these allegations are more than sufficient to allege Nissan's knowledge in support of plaintiffs' Colorado and Florida consumer fraud claims.

**C. Sufficiency of the Florida and Colorado Consumer Fraud Claim Allegations**

Finally, Nissan argues that the Florida and Colorado consumer fraud claims are insufficiently pled to satisfy Rule 9(b). With respect to the Florida claim, however, "[t]he requirements of Rule 9(b) do not apply to claims under the FDUTPA. FDUTPA was enacted to provide remedies for conduct outside the reach of traditional common law torts such as fraud, and therefore, the plaintiff need not prove the elements of fraud to sustain an action under the statute." *Galstaldi v. Sunvest Cmtys. USA, LLC*, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009) (internal quotation marks and citations omitted). While Sullivan's allegations are thin, they are nonetheless

sufficient to state a claim under FDUTPA.[3]

With respect to the Colorado claim, Nissan is correct that Rule 9(b) applies, but in the context of fraudulent omission claims, "the standard is modified somewhat. . . . [T]he Plaintiffs must sufficiently identify 'the particular information that should have been disclosed, the reason the information should have been disclosed, the person who should have disclosed it, and the approximate time or circumstance in which the information should have been disclosed.'" *Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1216 (D. Colo. 2012) (citing *S.E.C. v. Nacchio*, 438 F. Supp. 2d 1266, 1277 (D. Colo. 2006)). Nonetheless, Spry's allegations fall short of this pleading standard because she fails to allege "the approximate time or circumstance in which the information should have been disclosed." *Martinez*, 886 F. Supp. 2d at 1216. While in the context of the entire SAC the first three factors can be reasonably inferred, Spry's allegations surrounding the context of her purchase are so bare that it is impossible to know if she relied on any communications or advertising from Nissan or one of its representatives, did any research prior to purchasing her vehicle, or spoke to anybody prior to her vehicle purchase. *See* SAC ¶ 130 ("On February 16, 2013, Ms. Spry purchased a 2012 Nissan Murano from Auto Nation Nissan in Centennial, Colorado."). Spry's allegations thus fail to state a claim and Count 10 for violation of the Colorado CPA is DISMISSED. Spry is granted leave to amend her allegations with specificity should she be able to do so.

## CONCLUSION

For the reasons stated above, I GRANT IN PART and DENY IN PART Nissan's Motion to Dismiss Plaintiffs' Second Amended Complaint. Counts 10, 12, 14, 15, and 16 are DISMISSED for failure to state a claim. Plaintiffs are granted leave to amend Counts 10 and 15

---

[3] Notably, the FDUTPA merely requires that plaintiff allege "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *DFG Grp., LLC v. Stern*, 220 So. 3d 1236, 1238 (Fla. Dist. Ct. App. 2017).

only within 20 days.

**IT IS SO ORDERED.**

Dated: February 15, 2018

William H. Orrick
United States District Judge