Gregory F. Coleman (*pro hac vice*)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 533-0049
greg@gregcolemanlaw.com

Crystal Foley (SBN 224627)
**SIMMONS HANLY CONROY LLC**
100 N. Sepulveda Blvd., Suite 1350
Los Angeles, CA 90245
Phone: (310) 322-3555
Facsimile: (310) 322-3655
cfoley@simmonsfirm.com

*Attorneys for Plaintiff*

Additional Counsel on Signature Page

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| SHERIDA JOHNSON, SUBRINA SEENARAIN, CHAD LOURY, LINDA SPRY, LISA SULLIVAN, and APRIL AHRENS, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>    v.<br><br>NISSAN NORTH AMERICA, INC.,<br><br>               Defendant. | Case No. 3:17-cv-00517-WHO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF LINDA SPRY'S CLAIMS, TO STAY PROCEEDINGS, AND TO STRIKE COLORADO CLASS ALLEGATIONS**<br><br>Date:     September 12, 2018<br>Time:    2:00 p.m.<br>Place:   Courtroom 2, 17th Floor<br>Judge:  Hon. William H. Orrick |

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................1

INTRODUCTION……………………………………………………………………………3

RELEVANT FACTS ......................................................................................................3

ARGUMENT……………………………………………………………………………..4

   I.     THE COURT MUST DECIDE WHETHER THE PURPORTED
         ARBITRATION CLAUSE APPLIES TO PLAINTIFF'S CLAIMS
         BECAUSE THE AGREEMENT DOES NOT ENCOMPASS THE
         DISPUTE AT ISSUE ..............................................................................4

   II.    THE DEALERSHIP ARBITRATION AGREEMENT IS
         INAPPLICABLE TO MS. SPRY'S CLAIMS................................................7

        A.  The Terms of the Agreement Do Not Evidence Any Intent
            to Include Nissan as a Third-Party Beneficiary……………......................7

           1.  Nissan is not expressly identified as a third-party beneficiary………..7

           2.  Plaintiff does not allege intertwined conduct between Nissan and
               the Dealership sufficient to confer third-party beneficiary status……..9

        B.  Equitable Estoppel Is Not Applicable to Ms. Spry's Claims……………..10

           1.  The first *Meister* scenario:  a signatory to an arbitration
               agreement may compel arbitration of a claim brought against
               it by a non-signatory……………………………………………..9

            2.  The second *Meister* scenario:  a signatory asserts a claim
               arising from a contract against a non-signatory to that contract……..11

               a.  The first subset:  when the plaintiff relies on the terms of a
                    written agreement to assert his claims……………………………12

                b.  The second subset:  when the plaintiff alleges interconnected
                    misconduct between the signatory and non-signatory
                    defendants and the misconduct is intertwined with duties or
                    obligations arising from the parties' contract……………………..13

            3.  Nissan seeks to impose an inequitable double standard……………..15

   III.   THERE IS NO BASIS TO GRANT NISSAN ANY OF THE
         OTHER RELIEF REQUESTED……………………………………............16

CONCLUSION……………………………………………………………………16

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION OF PLAINTIFF LINDA SPRY'S CLAIMS, TO STAY
PROCEEDINGS, AND TO STRIKE COLORADO CLASS ALLEGATIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Agnew v. Honda Motor Co.*, No. 1:08-cv-01433-DFH-TAB, 2009 U.S. Dist. LEXIS 53914, at *10-11 (S.D. Ind. May 20, 2009)....................................................................................................7

*AN Luxury Imps., Ltd. v. Southall*, No. 01-15-00194-CV, 2015 Tex. App. LEXIS 10252 (Tex. App. Oct. 1, 2015).............................................................................................................................10

*Austin v. U S W., Inc.*, 926 P.2d 181, 184 (Colo. App. 1996).....................................................7

*AutoNation, Inc. v. Susi*, 199 So. 3d 456, 460 (Fla. Dist. Ct. App. 2016) ........................... 10 n.3

*Bellman v. i3Carbon, Ltd. Liab. Co.*, 563 F. App'x 608 (10th Cir. 2014) ...............................12

*Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006)................................................................10

*Cunningham v. Fleetwood Homes of Ga.*, 253 F.3d 611 (11th Cir. 2001) ................................7

*Dinnen v. Kneen*, No. 16-cv-00882-PAB-STV, 2017 U.S. Dist. LEXIS 215179 (D. Colo. Mar. 30, 2017) ........................................................................................................................passim

*Eagle Ridge Condo. Ass'n v. Metro. Builders, Inc.*, 98 P.3d 915 (Colo. Ct. App. 2004)...........5

*Everett v. Dickinson & Co.*, 929 P.2d 10 (Colo. Ct. App. 1996)...........................................9, 14

*Estate of Guerrero*, 465 S.W.3d 693 (Tex. App. 2015)........................................................10 n.3

*Eychner v. Van Vleet*, 870 P.2d 486 (Colo. App. 1993) .......................................................9, 14

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995))............................................ 6-8

*Garcia v. NRI USA, LLC*, No. 2:17-CV-08355-ODW-GJS, 2018 U.S. Dist. LEXIS 130055 (C.D. Cal. Aug. 1, 2018)........................................................................................................8, 15

*Green v. Fishbone Safety Sols., Ltd.*, 303 F. Supp. 3d 1086 (D. Colo. 2018) ...................11, 15

*Harnden v. Ford Motor Co.*, 408 F. Supp. 2d 300 (E.D. Mich. 2004) ......................................7

*Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052 (9th Cir. 2013) (*en banc*)..............................5

*Kramer v. Toyota Motor Corp*, 705 F.3d 1122 (9th Cir. 2013).............................................passim

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION OF PLAINTIFF LINDA SPRY'S CLAIMS, TO STAY
PROCEEDINGS, AND TO STRIKE COLORADO CLASS ALLEGATIONS

*LegalForce RAPC Worldwide P.C. v. Trademark Engine LLC*, No. 17-cv-07303-MMC, 2018 U.S. Dist. LEXIS 107685 (N.D. Cal. June 26, 2018) ........................................................5

*Lewand v. Mazda Motor of Am.*, Inc., SACV 17-00620 JVS (JCGx), 2017 U.S. Dist. LEXIS 218371 (C.D. Cal. Aug. 8, 2017) ........................................................8

*Meister v. Stout*, 353 P.3d 916 (Colo. App. 2015).................................................... 10-12

*MSPBO, LLC v. Garmin Int'l, Inc.*, No. 13-cv-02287-PAB-KMT, 2014 U.S. Dist. LEXIS 127312 (D. Colo. Sept. 11, 2014) ........................................................5

*Pack v. Damon Corp.*, 320 F. Supp. 2d 545 (E.D. Mich. 2004), *rev'd in part on other grounds*, 434 F.3d 810 (6th Cir. 2006) ........................................................ 7-8

*Rains v. Found. Health Sys. Life & Health*, 23 P.3d 1249 (Colo. App. 2001) ..........................7

*Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844 (9th Cir. 2013) ...............................13

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010) .......................................6, 8

*Santich v. VCG Holding Corp.*, No. 17-cv-00631-RMMEH, 2017 U.S. Dist. LEXIS 156984 (D. Colo. Sept. 26, 2017) ........................................................11

*Shorey v. Jefferson Cty. Sch. Dist. No. R-1*, 807 P.2d 1181, 1183 (Colo. App. 1990)..............8

*Toyota Motor Corp. Unintended Acceleration Mktg.*, 838 F. Supp. 2d 967 (C.D. Cal. 2012)........................................................7

*Waymo LLC v. Uber Techs., Inc.*, 252 F. Supp. 3d 934 (N.D. Cal. 2017)...............................12

*White v. Don Mealey Imps.*, No. 6:10-cv-1303-Orl-31DAB, 2011 U.S. Dist. LEXIS 123545 (M.D. Fla. Feb. 3, 2011) ........................................................10

2

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION OF PLAINTIFF LINDA SPRY'S CLAIMS, TO STAY
PROCEEDINGS, AND TO STRIKE COLORADO CLASS ALLEGATIONS

## INTRODUCTION

Defendant Nissan North America, Inc. ("Nissan") seeks to compel Plaintiff Linda Spry to arbitrate her claims in this case, denying her right to have her case brought before a jury. Nissan wants to dramatically expand the scope of an Arbitration Agreement entered into only between Ms. Spry and the dealership that sold her Class Vehicle. Nissan's motion should be denied.

First, the plain language of the Arbitration Agreement provides no basis for extending it to a manufacturer that is neither a party nor a signatory to the Agreement. Second, the weight of relevant authority holds that vehicle manufacturers are not entitled to hide behind dealership arbitration clauses. Third, Nissan cannot seek coverage under the Agreement under Colorado law either on the basis of third-party beneficiary status or through the doctrine of equitable estoppel. Finally, since Nissan cannot invoke the dealership's Agreement, there is no basis to stay Ms. Spry's claims in this case. For all these reasons, the Court should deny Nissan's motion.

## RELEVANT FACTS

All the facts relevant to Nissan's motion reside in the Arbitration Agreement ("Agreement") entered into between Ms. Spry and the Dealership where she purchased her class vehicle. Reformatted for readability, the Agreement states in relevant part:

This Arbitration Agreement ("Agreement"), applies to Customer(s) ("you") who is/are in the process of:

> (1)    purchasing or leasing a vehicle(s) including any negotiations or application(s) for credit or other dealings or interactions with the Dealership (hereinafter including its employees, agents, successors, assigns, subsidiaries, parents and affiliates);

> (2)    servicing any vehicle(s) with the Dealership; or

> (3)    reviewing, negotiating or executing any documents or agreements during the course of interactions with the Dealership (collectively, "Customer(s)/Dealership Dealings").

You and the Dealership agree that arbitration will be the sole method of resolving any claim, dispute, or controversy (collectively, "Claims") that either Party has

3

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF LINDA SPRY'S CLAIMS, TO STAY PROCEEDINGS, AND TO STRIKE COLORADO CLASS ALLEGATIONS

arising from Customer(s)/Dealership Dealings. Such Claims include, but are not limited to, the following:

    (1)    Claims in contract, tort, regulatory, statutory, equitable or otherwise;

    (2)    Claims relating to any representations, promises, undertakings, warranties, covenants or service;

    (3)    Claims regarding the interpretation, scope, or validity of this Agreement, or arbitrability of any issue;

    (4)    Claims between you and Dealership; and

    (5)    Claims arising out of or relating to your application for credit, this Agreement and/or any and all documents executed, presented or negotiated during Customer(s)/Dealership Dealings, or any resulting transaction, service, or relationship, including with the Dealership, or any relationship with third parties who do not sign this Agreement that arises out of the Customer(s)/Dealership Dealings.

Arbitration Agreement, ECF No. 96-5. Nissan was not, and is not, a party or signatory to this Agreement. *Id.* Nevertheless, Nissan seeks to judicially expand the scope of the Agreement to include itself as the manufacturer of Ms. Spry's Class Vehicle.

## ARGUMENT

### I.    THE COURT MUST DECIDE WHETHER THE PURPORTED ARBITRATION CLAUSE APPLIES TO PLAINTIFF'S CLAIMS BECAUSE THE AGREEMENT DOES NOT ENCOMPASS THE DISPUTE AT ISSUE[1]

---

[1] Having already litigated Ms. Spry's claims for nearly a year, Nissan waited to file its Motion to Compel Arbitration until after it received an unfavorable ruling on its Motion to Dismiss that preserved many of Plaintiffs' claims. Since then, Nissan has filed not one, but two motions seeking to revisit its previously denied arguments. Nissan cannot wait to exercise its right to compel arbitration "until the parties have expended a significant amount of time and money to litigate that dispute in federal court. This is especially true where the untimely exercise of an arbitration clause would allow a party to evade future rulings of a federal judge which it fears will be unfavorable." *Freeney v. Bank of Am. Corp.*, No. CV 15-2376-JGB-PJWx, 2016 U.S. Dist. LEXIS 194371, at *21-22 (C.D. Cal. Aug. 4, 2016) (quoting *Kelly v. Pub. Util. Dist. No. 2*, 552 F. App'x 663, 664 (9th Cir. 2014)); *Ford v. Yasuda*, No. 5:13-cv-01961-PSG-DTB, 2015 U.S. Dist. LEXIS 79024, at *18-22 (C.D. Cal. Apr. 29, 2015) (collecting cases). "A party's 'belated attempt to use arbitration as a method of forum shopping is prejudicial' to its opponent." *Id.* at *21 (quoting *Steiner v.*

4

The threshold issue is whether the Agreement encompasses the dispute at issue (i.e., may Nissan compel arbitration when it was not a party to the Agreement). *E.g.. Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (*en banc*) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000); *LegalForce RAPC Worldwide P.C. v. Trademark Engine LLC*, No. 17-cv-07303-MMC, 2018 U.S. Dist. LEXIS 107685, at *3 (N.D. Cal. June 26, 2018) (same). This issue is determinative because "[a] person who is not a party to the contract generally lacks standing to compel, and is not subject to, arbitration." *Eagle Ridge Condo. Ass'n v. Metro. Builders, Inc*., 98 P.3d 915, 917 (Colo. Ct. App. 2004); *accord MSPBO, LLC v. Garmin Int'l, Inc*., No. 13-cv-02287-PAB-KMT, 2014 U.S. Dist. LEXIS 127312, at *8 (D. Colo. Sept. 11, 2014) ("Generally, courts have the authority to compel arbitration only between the signatories of an arbitration agreement.").

Nissan argues that "the scope of the arbitration agreement and arbitrability of the claims here must be decided by the arbitrator," Def.'s Mot. 12. However, under the circumstances here, the Court decides this issue:

> It is well settled in both commercial and labor cases that whether *parties* have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination. It is similarly well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide. . . . *Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.* In this manner the law treats silence or ambiguity about the question who (primarily) should decide arbitrability *differently* from the way it treats silence or ambiguity about the question whether a particular merits-related dispute is arbitrable *because it is within the scope of a valid*

*Horizon Moving Sys.*, No. EDCV 08-682-VAP (CTx), 2008 U.S. Dist. LEXIS 110393, at *3 (C.D. Cal. Oct. 30, 2008)).

Should Nissan attempt to argue that it is only now moving to compel arbitration because it just learned about the Agreement, that argument would merely highlight why Nissan is not entitled to compel arbitration. Any agreement of which Nissan was not aware for more than a year following the inception of this litigation cannot logically have been intended to include Nissan within its scope.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF LINDA SPRY'S CLAIMS, TO STAY PROCEEDINGS, AND TO STRIKE COLORADO CLASS ALLEGATIONS

*arbitration agreement*—for in respect to this latter question the law reverses the presumption.

Here, the arbitration agreements do not contain clear and unmistakable evidence that Plaintiffs and Toyota agreed to arbitrate arbitrability. While Plaintiffs may have agreed to arbitrate arbitrability *in a dispute with the Dealerships*, the terms of the arbitration clauses *are expressly limited to Plaintiffs and the Dealerships*. For example, Scholten's arbitration clause states that "[e]ither you or we may choose to have any dispute between you and us decided by arbitration." The language of the contracts thus evidences Plaintiffs' intent to arbitrate arbitrability *with the Dealerships and no one else*. The Dealerships are not a party to this action. Given the absence of clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories, the district court had the authority to decide whether the instant dispute is arbitrable.

*Kramer v. Toyota Motor Corp*, 705 F.3d 1122, 1127 (9th Cir. 2013) (internal punctuation and citations omitted) (emphases added). Here, the parties to this litigation—Plaintiffs and Nissan—never agreed to arbitrate anything. Moreover, like the clause in *Kramer*, the language of the Arbitration Agreement evidences only an intent to arbitrate arbitrability between the Dealership and Ms. Spry—not any other party, including Nissan. The language of the Agreement states "*You* and the *Dealership* agree that arbitration will be the sole method of resolving any claim, dispute, or controversy (collectively, "Claims") that *either Party* has arising from *Customer(s)/Dealership Dealings*." ECF No. 96-5 (emphasis added). Thus, because there is no evidence at all—much less "clear and unmistakable" evidence—that Ms. Spry agreed to arbitrate arbitrability with *Nissan*, the Court, rather than an arbitrator, must decide the threshold issue of whether to compel arbitration.

Nissan asserts that "there can be no dispute that Spry's claims fall within the scope of the Arbitration Agreement[.]" Def.'s Mot. 8. Actually, Ms. Spry strongly disputes that *any* claim in this action against the *manufacturer* of her defective Class Vehicle would be subject to the terms and conditions of her Agreement with the Dealership. Thus, the Agreement does "not contain clear and unmistakable evidence that Plaintiff and [Nissan] agreed to arbitrate arbitrability." *First*

6

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF LINDA SPRY'S CLAIMS, TO STAY PROCEEDINGS, AND TO STRIKE COLORADO CLASS ALLEGATIONS

*Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010).

## II. THE DEALERSHIP ARBITRATION AGREEMENT IS INAPPLICABLE TO MS. SPRY'S CLAIMS

### A. The Terms of the Agreement Do Not Evidence Any Intent to Include Nissan as a Third-Party Beneficiary.

In the context of motor vehicle defect cases (i.e., automobiles and motor homes), the weight of authority holds that manufacturers are not third-party beneficiaries of dealership arbitration agreements. *Kramer v. Toyota Motor Corp*, 705 F.3d 1122, 1124 (9th Cir. 2013); *Cunningham v. Fleetwood Homes of Ga.*, 253 F.3d 611, 624 (11th Cir. 2001); *In re Toyota Motor Corp. Unintended Acceleration Mktg.*, 838 F. Supp. 2d 967, 993 (C.D. Cal. 2012); *Agnew v. Honda Motor Co.*, No. 1:08-cv-01433-DFH-TAB, 2009 U.S. Dist. LEXIS 53914, at *10-11 (S.D. Ind. May 20, 2009) (deciding the issue under Indiana law); *Harnden v. Ford Motor Co.*, 408 F. Supp. 2d 300, 307 (E.D. Mich. 2004) (citing *Cunningham*); *Pack v. Damon Corp.*, 320 F. Supp. 2d 545, 556 (E.D. Mich. 2004), *rev'd in part on other grounds*, 434 F.3d 810 (6th Cir. 2006). In this case, Nissan is not named as a third-party beneficiary in the Agreement, nor does Ms. Spry allege intertwined conduct between Nissan and the Dealership that would enable Nissan to claim third-parry beneficiary status.

#### 1. Nissan is not expressly identified as a third-party beneficiary.

Under Colorado law, the "court must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim." *Austin v. U S W., Inc.*, 926 P.2d 181, 184 (Colo. App. 1996); *Rains v. Found. Health Sys. Life & Health*, 23 P.3d 1249, 1251 (Colo. App. 2001) (citing *Austin*).[2] "Courts should not assume

---

[2] Nissan cites *Allen v. Pacheco*, 71 P.3d 375, 379-80 (Colo. 2013), for the proposition that under Colorado law non-parties to an arbitration agreement may enforce and compel arbitration on signatory parties. Def.'s Mot. 8. In *Allen*, however, the Colorado Supreme Court found that, under the specific language used in the contract, Ms. Pacheco was her husband's "heir" as envisioned by the policy's arbitration provision, so her claim for wrongful death was subject to arbitration. *Id.*

7

that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Kaplan*, 514 U.S. at 944. "[T]he . . . 'clear and unmistakable' requirement . . . pertains to the parties' *manifestation of intent*, not the agreement's *validity*." *Jackson*, 561 U.S. at 69 n.1 (emphasis in original). Under these principles, "a court may refuse to compel arbitration . . . 'if the issue sought to be arbitrated is clearly beyond the scope of the arbitration provision.'" *Eychner v. Van Vleet*, 870 P.2d 486, 489 (Colo. App. 1993) (quoting *Shorey v. Jefferson Cty. Sch. Dist. No. R-1*, 807 P.2d 1181, 1183 (Colo. App. 1990)).

In *Kramer*, the arbitration provision stated "[e]ither you or we may choose to have any dispute between you and us decided by arbitration." *Kramer*, 705 F.3d at 1127 (internal quotation marks omitted). Similarly, in *Pack*, the clause stated "ARBITRATION SHALL BE THE EXCLUSIVE REMEDY OF THE PARTIES." *Pack*, 320 F. Supp. 2d at 552 (internal quotation marks omitted). Here, the Agreement states "You and the Dealership agree that arbitration will be the sole method of resolving any claim," and "Either Party may contact the American Arbitration Association[.]" ECF No. 96-5; *see also Garcia v. NRI USA, LLC*, No. 2:17-CV-08355-ODW-GJS, 2018 U.S. Dist. LEXIS 130055, at *11 (C.D. Cal. Aug. 1, 2018) ("Decton could have drafted its Arbitration Agreement to cover its customers or NRI specifically. It did not. The Court concludes that NRI is not a third-party beneficiary of the Arbitration Agreement."); *Lewand v. Mazda Motor of Am.*, Inc., SACV 17-00620 JVS (JCGx), 2017 U.S. Dist. LEXIS 218371, at *5-6 (C.D. Cal. Aug. 8, 2017) ("If the parties intended to include Mazda in the arbitration agreement, then the arbitration clause would expressly mention Mazda. Thus, the inclusion and mention of the

---

Thus, *Allen* concerned a signatory to an arbitration agreement attempting to enforce it against a nonsignatory—the opposite of what Nissan seeks here.

Nissan also attempts to cite *Allen* to support its argument that an arbitration provision's lack of language restricting arbitration to the signatory parties in fact should be read as favoring the applicability of arbitration to non-signatory parties. Def.'s Mot. 9 (citing *Allen*, 71 P.3d at 378, 380-81). In *Allen*, the language of the arbitration provision was clearly intended to include claims made by non-signatory parties brought on behalf of a signatory (i.e., the insured policy holder). *Id.* at 380. *Allen* does not support Nissan's argument here.

8

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION OF PLAINTIFF LINDA SPRY'S CLAIMS, TO STAY
PROCEEDINGS, AND TO STRIKE COLORADO CLASS ALLEGATIONS

dealership in the arbitration clause, *but not Mazda*, supports the conclusion that the parties did not intend for the arbitration clause to include claims . . . by Lewand against Mazda."). Because there is no clear expression of intent for Nissan to be covered by the Agreement, there is no basis to compel Ms. Spry to arbitrate her claims against Nissan.

> ### 2.   Plaintiff does not allege intertwined conduct between Nissan and the Dealership sufficient to confer third-party beneficiary status.

In the absence of clear and unmistakable language in the Agreement supporting its motion, Nissan argues that Ms. Spry's claims arise out of her "interactions" with the Dealership such that Nissan is entitled to third-party beneficiary status under the Agreement. *See generally* Def.'s Mot. But even if the interactions between Ms. Spry and the Dealership could somehow be related tangentially to Nissan, "it is not enough that some benefit incidental to the performance of the contract may accrue to the third party." *Everett v. Dickinson & Co*., 929 P.2d 10, 12 (Colo. Ct. App. 1996).

Nissan specifically relies on language in the Agreement that refers to "any relationship with third parties who do not sign this Agreement that arises out of the Customer(s)/Dealership Dealings." Def.'s Mot. 5, 15. Nissan focuses on the term "third parties" while ignoring the subsequent qualifying phrase "that arises out of the Customer(s)/Dealership Dealings." Agreement, ECF No. 96-5. The Agreement defines "Customer(s)/Dealership Dealings" as "reviewing, negotiating or executing any documents or agreements during the course of interactions *with the Dealership*." *Id.* (emphasis added). This provision would, for example, extend the arbitration provision to a claim against an employee of the dealership who is alleged to have engaged in improper conduct during the sales transaction, but not to conduct attributable to Nissan. While Ms. Spry alleges that the dealership failed to disclose the existence of the defect, Corrected Third Amended Complaint ¶ 132, ECF No. 86 ("CTAC"), this omission is *not alleged to be the dealership's or any dealership employee's independent act*; rather, the dealership's failure to disclose the defect is attributable and wholly derivative of Nissan's conduct in failing to inform

9

the dealerships and their employees of the existence of the defect in Class Vehicles. Therefore, none of Ms. Spry's claims in this case involve "Customer(s)/Dealership Dealings." Nissan's acts and omissions gave rise to this litigation, not those of the Dealership. There is no basis to conclude that Ms. Spry's claims arise from any intertwined actions of Nissan and the Dealership.[3]

## B. Equitable Estoppel Is Not Applicable to Ms. Spry's Claims.

Lacking any other basis to compel arbitration, Nissan attempts to manufacture an equitable estoppel argument, claiming that "Spry's claims may be asserted against NNA *but they are substantially based on the alleged conduct of the dealership*." Def.'s Mot. 11 (emphasis added). There is no way to charitably describe this statement as anything short of ridiculous.

"Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Comer v. Micor, Inc*., 436 F.3d 1098, 1101 (9th Cir. 2006) (internal quotation marks and citation omitted). Neither the facts presented here nor Colorado law provide any equitable basis for compelling arbitration in this case:

> Colorado courts applying the [Colorado Uniform Arbitration Act] have found that equitable estoppel may require a party to arbitrate in two scenarios: first, a signatory to an arbitration agreement may compel arbitration of a claim brought by a non-signatory where the non-signatory presents a claim "aris[ing] from the agreement containing the arbitration provision"; and, second, a non-signatory can enforce an arbitration agreement where a "signatory asserts a claim *arising from* a contract against a nonsignatory to that contract."

*Dinnen v. Kneen*, No. 16-cv-00882-PAB-STV, 2017 U.S. Dist. LEXIS 215179, at *9 (D. Colo. Mar. 30, 2017) (emphasis added) (quoting *Meister v. Stout*, 353 P.3d 916, 920 (Colo. App. 2015)). Under the facts of this case, neither scenario exists.

---

[3] No decision Plaintiff could locate expressly considering the "third-party" language relied on and quoted by Nissan has extended it to a vehicle manufacturer. *See, e.g*., *White v. Don Mealey Imps.*, No. 6:10-cv-1303-Orl-31DAB, 2011 U.S. Dist. LEXIS 123545, at *2 (M.D. Fla. Feb. 3, 2011) (regarding claims against a dealership); *AutoNation, Inc. v. Susi*, 199 So. 3d 456, 460 (Fla. Dist. Ct. App. 2016) (same); *Estate of Guerrero*, 465 S.W.3d 693, 698 (Tex. App. 2015) (same); *AN Luxury Imps., Ltd. v. Southall*, No. 01-15-00194-CV, 2015 Tex. App. LEXIS 10252, at *1 (Tex. App. Oct. 1, 2015) (regarding claims against a dealership and warranty administrator).

10

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION OF PLAINTIFF LINDA SPRY'S CLAIMS, TO STAY
PROCEEDINGS, AND TO STRIKE COLORADO CLASS ALLEGATIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1.      **The first *Meister* scenario: a signatory to an arbitration agreement may compel arbitration of a claim brought against it by a nonsignatory.**

The first scenario is facially inapplicable because Nissan is not "a signatory to [the Agreement]," nor does Plaintiff "present[] a claim 'aris[ing] from the [A]greement containing the arbitration provision[.]'" *Meister*, 353 P.3d at 920. Ms. Spry's claims arise from Nissan's defective design and manufacture of the Class Vehicles—her claims have nothing to do with "Customer(s)/Dealership Dealings" under the Agreement.[4] She does not attempt to "seek the benefit of the agreement containing the arbitration provision, while at the same time attempting to avoid the arbitration provision." *Meister*, 353 P.3d at 920. While Ms. Spry does allege that the dealership failed to disclose the existence of the defect, CTAC ¶ 132, this omission is *not alleged to be the dealership's independent act*. In other words, there is no allegation or claim that the dealership received notice of the defect from Nissan but then failed to communicate that to Ms. Spry, thereby creating an independent claim against the Dealership. Rather, the Dealership's failure to disclose the defect is attributable to and wholly derivative of Nissan's failure to inform and/or instruct dealers to warn consumers about the existence and consequences of the defect. Thus, Ms. Spry does not "allege interconnected and concerted misconduct between [Nissan] and [the dealership]." *Green v. Fishbone Safety Sols., Ltd.*, 303 F. Supp. 3d 1086, 1094 (D. Colo. 2018).

2.      **The second *Meister* scenario: a signatory asserts a claim arising from a contract against a nonsignatory to that contract.**

While the second scenario is the only one that might conceivably apply to Nissan, Ms. Spry is not asserting claims arising from "Customer(s)/Dealership Dealings" as defined in the Agreement. To further explain this fact, the second *Meister* scenario can be further broken down

---

[4] Section II.A, *supra*.

11

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION OF PLAINTIFF LINDA SPRY'S CLAIMS, TO STAY
PROCEEDINGS, AND TO STRIKE COLORADO CLASS ALLEGATIONS

1   into "two subsets." *Santich v. VCG Holding Corp*., No. 17-cv-00631-RMMEH, 2017 U.S. Dist.

2   LEXIS 156984, at *10 (D. Colo. Sept. 26, 2017). The first subset is "when the plaintiff relies on

3   the terms of a written agreement to assert his claims," and the second is "when the plaintiff alleges

4   interconnected misconduct between the signatory and nonsignatory defendants and the misconduct

5   is intertwined with duties or obligations arising from the parties' contract[.]" *Id*. Ms. Spry's claims

6   do not fit into either subset, so Nissan may not force Ms. Spry to arbitrate her claims.

> **a.     The first subset: when the plaintiff relies on the terms of a written agreement to assert his claims**

7
8
9   Quite similar to the first *Meister* scenario, this first subset is inapplicable because Ms. Spry

10  does not base her claims on any of the terms of her written agreements with the Dealership. Ms.

11  Spry's case is functionally indistinguishable from *Bellman v. i3Carbon, Ltd. Liab. Co*., 563 F.

12  App'x 608 (10th Cir. 2014).

13          Plaintiffs do not assert a claim for breach of the Operating Agreement or seek to
14          enforce any rights or recover any remedies under the Operating Agreement. While
            Plaintiffs' complaint relies on materials other than the Operating Agreement
15          provided in the Investment Binder, along with alleged statements made by
            Defendants, the Operating Agreement does not "form the legal basis" of Plaintiffs'
16          claims. Rather, Plaintiffs' claims are based on allegedly fraudulent
            misrepresentations and omissions of material fact made by Defendants in order to
17          secure funding. None of these claims relate to statements or omissions made in the
            Operating Agreement. In fact, as noted above, Plaintiffs' complaint does not even
18          reference the Operating Agreement. It follows perforce that Plaintiffs' claims
            cannot be deemed to have relied on the Operating Agreement in a manner that
19          would make it unfair for Plaintiffs to avoid arbitrating their claims.

20  *Id*. at 618 (citations omitted). Like the operating agreement at issue in *Bellman*, the dealership sales

21  contract containing the Agreement is not referenced anywhere in the CTAC and cannot be said to

22  "'form the legal basis' of Plaintiff['s] claims." *Id*.; *see also Dinnen*, 2017 U.S. Dist. LEXIS

23  215179, at *12; *Waymo LLC v. Uber Techs., Inc.*, 252 F. Supp. 3d 934, 937-38 (N.D. Cal. 2017)

24  ("Waymo's allegations of interdependent conduct by Levandowski and defendants are not founded

25  in or intimately connected with the obligations of the 2009 and 2012 agreements. Indeed, it appears

26  Waymo can make out its case-in-chief without any reference to either agreement."). Consequently,

27
28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION OF PLAINTIFF LINDA SPRY'S CLAIMS, TO STAY
PROCEEDINGS, AND TO STRIKE COLORADO CLASS ALLEGATIONS

1    the first subset does not apply.

2

3        **b.    The second subset: when the plaintiff alleges interconnected misconduct between the signatory and nonsignatory defendants and the misconduct is intertwined with duties or obligations arising from the parties' contract.**

4

5

6        Nissan cites only eight out of the three hundred forty-nine paragraphs in the Corrected

7    Third Amended Complaint, ECF No. 86, to support its assertion that all of Ms. Spry's claims are

8    all "substantially" based on the conduct of the Dealership. Def.'s Mot. 3 (citing CTAC ¶¶ 131-32),

9    11 (citing CTAC ¶¶ 131-32, 197, 303(a)). Setting aside the fact that Nissan offers no explanation

10   for why the Dealership is not a party if its conduct is so substantial, an examination of these

11   paragraphs reveals that any mention of the Dealership's conduct is incidental because it derives

12   from and originates with Nissan's wrongdoing, which are the crux of Ms. Spry's claims.

13       • Paragraph 131 states only that "[o]n February 16, 2013, Ms. Spry purchased a 2012
           Nissan Murano from Auto Nation Nissan in Centennial, Colorado." CTAC ¶ 131.
14         No Dealership misconduct is alleged. *See Kramer*, 705 F.3d at 1130 (discussing a
           similar argument regarding claims based on California law).

15
         • Paragraph 132 states that during conversations with Dealership sales staff, no
16         mention was made of the existence of the sunroof defect. CTAC ¶ 132. However,
           this litigation concerns Nissan's duty, *not that of the Dealership*, to disclose the
17         defect. *Id*. ¶¶ 8, 10, 75, 110, 124, 129, 138, 170(d), 170(j), 177, 194, 197, 283, 284,
           286, 287, 289.[5] Ms. Spry has not alleged that the Dealership engaged in any
18         intertwined culpable conduct with Nissan that arises from any
           "Customer(s)/Dealership Dealings." Any mention of Dealership conduct derives
19         exclusively from Nissan's creation of and failure to disclose the defect. *See
           Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) ("Where other
20         circuits have granted motions to compel arbitration on behalf of non-signatory
           defendants against signatory plaintiffs, it was '*essential in all of these cases that
21         the subject matter of the dispute was intertwined with the contract providing for
           arbitration*.'") (citations omitted) (emphasis added).
22

23   _____

24   [5] Specifically with reference to Ms. Spry's claims, the full context of the allegations surrounding
     paragraph 132 make it obvious that it is Nissan's actions and omissions, rather than the anything
25   the Dealership did or did not do, that form the basis of her allegations. *E.g.,* CTAC ¶ 138 ("Had
     *Nissan* adequately disclosed the panoramic sunroof defect, Ms. Spry would not have purchased
26   the vehicle or would have paid substantially less for it.") (emphasis added).

27                                              13

28        PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
          ARBITRATION OF PLAINTIFF LINDA SPRY'S CLAIMS, TO STAY
          PROCEEDINGS, AND TO STRIKE COLORADO CLASS ALLEGATIONS

- Paragraph 135 states that Ms. Spry "went to Auto Nation Nissan to have the sunroof repaired. After discussing the sunroof with Nissan for a week, Nissan refused to repair her sunroof." CTAC ¶ 135. Ms. Spry does not allege any independent action or omission by the Dealership that is not attributable to Nissan.

- Paragraph 136 states that Ms. Spry "had and [sic] extended warranty for the vehicle, but Nissan said that the extended warranty did not pay for glass." CTAC ¶ 136. Once again, Ms. Spry does not allege any independent action or omission by the Dealership that is not attributable to Nissan.

- Paragraph 137 simply states that "the dealership repaired her vehicle at a cost of $1,114.00 to plaintiff." CTAC ¶ 137. Ms. Spry does not allege any independent action or omission by the Dealership that is not attributable to Nissan.

- Paragraph 197, part of an Ms. Spry's unjust enrichment claim, states that "*Nissan* sold Class Vehicles to Plaintiff and Class Members even though the panoramic sunroofs installed in those Class Vehicles were defective and posed a safety hazard. *Nissan* failed to disclose its knowledge of the sunroof defect and the defect's attendant risks-- at the point of sale or otherwise." CTAC ¶197 (emphasis added). Once again, Ms. Spry makes no allegation regarding any act or omission of the Dealership—only Nissan is mentioned, because it is Nissan, as the manufacturer with knowledge of the defect, who failed to disclose the defect to its dealers and to consumers.

- Paragraph 198 (not identified but quoted by Nissan) states that "Nissan unjustly charged and charges Plaintiff and Class Members for repairs and/or replacement of the defective panoramic sunroofs *without disclosing that the defect is widespread and that the repairs do not address the root cause of the defect*." CTAC ¶ 198. The clear point of the paragraph relates to Nissan's failure to disclose, or to instruct dealers to disclose, the existence of the defect. Nothing about the "Customer(s)/Dealership Dealings" is implicated, because the dealership's actions are not at issue. *See also id.* ¶¶ 197-202 (noting the continued reference to *Nissan*, rather than to the dealership).

- Paragraph 303 alleges there is constructive privity between Nissan and Ms. Spry sufficient to support her claim for breach of implied warranties under the Uniform Commercial Code. CTAC ¶ 303. These allegations do not implicate the Dealership because they are "substantially based" on Nissan's implied warranties, not those of the Dealership. *See Kramer*, 705 F.3d at 1131 (discussing implied warranty claims under California law). The Dealership's incidental connection to this claim will not support application of the Dealership's Arbitration Agreement. *See Everett*, 929 P.2d at 12 ("[I]t is not enough that some benefit incidental to the performance of the contract may accrue to the third party.").

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF LINDA SPRY'S CLAIMS, TO STAY PROCEEDINGS, AND TO STRIKE COLORADO CLASS ALLEGATIONS

1   None of these incidental references to the Dealership are substantial enough to extend the

2   Agreement's arbitration requirement to Nissan. Consequently, there is no basis under the second

3   subset to compel arbitration of Ms. Spry's claims. *Green*, 303 F. Supp. 3d at 1094 (D. Colo. 2018);

4   *accord, e.g., Garcia*, 2018 U.S. Dist. LEXIS 130055, at * 13 ("Here, the Arbitration Agreement is

5   a two-page document that speaks only to the dispute resolution procedures should a dispute arise

6   between Decton and Plaintiff. Plaintiff's claims are not based on, do not require interpretation of,

7   nor are 'intimately connected' with the terms of the Arbitration Agreement."). The second subset

8   is thus also inapplicable.

9            **3.      Nissan seeks to impose an inequitable double standard.**

10           Nissan denies it can be bound by the Dealership's acts—unless they inure to its benefit.

11  Nissan argues it is entitled to dispute "any legal theory or relationship that would hold it vicariously

12  liable for the alleged dealer's conduct," Def.'s Mot. 12, while at the same time asking the Court to

13  compel arbitration on a "legal theory or relationship [completely based] on the alleged dealer's

14  conduct." *Id.* The irony is palpable. Even more unbelievably, Nisson wrongfully accuses Ms. Spry

15  of trying to do exactly what it now seeks. "[F]undamental equitable principles of fairness and

16  avoiding inconsistency preclude[] Spry from benefiting from allegations about her interactions

17  with the dealership while avoiding the burden of the agreement she made that governs those

18  interactions." *Id*. (emphasis added). As explained in detail above, Ms. Spry does *not* base her

19  claims against Nissan on any "Customer(s)/Dealership Dealings." *Supra* Section II.B.2. Even if

20  she did, the same "fundamental equitable principles of fairness and avoiding inconsistency" must

21  also apply to Nissan. Nissan may not benefit from the Agreement when it is not (and was never

22  intended to be) a party to, or third-party beneficiary of, that Agreement. There is no legal, rational,

23  justifiable, or equitable basis for invoking Nissan's double-standard to compel Ms. Spry to

24  arbitrate her claims. *See Kramer*, 705 F.3d at 1134 ("Plaintiffs do not seek to simultaneously

25  invoke the duties and obligations of Toyota under the Purchase Agreement, as it has none, while

26

27                                          15

28  PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
     ARBITRATION OF PLAINTIFF LINDA SPRY'S CLAIMS, TO STAY
     PROCEEDINGS, AND TO STRIKE COLORADO CLASS ALLEGATIONS

seeking to avoid arbitration. Thus, the inequities that the doctrine of equitable estoppel is designed to address are not present.").[6]

## III.   THERE IS NO BASIS TO GRANT NISSAN ANY OF THE OTHER RELIEF REQUESTED

Nissan also asks the Court to stay Ms. Spry's claims pending the decision on arbitration and to strike her class allegations. Def.'s Mot. 15. Because there is no basis for the Court to compel Ms. Spry to arbitrate her claims, there is no basis to grant any of the ancillary relief Nissan requests.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Nissan's motion in its entirety.


Date:   August 22, 2018                      RESPECTFULLY SUBMITTED,

                                             */s/ Crystal Foley*
                                             Crystal Foley (SBN 224627)
                                             **SIMMONS HANLY CONROY LLC**
                                             100 N. Sepulveda Blvd., Suite 1350
                                             Los Angeles, CA 90245
                                             Tel: 310-322-3555
                                             Fax: 310-322-3655
                                             cfoley@simmonsfirm.com

                                             Mitchell M. Breit
                                             Paul J. Hanly, Jr.
                                             **SIMMONS HANLY CONROY LLC**
                                             112 Madison Avenue
                                             New York, NY 10016-7416
                                             Tel: 212-784-6400
                                             Fax: 212-213-5949
                                             phanly@simmonsfirm.com
                                             mbreit@simmonsfirm.com

---

[6] Nissan attempts to distinguish *Kramer*'s holding on the basis that it was decided under California law. Def.'s Mot. 10 n.5. However, the laws of California and Colorado law on equitable estoppel are virtually identical. *Compare Kramer*, 705 F.3d at 1128-29, *with Dinnen,* 2017 U.S. Dist. LEXIS 215179, at *9.

16

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF LINDA SPRY'S CLAIMS, TO STAY PROCEEDINGS, AND TO STRIKE COLORADO CLASS ALLEGATIONS

Gregory F. Coleman *(pro hac vice)*
Mark E. Silvey *(pro hac vice)*
Adam A. Edwards *(pro hac vice)*
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: 865-247-0080
Fax: 865-522-0049
greg@gregcolemanlaw.com
mark@gregcolemanlaw.com
adam@gregcolemanlaw.com

*Attorneys for Plaintiffs*

17

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION OF PLAINTIFF LINDA SPRY'S CLAIMS, TO STAY
PROCEEDINGS, AND TO STRIKE COLORADO CLASS ALLEGATIONS

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 22nd day of August, 2018, a copy of PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF LINDA SPRY'S CLAIMS, TO STAY PROCEEDINGS, AND TO STRIKE COLORADO CLASS ALLEGATIONS was filed electronically with the Clerk of Court using the CN/ECF system which will send notification of the filing to all counsel of record.


*/s/ Crystal Foley*
Crystal Foley
**SIMMONS HANLY CONROY LLC**

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION OF PLAINTIFF LINDA SPRY'S CLAIMS, TO STAY
PROCEEDINGS, AND TO STRIKE COLORADO CLASS ALLEGATIONS