Gregory F. Coleman (*pro hac vice*)
Mark E. Silvey (*pro hac vice*)
Adam A. Edwards (*pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
First Horizon Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone:  (865) 247-0080
Facsimile:  (865) 522-0049
gcoleman@milberg.com
msilvey@milberg.com
aedwards@milberg.com

[Additional Counsel on Signature Page]

***Attorneys for Plaintiffs***

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| SHERIDA JOHNSON, SUBRINA SEENARAIN, CHAD LOURY, LINDA SPRY, LISA SULLIVAN, and APRIL AHRENS  on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>NISSAN NORTH AMERICA, INC.,<br><br>    Defendant. | Case No.:  3:17-cv-00517<br><br>**FIFTH AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

Plaintiffs Sherida Johnson, Subrina Seenarain, Chad Loury, Linda Spry, Lisa Sullivan, April Ahrens and Janelle Horne ("Plaintiffs") on behalf of themselves and all others similarly situated, bring this action against Defendant Nissan North America, Inc. ("Nissan"). Plaintiffs' allegations herein are based upon personal knowledge as to their own acts and experiences in this

1

matter, the investigation of counsel, and upon information and belief as to all other matters.

# I.    SUMMARY OF CASE

1.  Historically, automobile sunroofs have been modestly sized, spanning just a small portion of the roof over the driver and front passenger seats.

2.  Starting in the mid-2000s, automobile manufacturers expanded sunroofs in size so that now a sunroof (*i.e.*, sheet(s) of glass) accounts for nearly the entire roof of a vehicle. These expanded sunroofs are often referred to as "panoramic."

3.  Panoramic sunroofs are aesthetically pleasing and command a premium price. They also pose new and significant engineering challenges. Replacing metal portions of automobile roofs with large plates of glass requires precision in the strengthening, attachment, and stabilization of the glass.

4.  Nissan and other manufacturers failed to meet these engineering challenges, with at least three manufacturers issuing safety recalls due to the panoramic sunroofs' propensity to spontaneously shatter.[1]

5.  The shattering events are so powerful that startled drivers compare it to the sound of a gunshot, after which glass fragments rain down upon the occupants of the vehicle, sometimes while driving at highway speeds.

6.  Nissan does not warn current or potential drivers of the danger(s) associated with the panoramic sunroof feature.

7.  Nissan continues to sell and lease its vehicles with panoramic sunroofs to consumers.

---

[1] Nissan refers to the enlarged sunroof feature as Panoramic Moonroof, Power Panoramic Moonroof, Dual Power Panoramic Moonroof, Dual Panorama Moonroof, and Dual Opening Glass Moonroof depending upon the vehicle model. Regardless of the vehicle model, all will be referred to as "panoramic sunroofs" or "defective sunroofs" in this Second Amended Complaint.

FIFTH AMENDED CLASS ACTION COMPLAINT

8.  Nissan does not disclose any known or potential defect nor the known or potential danger(s) of the panoramic sunroof to current or potential Nissan vehicle consumers.

9.  Nissan knew or should have known about this problem since at 2008 due to a number of consumer complaints lodged with the National Highway and Transportation Administration ("NHTSA"). In July 25, 2014 NHTSA sent correspondence to Nissan informing Nissan of NHTSA's ongoing investigation into: (1) "spontaneous sunroof shattering" and requesting information from Nissan about its panoramic sunroofs (https://static.nhtsa.gov/odi/inv/2014/INIM-EA14002-63590.pdf; *accessed December 21,2016*); (2) Nissan dealer field reports concerning "shattered sunroof glass" and "sunroof burst while driving" produced by Nissan on 9-5-2014 in response to NHTSA's investigation inquiry (https://static.nhtsa.gov/odi/inv/2014/INRD-EA14002-60025P.pdf; *accessed December 21, 2016*); (3) consumer complaints relating to defective and "exploded" sunroofs that Nissan described in a September 5, 2014 response to NHTSA's investigation inquiry (https://static.nhtsa.gov/odi/inv/2014/INRD-EA14002-60026P.pdf; *accessed December 21, 2016*); and (4) at least fifty-seven  NHTSA complaints relating to the shattering of Nissan vehicle sunroofs lodged from October 29, 2008 through August 11, 2015 [the end date occurring before any Plaintiff purchased or leased his or her Nissan vehicle at issue] (http://www-odi.nhtsa.dot.gov/owners/SearchSafetyIssues; *accessed December 21, 2016*).

10. Nissan's conduct violates federal, California, New York, Colorado, Florida, and Illinois consumer protection and warranty laws. On behalf of the California, New York, Colorado, Florida, and Illinois State Classes that Plaintiffs propose to represent, Plaintiffs seek an award of damages and appropriate equitable relief, including an order enjoining Nissan from continuing to sell vehicles with defective panoramic sunroofs and requiring Nissan to disclose

FIFTH AMENDED CLASS ACTION COMPLAINT

the defect to current owners of the Class Vehicles (defined below) and repair their vehicles with non-defective panoramic sunroofs.

## II.     PARTIES

11. Sherida Johnson is a citizen and resident of Murrieta, Riverside County, California.

12. Subrina Seenarain is citizen and resident of Schenectady, Schenectady County, New York.

13. Chad Loury is a citizen and resident of Azusa, Los Angeles County, California.

14. Linda Spry is a citizen of Hylands Ranch, Douglas County, Colorado.

15. Lisa Sullivan is a citizen of Dunedin, Pinellas County, Florida

16. April Ahrens is a citizen of Herrin, Williamson County, Illinois.


17. Nissan North America, Inc. is a California corporation with its headquarters and principal place of business in Franklin, Tennessee.

18. At all times relevant to this action, Nissan designed, manufactured, marketed, distributed, and warranted the vehicles at issue in the State of California and throughout the United States.

## III.     JURISDICTION AND VENUE

19. This Court has jurisdiction over this class action under the Class Action Fairness Act, 23 U.S.C. § 1332(d). There are at least one hundred members of the proposed classes. The aggregated claims of the individual Class Members exceed the sum value of $5,000,000.00, exclusive of interest and costs, and this is a class action in which Nissan and more than two-thirds of the proposed Classes are citizens of different states.

20. This Court may exercise jurisdiction over Nissan because it is registered to conduct business in California (*e.g.*, California Secretary of State Entity Number: C0403111), it has sufficient minimum contacts in California, and it intentionally avails itself of the markets within

4

FIFTH AMENDED CLASS ACTION COMPLAINT

California through the promotion, sale, marketing, and distribution of its vehicles, thus rendering jurisdiction by this Court proper and necessary.

21. Subject-matter jurisdiction also arises under Magnuson-Moss Warranty Act claims asserted under 15 U.S.C. § 2301, *et seq*.

22. Venue is proper in this District under 28 U.S.C. § 1391 because Nissan transacts business in this District, and a substantial part of the events or omissions giving rise to Plaintiffs' and proposed Class Members' claims occurred in this District. Additionally, Nissan distributes in this district, receives substantial compensation and profits from sales, maintenance and service of affected vehicles in this District, and has and continues to conceal and make material omissions in this District so as to subject it to *in personam* jurisdiction in this District.

## IV.    SUBSTANTIVE ALLEGATIONS

### A.  The Nissan Panoramic Sunroof Defect

23. Defendants manufacture, market, and distribute mass produced automobiles in the United States under the Nissan brand name.

24. The Nissan automobile models that are the subject of this case are the 2008-present Rogue, Maxima, Sentra, Pathfinder, and Altima models; 2009-present Murano models; and 2011-present Juke models with factory-installed panoramic sunroofs (collectively, the "Class Vehicles"). Plaintiffs anticipate amending the Class Vehicles definition upon Nissan identifying in discovery all of its vehicles manufactured and sold with the panoramic sunroof feature.

25. Starting in at least the 2008 model year, Nissan introduced vehicles with an optional upgrade of a factory-installed panoramic sunroof.

26. At that time, panoramic sunroofs were relatively new; these sunroofs are both wider and longer than traditional sunroofs, covering most of the vehicle's roof. See an example description from Nissan's marketing of the "massive" feature in its 2017 Nissan Maxima:



**(https://www.nissanusa.com/buildyournissan/vehicle-images/2017/MAX/XGC70NIC051C0/13ca05699b6f32dda734c4ae53b91dba/Maxima/SL/Dual-Panel-Panoramic-Moonroof/Interior;** *accessed December 22, 2016.***)**

27. Nissan generally markets the panoramic sunroofs as a luxury upgrade and charges several thousand dollars for the upgrade. See an example advertisement for the panoramic sunroof feature as part of the "Premium" package offered by Nissan in its 2016 Nissan Murano:





**(http://cdn.dealereprocess.com/cdn/brochures/nissan/2016-murano.pdf;** *accessed December 22, 2016.*)

28. The actual material cost of the panoramic sunroofs is relatively low, making the option one of the most profitable features in the automotive industry.

29. Panoramic sunroofs are made of tempered or laminated glass that attaches to tracks, which in turn are set within a frame attached to the vehicle.

30. Most panoramic sunroofs, including those offered by Nissan, include a retractable sunshade.

31. The panoramic sunroofs in all of Nissan's models are substantially similar in design and manufacture. Examples of Nissan's panoramic sunroofs appear in the photographs below:

a. **2008 Nissan Maxima**

 

**(http://www.motorologist.com/wp-content/uploads/2008-Nissan-Maxima-brochure.pdf;** *accessed December 22, 2016.***)**

b. **2014 Nissan Pathfinder**



**(http://blog.tischerauto.com/tag/2014-nissan-pathfinder/;** *accessed December 22, 2016.***)**

FIFTH AMENDED CLASS ACTION COMPLAINT

c. **2015 Nissan Rogue**

THE SUN, THE MOON, THE SKY, THE VIEW...



The available Power Panoramic Moonroof means that no matter where you're sitting in the 2015 Nissan Rogue®, you've got a window seat.

**(http://www.nissanofreno.com/2015-reno-nissan-models/nissan-rogue/features-interior.html;** *accessed December 22, 2016.***)**

d. **2016 Nissan Murano**



**(http://www.colenissan.com/New-2016-Nissan-Murano-Bluefield-WV;**

*accessed December 22, 2016.***)**

e. **2017 Nissan Rogue**



**LET EVERYONE TAKE IN A COMMANDING VIEW**

With an available Power Panoramic Moonroof that opens up even to the rear seats, everyone onboard can have breathtaking vistas of the sky and stars above.

**(https://www.nissanusa.com/crossovers/rogue/features;** *accessed December 22, 2016.***)**

32. Panoramic sunroofs, like these, present manufacturing, design, and safety challenges for manufacturers because the large plates of glass take up much of the surface area of the vehicle's roof.

33. One of the challenges is the material make-up of the glass. Whereas some manufacturers, such as Volvo and Honda, have used a *laminated* glass, other manufacturers, such as Nissan, Ford, Kia, Hyundai, and Nissan, have opted to install panoramic sunroofs with *tempered* glass that features large areas of ceramic paint.

34. In the automotive industry, tempered or toughened glass is made generally in the same manner: a piece of annealed glass is shaped and cut as to original equipment manufacturing ("OEM") standards. The glass is heated and then rapidly cooled, *i.e.*, tempered. The tempering process creates an outer layer of compression shrink-wrapped around the middle of the glass that is constantly pressing outwards, otherwise known as causing tension or tensile force. The

FIFTH AMENDED CLASS ACTION COMPLAINT

compressive and tensile layers create a stronger piece of glass as compared to non-tempered glazing. If the compressive layer is compromised, however, the entire piece of glass fails catastrophically, and often explosively.

35. The problems with panoramic sunroofs are compounded by automakers,' including Nissan's, use of thinner glass. Nissan, as well as other manufacturers, use thinner glass in panoramic sunroofs to save weight and thus improve fuel efficiency because Nissan, like other automobile manufacturers, are under mandates to improve fuel efficiency. Thinner glass, however, is very difficult to temper properly (especially when thicknesses are 4mm or less) as the compressive layers are thinner, increasing the probability for the glass to be compromised and result in catastrophic failure.

36. Additionally, the tempered glass used in Nissan sunroofs in the Class Vehicles features a ceramic paint applied prior to tempering. Automotive ceramic paint or ceramic enamels are composed of fine powders of low melting glass frit fluxes (ground glass), pigments, and other additive oxides, sulfides, or metals. After application of the ceramic enamel, the glass is then tempered, as described above. These ceramic enamels are applied on the top around the edges of panoramic sunroof glazing and serve aesthetic and functional purposes. The ceramic paint area appears as a "black band" along the edge of the glass.

37. Ceramic enamels are known "adulterants" in automotive glass tempering and these adulterants significantly weaken the structural strength and integrity of the Class Vehicles' tempered panoramic sunroof glazing. Among other factors, ceramic enamels compromise glass strength because: (1) the enamels have different thermal expansion coefficients than the glass substrates (the glass and the paint expand at different rates), resulting in residual stress between the ceramic enamel and the glass substrate and (2) the glass frit will ion exchange with the glass

FIFTH AMENDED CLASS ACTION COMPLAINT

substrate lessening or eliminating the compressive layer above the tensile region thereby significantly weakening it.

38. The ceramic paint area was relatively small in conventional sunroofs, but ceramic paint areas have become larger with the advent of panoramic sunroofs and the result is that the glass has become progressively weaker – more likely to spontaneously burst or explode – and, for the unsuspecting driver and passengers, more dangerous.

39. In 2013, the Korea Automobile Testing & Research Institute ("KATRI"), a vehicle safety testing institute, concluded that the enamel used for ceramic paint areas in panoramic sunroofs like those installed in Nissan vehicles impairs the strength of the glass, making the glass not only less durable than the usual toughened glass, but also less durable than ordinary glass.

40. Following KATRI's report, an Informal Working Group on Panoramic Sunroof Glazing was established by the United Nations Economic Commission for Europe to evaluate the safety of panoramic sunroofs. The Working Group is chaired by a representative from KATRI and was assembled to assess whether to amend the UN regulations on safety glazing. At the end of June 2016, the Working Group confirmed that conventional automotive glass enamels weaken the mechanical strength of panoramic sunroof glazing.

41. Another challenge presented by the panoramic sunroofs is the need to ensure the sunroof glass is fastened to the vehicle with a sufficient degree of tightness. Nissan and other manufacturers seek to fasten the sunroof in a manner that reduces road and wind noise, as well as to make the sunroofs less susceptible to leaking rainwater. At the same time, the sunroof may be weakened with the application of pressure, as flexing and vibration caused during ordinary driving can impose stress and ultimately lead to shattering the glass.

42. In the Nissan models at issue, the compromised tempered glass cannot withstand the pressures and flexing that the sunroof frame and vehicle demand, even when the vehicle and sunroof are

brand new. The consequence is that under ordinary driving conditions, and in some instances

when the vehicle is parked or not otherwise in motion, the glass spontaneously shatters.

**B. Consumer Complaints Reveal the Magnitude of the Defect**

43. At least 105 Nissan vehicle owners reported an incident of their sunroof shattering to NHTSA.

A brief summary of consumer complaints appear below:

| Date of NHTSA Complaint | Date of Incident | Model Year | Nissan Model | NHTSA ID Number | NHTSA Consumer Complaint Excerpt |
|---|---|---|---|---|---|
| 3/8/2017 | 2/21/2017 | 2011 | Juke | 10959659 | "sunroof on my 2011 Juke exploded" |
| 2/28/2017 | 2/19/2017 | 2011 | Murano | 10957602 | "sounding like a gun shot. . . . sunroof exploded" |
| 2/22/2017 | 1/24/2017 | 2016 | Maxima | 10956338 | "sunroof exploded" |
| 2/20/2017 | 2/20/2017 | 2016 | Pathfinder | 10955674 | "sunroof blew up from the inside out" |
| 2/19/2017 | 2/17/2017 | 2017 | Maxima | 10966485 | "large bang and our sunroof exploded" |
| 2/9/2017 | 2/7/2017 | 2011 | Maxima | 10953711 | "sounded like a gunshot. . . sunroof exploded" |
| 2/7/2017 | 2/2/2017 | 2016 | Murano | 10900108 | "spontaneous combustion of moon roof while driving on freeway" |
| 2/1/2017 | 2/1/2017 | 2008 | Pathfinder | 10948857 | "sunroof on my vehicle exploded. . . sounded like a bomb or gun had discharged" |
| 1/31/2017 | 1/6/2017 | 2012 | Murano | 10948682 | "hear a loud boom. . . front sunroof glass is busted" |
| 1/20/2017 | 1/19/2017 | 2012 | Maxima | 10946765 | "sunroof exploded from inside out" |
| 1/20/2017 | 10/6/2016 | 2013 | Altima | 10946571 | "sunroof exploded!. . . I heard a loud boom" |
| 1/15/2017 | 1/13/2017 | 2012 | Murano | 10945536 | "sunroof exploded without any reason" |
| 1/12/2017 | 1/11/2017 | 2016 | Rogue | 10944533 | "sunroof spontaneously exploded" |
| 1/8/2017 | 1/1/2017 | 2013 | Juke | 10943725 | "sun roof explodes" |
| 12/28/2016 | 12/28/2016 | 2008 | Altima | 10938380 | "sunroof exploded. . . shattered glass flew all over interior" |
| 12/1/2016 | 12/7/2015 | 2010 | Rogue | 10929496 | "sunroof of my car (while I was driving) exploded!" |
| 11/22/2016 | 11/22/2016 | 2013 | Altima | 10927522 | "sunroof exploded" |

| 11/16/2016 | 11/16/2016 | 2012 | Murano | 10926518 | "sunroof had exploded" |
|---|---|---|---|---|---|
| 11/7/2016 | 10/18/2016 | 2011 | Altima | 10924701 | "sunroof exploded" |
| 11/3/2016 | 11/3/2016 | 2016 | Murano | 10924150 | "moon roof exploded/shattered" |
| 10/26/2016 | 9/21/2016 | 2012 | Altima | 10919166 | "sunroof glass was exploded" |
| 10/19/2016 | 10/11/2016 | 2012 | Murano | 10917415 | "sunroof of my 2012 Nissan Murano exploded" |
| 10/7/2016 | 7/20/2016 | 2014 | Maxima | 10914504 | "sunroof exploded twice" |
| 10/4/2016 | 8/4/2016 | 2014 | Murano | 10913846 | "opened shade to sunroof and found that glass had exploded upward and shattered" |
| 10/3/2016 | 12/7/2015 | 2010 | Rogue | 10913565 | "thought someone shot at my car!...it was my sunroof that was coming apart" |
| 9/8/2016 | 9/3/2016 | 2014 | Rogue | 10904604 | "sunroof explodes, shatters" |
| 8/27/2016 | 8/27/2016 | 2010 | Maxima | 10901989 | "panoramic sunroof exploded outward" |
| 8/5/2016 | 7/21/2016 | 2016 | Murano | 10893526 | "sunroof exploded" |
| 7/23/2016 | 7/8/2016 | 2015 | Altima | 10887973 | "sunroof exploded/shattered for no apparent reason" |
| 6/22/2016 | 6/21/2016 | 2015 | Rogue | 10875763 | "panoramic sunroof had shattered into little pieces of glass" |
| 6/20/2016 | 6/18/2016 | 2015 | Murano | 10875213 | "moon roof 'exploded'" |
| 6/15/2016 | 6/13/2016 | 2011 | Maxima | 10874398 | "sunroof exploded" |
| 5/24/2016 | 5/19/2016 | 2014 | Maxima | 10870531 | "sunroof exploded" |
| 5/20/2016 | 5/17/2016 | 2015 | Murano | 10869976 | "sunroof exploded" |
| 5/9/2016 | 5/6/2016 | 2013 | Sentra | 10864022 | "sunroof appeared to have exploded" |
| 5/7/2016 | 5/6/2016 | 2016 | Maxima | 10863699 | "sunroof was shattered" |
| 4/26/2016 | 4/22/2016 | 2012 | Maxima | 10861458 | "sunroof exploded spontaneously" |
| 4/8/2016 | 2/16/2016 | 2015 | Pathfinder | 10854479 | "sunroof shattered into many pieces" |
| 3/30/2016 | 9/12/2015 | 2012 | Murano | 10852547 | "sunroof glass broke for no apparent reason" |
| 3/10/2016 | 3/5/2016 | 2015 | Pathfinder | 10846054 | "suddenly our sunroof exploded" |
| 1/9/2016 | 1/9/2016 | 2011 | Maxima | 10819168 | "panoramic sunroof suddenly exploded out of nowhere" |
| 12/29/2015 | 12/16/2015 | 2013 | Altima | 10816880 | "sunroof exploded" |
| 12/10/2015 | 12/8/2015 | 2014 | Maxima | 10809463 | "sunroof was shattered" |
| 11/24/2015 | 11/23/2015 | 2011 | Maxima | 10806483 | "sunroof busted while I was driving" |
| 11/16/2015 | 11/15/2015 | 2010 | Murano | 10790760 | "sunroof exploded" |
| 10/13/2015 | 10/12/2015 | 2013 | Altima | 10781698 | "sunroof glass exploded" |

FIFTH AMENDED CLASS ACTION COMPLAINT

| 9/14/2015 | 5/4/2015 | 2015 | Pathfinder | 10763594 | "moon roof had shattered" |
| 8/11/2015 | 5/21/2015 | 2015 | Rogue | 10747827 | "sunroof was completely shattered" |
| 8/8/2015 | 7/1/2013 | 2014 | Rogue | 10747202 | "sunroof exploded" |
| 8/7/2015 | 6/18/2015 | 2010 | Murano | 10746996 | "moon roof blew up" |
| 8/5/2015 | 8/3/2015 | 2014 | Rogue | 10746442 | "sunroof explosion" |
| 8/3/2015 | 7/30/2015 | 2014 | Pathfinder | 10745896 | "I hear what sounds like an explosion….glass was gone from the center of my sunroof" |
| 7/15/2015 | 6/25/2015 | 2009 | Murano | 10734238 | "sunroof glass literally exploded outward" |
| 7/13/2015 | 7/12/2015 | 2009 | Rogue | 10733762 | "sunroof exploded" |
| 6/26/2015 | 6/25/2015 | 2012 | Altima | 10730510 | "sunroof spontaneously exploded" |
| 5/21/2015 | 5/17/2015 | 2012 | Sentra | 10717879 | "sunroof glass shattered" |
| 5/12/2015 | 3/16/2015 | 2007 | Maxima | 10715989 | "moon rood exploded" |
| 4/28/2015 | 4/25/2015 | 2012 | Murano | 10713272 | "sunroof exploded" |
| 4/1/2015 | 3/28/2015 | 2011 | Sentra | 10703144 | "heard an explosion….saw a huge hole in the sunroof and the remaining window was shattered" |
| 3/24/2015 | 3/23/2015 | 2015 | Altima | 10701307 | "sunroof apparently exploded" |
| 2/23/2015 | 2/22/2015 | 2011 | Maxima | 10689956 | "sunroof 'exploded'" |
| 2/17/2015 | 2/13/2015 | 2009 | Murano | 10683749 | "sunroof over driver and passenger seats literally exploded" |
| 1/5/2015 | 1/4/2015 | 2009 | Murano | 10670015 | "sunroof on my 2009 Murano exploded" |
| 11/28/2014 | 11/25/2014 | 2009 | Murano | 10661179 | "sunroof shattered without warning" |
| 11/4/2014 | 11/3/2014 | 2012 | Sentra | 10652611 | "sunroof exploded" |
| 11/3/2014 | 10/28/2014 | 2009 | Maxima | 10652006 | "sunroof glass abruptly fractured" |
| 10/7/2014 | 10/6/2014 | 2013 | Juke | 10641939 | "sunroof had shattered" |
| 10/3/2014 | 9/29/2014 | 2011 | Murano | 10641082 | "sunroof of my 2011 Nissan Murano exploded suddenly" |
| 10/1/2014 | 9/24/2014 | 2012 | Sentra | 10640510 | "I heard a loud explosion, sounded like a gunshot. Then I noticed the car sunroof pieces shattered all over" |
| 9/17/2014 | 9/16/2014 | 2012 | Murano | 10637055 | "sunroof literally exploded upward for no reason" |
| 9/2/2014 | 3/15/2014 | 2013 | Sentra | 10630114 | "exploded sunroof" |
| 8/22/2014 | 8/21/2014 | 2009 | Murano | 10627566 | "sunroof on the 2009 Murano exploded" |
| 7/21/2014 | 7/20/2014 | 2011 | Maxima | 10614894 | "moon roof imploded" |

FIFTH AMENDED CLASS ACTION COMPLAINT

| 6/23/2014 | 6/23/2014 | 2012 | Sentra | 10605360 | "sunroof shattered" |
|---|---|---|---|---|---|
| 6/18/2014 | 6/9/2014 | 2013 | Pathfinder | 10599068 | "sunroof exploded outward" |
| 6/6/2014 | 5/25/2014 | 2009 | Rogue | 10596713 | "sunroof exploded on the highway without notice" |
| 6/2/2014 | 6/2/2014 | 2012 | Sentra | 10595476 | "sunroof shattered" |
| 5/29/2014 | 5/26/2014 | 2013 | Altima | 10594715 | "entire sunroof had blown out" |
| 4/30/2014 | 4/26/2014 | 2012 | Murano | 10585763 | "heard a very loud startling sound, which sounded like a gunshot and what I thought I heard along with a smash noise….it was your sunroof" |
| 4/10/2014 | 4/8/2014 | 2009 | Maxima | 10578895 | "sunroof glass made a loud noise and the glass shattered above my head" |
| 3/31/2014 | 3/29/2014 | 2011 | Murano | 10575918 | "suddenly the roof just exploded" |
| 2/7/2014 | 2/7/2014 | 2012 | Sentra | 10563356 | "heard a loud noise like an explosion and heard glass cracking and looked at sunroof. It had exploded and burst into pieces" |
| 1/8/2014 | 1/2/2014 | 2013 | Juke | 10559119 | "sunroof exploded upward" |
| 12/19/2013 | 12/6/2013 | 2012 | Murano | 10556614 | "sunroof exploded" |
| 12/10/2013 | 12/5/2013 | 2010 | Pathfinder | 10555529 | "shattering sunroof" |
| 9/20/2013 | 9/7/2013 | 2010 | Murano | 10544549 | "sunroof exploded leaving a round, upward protruding glass hole larger than a basketball" |
| 7/19/2013 | 7/18/2013 | 2011 | Murano | 10525702 | "sunroof glass literally exploded!" |
| 7/5/2013 | 7/4/2013 | 2012 | Sentra | 10523304 | "suddenly moon roof exploded" |
| 4/25/2013 | 4/24/2013 | 2008 | Sentra | 10509560 | "sunroof glass appeared to have 'exploded'" |
| 4/22/2013 | 4/20/2013 | 2012 | Altima | 10509152 | "sunroof shattered without warrant" |
| 3/28/2013 | 2/21/2013 | 2009 | Murano | 10504856 | "sunroof exploded outward" |
| 1/20/2013 | 1/11/2012 | 2010 | Murano | 10493536 | "sunroof exploded" |
| 11/25/2012 | 11/18/2012 | 2011 | Murano | 10485963 | "sunroof exploded (it sounded like a gunshot went off)" |
| 11/18/2012 | 11/17/2012 | 2013 | Altima | 10485641 | "moon roof spontaneously exploded" |
| 10/7/2012 | 10/2/2012 | 2012 | Murano | 10478938 | "moon roof inexplicably exploded from inside out" |
| 3/13/2012 | 3/10/2012 | 2011 | Murano | 10451414 | "sunroof shattered" |
| 9/13/2011 | 9/12/2011 | 2011 | Murano | 10425334 | "moon roof had exploded" |

FIFTH AMENDED CLASS ACTION COMPLAINT

| 9/9/2011 | 9/6/2011 | 2011 | Murano | 10424454 | "sunroof exploded" |
|---|---|---|---|---|---|
| 7/3/2011 | 7/2/2011 | 2009 | Murano | 10410329 | "sunroof exploded out" |
| 5/18/2011 | 5/11/2011 | 2010 | Maxima | 10401448 | "sunroof exploded" |
| 2/1/2011 | 1/21/2011 | 2009 | Altima | 10379898 | "sunroof glass had shattered (more like exploded) leaving about a 2 foot circular hole in the glass" |
| 11/4/2010 | 10/16/2010 | 2010 | Murano | 10363977 | "glass of the sunroof suddenly and spontaneously shattered into bits" |
| 10/8/2010 | 10/4/2010 | 2009 | Murano | 10359683 | "sunroof suddenly exploded and shattered" |
| 10/29/2008* | 10/19/2008 | 2005 | Maxima *Skyview Roof: precursor to panoramic | 10247175 | "moon roof suddenly implode" |

(http://www-odi.nhtsa.dot.gov/owners/SearchSafetyIssues; *accessed March 12, 2017*).[2]

44. Below are full text examples of the complaints lodged with NHTSA. The complaints are also viewable online at www.safercar.gov.[3]

    a.   **2008 Nissan Rogue:**

Glass from moonroof exploded/shattered to pieces while driving.

Temperature was 50 degrees, speed of 60 mph, nothing hit the glass

to cause it to break. Took delivery of the car 1 week prior to incident.

Dealer replaced glass and said it was defective. (NHTSA ID:

10230496 – Date Complaint Filed: 06/10/2008)

---

[2] The searches yielding these results can be replicated by accessing the cited website address, selecting "Keyword (Complaints Only)," entering the word "sunroof" in the available text box, selecting 2000 from the "Start" dropdown box, selecting 2016 from the "End" dropdown box, selecting Nissan from the "Make" dropdown box, and then depressing the "GO" button. Repeat these same steps replacing the term "sunroof" with the term "moonroof."

[3] These consumer complaints are reproduced verbatim and include uncorrected spelling and grammatical errors in the original.

b. **2008 Nissan Altima:**

On March 22, 2008 at approximately 1:30 PM I was driving my 2008 Nissan Altima down Knik-Goose Bay RD in Wasilla Alaska when my moon/sun roof blow out. I had just speed up to about 50 MPH and had no other vehicles in my immediate vicinity when I heard a loud pop and glass falling on me. After the glass had fallen on me I reached over and felt my check where I noticed a ¾ inch gash in my face with blood pouring out of it. Luckily I was able to keep my composure and keep my vehicle on the road. The dealership nor Nissan USA could and still has not given me an explanation on why or how this could have happened. (NHTSA ID: 10222188 – Date Complaint Filed: 03/24/2008)[4]

c. **2009 Nissan Murano:**

Sunroof exploded out while traveling at highway speed (70 mph) at approximately 0930 am. Weather conditions: clear and sunny. Road conditions: dry and smooth, no debris. No other vehicles to the front or sides so it is impossible to be road debris damage such as rocks or other debris. Appears to be a product or design defect. (NHTSA ID: 10410329 – Date Complaint Filed: 07/03/2011)

d. **2009 Nissan Murano:**

My sunroof over driver and passenger seats literally exploded while driving on interstate – sunny 38 degree day, not under a bridge or

---

[4] The narrative for this consumer complaint is taken from a document accompanying NHTSA complaint.

FIFTH AMENDED CLASS ACTION COMPLAINT

near other cars. The noise was deafening, and glass came crashing

on my (the driver) head and on the children in the back seat. The

roof was exploded upward like a volcano. Nothing hit the roof, as

we were shaken but able to pull over and check the car for any

evidence of something crashing into sunroof. But the roof exploded

upward and outward as it became obvious that a large chunk of glass

from roof was missing. The sunroof was closed, but the sun shade

was open. Reported the problem to Nissan, but they have yet to get

back to me. This is a major problem and a huge safety concern. This

problem seems to stem from a pressure problem within the Murano.

This is extremely dangerous!! Sunroof is being replaced, but I'm

now terrified to drive my car, seeing as how this can happen again,

and we may not be as fortunate to pull over safely and make it to the

side of road! Nissan must deal with this problem! This can

potentially be a fatal flaw on the Murano. (NHTSA ID: 10683749C

– Complaint Filed: 02/17/2015)

   e.   **2009 Nissan Altima:**

I have a 2009 Nissan Altima with just over 13000 miles on it. Last

week as I was driving to work at about 65 mph I heard what sounded

like a shotgun blast over my head. The sunroof glass had shattered

(more like exploded) leaving about a 2 foot circular hole in the glass.

At first I thought something must have hit me but when I pulled over

I could obviously see that the glass was mushroomed out as if it had

exploded from the inside out, not pushed in. I took the car to my

FIFTH AMENDED CLASS ACTION COMPLAINT

Nissan dealer and they agreed that that there was no evidence that anything had hit the glass and that it had simply spontaneously shattered. They also pointed out chips in the paint on the roof and trunk lid caused by the pieces of broken glass. After first denying any coverage, Nissan now has agreed to pay for the new glass as a "goodwill repair" but they still refuse to pay for installation or the paint damage. The dealership picked up the installation and my insurance company is covering the $2500 of paint damage. I did contact Nissan consumer affairs to appeal their decision but was very curtly denied again. (NHTSA ID: 10379898 – Date Complaint Filed: 02/01/2011)

    f. **2009 Nissan Rogue:**

I was driving on the highway nothing more than 50 mph and my sunroof exploded on the highway without notice. The glass cut my skin on my hand. And was a loud exploding sound. As I done research on my exploding sound roof incident on google on the internet. I found out I was not the only one that has experienced this sunroof glass exploding while driving. Nothing fell on my car. But caused glass to fall on me and almost a accident from shock of this happening. I am begging you to please make the 2009 Nissan Rogue sunroofs a recall. Because I was lucky enough not to die. But there may not be someone else that is luck. I just got glass cuts. I spoke to Nissan and they told me 800 dollars to fix a manufacture defect. (NHTSA ID: 10596713 – Date Complaint Filed: 06/06/2014)

FIFTH AMENDED CLASS ACTION COMPLAINT

g.  **2010 Nissan Murano:**

2010 Nissan Murano. While driving on highway, the glass of the sunroof suddenly and spontaneously shattered into bits. It was not hit by any object, as traffic was clear on the highway and there was no overpass in the area. Nissan said they found no manufacturer's defect, and my insurance would not cover it as glass. I paid for repair out of pocket. (NHTSA ID: 10363977 – Date Complaint Filed: 11/04/2010)

h.  **2010 Nissan Murano:**

For the second time in 6 months, my sunroof exploded. The first time was in July, 2012, and I will file a separate report for that incident. Both times the dealer said they were not responsible. Out of the blue, it sounded like a gun shot, it was so loud. The glass was pushed up with the force, with a big circle of glass missing. I was not following another car and there was no stone kicked up as claimed by the dealer. With the cold air outside, the glass was pushed up with the pressure. The first time it happened was in the summer, and with the pressure the glass was pushed inward. This seems to be a design flaw, as many others on the internet have claimed the same problem, even though the dealers claim they have not heard of this problem. This problem should not be ignored, as sooner or later this issue will result in serious accidents, possibly a fatality, and it would be difficult for Nissan to say they were not aware of this problem. It is outrageous that I am afraid to drive this

FIFTH AMENDED CLASS ACTION COMPLAINT

car when at any time, the sun roof may once again explode for no apparent reason. This dangerous situation is not what I signed up for when I bought this car and I am upset that this problem is not being acknowledged by Nissan. (NHTSA ID: 10493536 – Date Complaint Filed: 01/20/2013)

i. **2011 Nissan Murano:**

Sunroof of my 2011 Nissan Murano exploded suddenly while driving down the highway on a clear day and no other cars in the area. The malfunction of the sunroof exploding caused the sunroof glass to protrude outward into a done shape while glass pieces shattered into the cabin of the Murano. Upon contacting the Nissan dealer, they referred me to the national Nissan customer service number, but after 4 days I am still waiting on a call back from the regional Nissan office. This is a major safety issue that Nissan must take responsibility for correcting as soon as possible. (NHTSA ID: 10641082 – Date Complaint Filed: 10/03/2014)

j. **2011 Nissan Maxima:**

The rear glass panel of sunroof "exploded' with chunks of glass coming off the panel and over the next few hours the entire panel exhibited major cracking throughout. Sunroof was closed at the time and outside temperature was about 45 degrees. Wife was slowing on highway to turn into driveway. She stated the nearest vehicle was over ¼ mile ahead of her so no possibility of rock being thrown from their tires. Sounded like a shotgun blast in the car when it occurred.

FIFTH AMENDED CLASS ACTION COMPLAINT

Since it was the back panel no glass fell into the car that we could see. (NHTSA ID: 10689956 – Date Complaint Filed: 02/23/2015)

k.  **2012 Nissan Murano:**

I was traveling on the interstate at 75mph when I heard a loud boom. I looked around and discovered that the moonroof had shattered. It was a sunny day and there was no traffic around. The glass is broken around the edges of the glass. There is no sign of impact anywhere on the glass. (NHTSA ID: 10682170 – Date Complaint Filed: 02/09/2015)

l.  **2012 Nissan Sentra:**

My sunroof exploded on my 2012 Nissan Sentra. It was parked in my driveway and all the sudden it just exploded. There was no reason for this to happen. No one was around it, no rocks, limbs, hail, no bad weather, or anything. (NHTSA ID: 10652611 – Date Complaint Filed: 11/04/2014)

m.  **2012 Nissan Altima:**

When I was driving my Nissan Altima 2012 car on 1-625 in Dallas at 2pm CST at around 65 mph speed, I heard huge explosion sound on top of my head. I turned on the hazard light and slowed down the car and pulled over to a shoulder and checked the car. Sunroof glass was exploded and I have seen a 4 inch diameter hole and scatter glass pieces; rest of the glass was also broken/cracked. There was no vehicle at the time the incident occurred and it was not due to the external forces, it was due to internal pressure between the glass and

visor. I was so scared when the glass exploded but luckily escaped from the bodily injuries. The sunroof glass on the Nissan Altima 2012 is for sure defective product. Please investigate and save the lives of the drivers. I'm not expecting any financial compensation from Nissan or anybody. I don't want this to happen to anybody please investigate and save drivers. (NHTSA ID: 10919166 – Date Complaint Filed: 10/26/2016)

n. **2012 Nissan Sentra:**

Spouse parked and waiting in the car at airport arrival curb around 8:30PM. As I was walking toward the car, I heard a loud explosion, sounded like a gunshot. Then I noticed the car sunroof pieces shattered all over. No cars passing by. Temp around 90F. Luckily no passengers close by to the car. Spouse was in shock and luckily the sunroof cover was closed. I could not find a cause other than suspecting this is a vehicle manufacturing defect. The only damage part was sunroof itself. This is a serious safety issue that deem a safety recall of sunroof replacement. Luckily no one was injured. Reported the issue to Nissan Consumer Affair and waiting to hear back from them. (NHTSA ID: 10640510 – Date Complaint Filed: 10/01/2014)

o. **2013 Nissan Pathfinder:**

On June 9, 2014, at approximately 9:15 AM while driving down Crain Hwy on Route 5 with my sunroom retracted. Without warning I heard this loud explosion. I thought I had a blown tire or someone

FIFTH AMENDED CLASS ACTION COMPLAINT

shot at me. I kept driving for about a half a mile until I got to a traffic light. While waiting for the light to turn green, I looked up and saw that there was noise coming from my 2013 Nissan Pathfinder Platinum sunroof. I closed the sunroof slide because I didn't want any glass to fall on me or into my vehicle. Once I arrived at church, I pulled my sunroof forward to see what was going on. The sunroof exploded outward and all the glass landed inside the headliner because my sunroof was retracted, there weren't any cars in front of me for a rock or some other hard object to hit the sunroof, and there wasn't an overpass for something to fall down from up top. On June 11th, I brought my SUV into Tischer Nissan Service Manager so they could see my vehicle and repair the damaged sunroof. My vehicle has 23,200 miles on it. I showed him stacks of complaints about this sunroof defect and safety issue. I was told that Nissan Regional Manager decided that Nissan wasn't going to pay for my damaged sunroof. The justification was maybe a semi truck may have kicked a rock inside the sunroof and over a period of time, the rock put pressure on the pressure point of the glass which caused the glass to explode. He told me to contact my insurance company. Quite frankly that is an insult to my intelligence. On June 11th, I contacted Nissan Consumer Affairs. I was given a case #. On June 17th, I was informed that my sunroof damage would not be covered under warranty because there are no known defects, something hard must

FIFTH AMENDED CLASS ACTION COMPLAINT

have it, it is temper glass, and to contact my insurance. (NHTSA ID:
10599068 – Date Complaint Filed: 06/18/2014)

   p.   **2013 Nissan Altima:**

The contact owns a 2013 Nissan Altima. The contact stated that
while driving at approximately 65 MPH, the sunroof exploded and
small particles of glass shattered outside of the vehicle. The sunroof
sliding cover was closed when the failure occurred. The vehicle was
maneuvered to the side of the road. The vehicle was taken to the
dealer where the entire sunroof was replaced. The manufacturer was
notified of the failure. The approximate failure mileage was 49,000.
(NHTSA ID: 10816880 – Date Complaint Filed: 12/29/2015)

   q.   **2013 Nissan Juke:**

The vehicle was parked. Driver got in and closed the door. After
hearing an odd sound of something raining down on the roof area,
driver got out and discovered that the sunroof had shattered. Since
the sunroof shade was closed, the glass did not enter the vehicle.
(NHTSA ID: 10641939 – Date Complaint Filed: 10/07/2014)

   r.   **2013 Nissan Juke:**

The vehicle was parked. When the driver's side front door was shut,
the sunroof exploded upward. The explosion sounded like a
gunshot. The sunroof shattered completely into small pieces. The
sunroof visor was closed, so the glass shards did not enter the
vehicle. (NHTSA ID: 10559119 – Date Complaint Filed: 1/08/2014)

FIFTH AMENDED CLASS ACTION COMPLAINT

s.   **2014 Nissan Maxima:**

I was driving along the highway on a sunny day, about 75 degrees Fahrenheit, going approximately 65 MPH when I heard a loud exploding type of noise. The next thing I know I hear rattling overhead. I don't live far from where the incident happened so continued to drive .25 miles approximately to my residence and immediately get out to inspect my vehicle. The sunroof was shattered into a million pieces and there was a huge hole right in the middle of it. I had not opened the sunroof while driving so the visor was thankfully closed when it broke. (NHTSA ID: 10809463 – Date Complaint Filed: 12/10/2015)

t.   **2014 Nissan Maxima:**

2014 Nissan Maxima with 43000 miles. Sunroof exploded twice while driving on the freeway at 70 mph. Almost exact same of hole left in roof. Once on July 20th 2016 and once on August 15 2016 after being replaced with OEM parts. Danger to my children in the car and others on the road. Nissan refused to do anything after calling in and speaking with the complaint department. I have since repaired it a second time and returned it to the dealership – I do not feel safe driving the vehicle. (NHTSA ID: 10914504 – Date Complaint Filed: 10/07/2016).

u.   **2015 Nissan Rogue:**

2015 Nissan Rogue parked in my garage. I was in driveway heard loud noise like gunshot. Looked at my car and saw that front

panoramic sunroof had shattered into little pieces of glass. Thank God I was not driving at time. (NHTSA ID: 10875763 – Date Complaint Filed: 6/22/2016)

v. **2015 Nissan Pathfinder:**

While driving the vehicle on February 16, 2016, traveling south west a state road, at approximately 40 mph, the sunroof shattered into many pieces. The glass shards were not contained and entered the vehicle, collapsing on both driver and occupants. The driver was temporally incapacitated as the glass fell on her head and face. When I filed a complaint with Nissan North America, they stated that the sunroof operated as designed. (NHTSA ID: 10854479 – Date Complaint Filed: 4/08/2016)

w. **2016 Nissan Maxima:**

I just merged onto the highway going I-55 South from Countryline Rd, when I heard a very loud noise similar to a gun shot in close range and was literally frightening. Then I heard air seeping through my sunroof area so I pulled over on the side of the highway because I started to shake uncontrollably and I had my 7 month old in the car as well. I was able to look on top of the car and saw that the front sunroof was shattered. I immediately took the vehicle to Gray Daniels Nissan North in Jackson, MS. They told me that this will have to fall under my insurance but I don't understand why. This is a defect on how this model car handles pressure causing the sunroof

FIFTH AMENDED CLASS ACTION COMPLAINT

to explode!  My ears and hear are aching fur to the explosive sound.

(NHTSA ID: 10863699 – Date Complaint Filed: 05/07/2016)

    x.  **2016 Nissan Maxima:**

Sunroof exploded while driving. No objects fell onto the car. We had no idea what the loud bang/exploding sound was until we were able to safely pull off the road and evaluate. The hole was not inward, like something fell into it, but the glass was pushed upwards. We were on a 4-lane straightaway going maybe 35 or 40 mph and not under any bridges, trees, etc. No vehicles around us, etc. It was about 8:30pm in July in South Carolina. The noise was very loud and very startling! (NHTSA ID: 10893526 – Date Complaint Filed: 8/05/2016)

    y.  **2017 Nissan Juke:**

Drivng down the road in our community all of a sudden a large bang and our sunroof exploded. (NHTSA ID: 10955485 – Date Complaint Filed:  2/19/2017)

    z.  **2013 Infiniti G37:**

While driving on Sept 15 from Raleigh, NC to Charleston, SC the sunroof on my Infiniti G37 shattered.  It was a clear sunny day with a temp about 80 degrees and to the best of my knowledge there was no foreign object that hit the car. I purchased the car new from the Infiniti dealer in January 2015, the car has 3,200 miles and is kept in the garage at home and in a parking garage at work.

(NHTSA ID: 10764026 – Date Complaint Filed: 9/15/2015)

FIFTH AMENDED CLASS ACTION COMPLAINT

aa. **2014 Infiniti Q60**

Sunroof glass spontaneously exploded n shattered into small pieces shards and glass dust without impact from anything.

(NHTSA ID: 10758959 – Date Complaint Filed: 8/24/2015)

bb. **2014 Infiniti Q60:**

I was driving on a highway and all of a sudden I hear a loud boom, as if a gun was fired right by my ear. I almost ran into another car because it startled me so. I pulled off onto a median and inspected the car. I looked at my car and when I looked at the roof, I realized that my sunroof was shattered. I was shocked! I was very fortunate to not have gotten into an accident. My son, who was with me was also very scared. He was worried about the other windows exploding. It was very frightening.

(NHTSA ID: 10716086 – Date Complaint Filed: 5/12/2015)

cc. **2014 Infiniti Q60 Hybrid:**

While driving approximately 65 miles an hour in my 2 week old Infiniti Q60 I was startled by the sound of what I thought was a gunshot. My husband instructed me to pull off to the side of the road as he thought perhaps a tire had blown. To our surprise the sunroof had exploded. This resulted in a large hole with glass facing upward. Luckily no one was injured by the glass that entered the vehicle. *TR

(NHTSA ID: 10621687 – Date Complaint Filed: 8/12/2014)

FIFTH AMENDED CLASS ACTION COMPLAINT

dd. **<u>2015 Infiniti QX60:</u>**

I found out on Saturday morning, that my sunroof was broken (looks like explode from the inside out), I checked from any stones or any debris(that could hit my car around my driveway, but there were nothing around the car and there were no marks on the roof as well).

(NHTSA ID: 10903626 – Date Complaint Filed: 9/5/2016)

ee. **<u>2015 Infiniti Q70 Hybrid: TL*</u>**

The contact owns a 2015 Infiniti Q70 Hybrid. While driving approximately 70 mph, the contact heard a loud pop noise. The contact pulled over and observed that the sunroof exploded. The vehicle was not taken to a dealer or diagnosed. The manufacturer was not made aware of the failure. The failure mileage was 1,000.

(NHTSA ID: 10760620 – Date Complaint Filed: 9/1/2015)

45. Few, if any, of the drivers who have contacted the federal government have reported that the shattering occurred because of an external object striking their vehicle.

**C.  Nissan's Knowledge of the Defect**

46. Nissan has long known that its panoramic sunroofs are prone to unexpected and dangerous shattering.

47. Like other automobile manufacturers, Nissan monitors NHTSA's website for emerging problems with its vehicles.

48. Even before the introduction of panoramic sunroofs, NHTSA played a role in making Nissan aware of the danger created by shattering sunroofs. Nissan's "Skyview" sunroof, a precursor to panoramic sunroofs, was introduced in the 2003 model year Nissan Maxima. Due to

shattering glass, Nissan issued a recall of 2004 Maxima models in order to replace the "Skyview" sunroof. (NHTSA Campaign #04V3260000).

49. Since the introduction of panoramic sunroofs, NHTSA has continued to bring awareness to the issues and danger associated with shattering sunroofs through complaints and investigations.

50. NHTSA complaints concerning Nissan's shattering panoramic sunroofs have been lodged since as early as 2008. Since the initial 2008 complaint, at least another 105 complaints have been logged on NHTSA's website concerning this issue.

51. On May 14, 2014 NHTSA opened an investigation into spontaneously shattering panoramic sunroofs.  (http://www-odi.nhtsa.dot.gov/owners/SearchSafetyIssues,  NHTSA  Investigation ID Number:  EA 14002; *accessed on December 21, 2016*).

52. In July 2014, in connection with its shattering panoramic sunroof investigation, NHTSA requested  information  from  Nissan  regarding  exploding  sunroofs  in  its  vehicles. (https://static.nhtsa.gov/odi/inv/2014/INIM-EA14002-63590.pdf;  *accessed  December  21, 2016*).

53. Nissan responded to NHTSA's inquiry in September 2014 by producing dealer field reports concerning its Pathfinder and Murano panoramic sunroofs that had shattered and were known to Nissan at that time. On the same day, Nissan also produced consumer complaints relating to defective and "exploded" sunroofs in its Pathfinder and Murano models.

54. Examples from the dealer field reports that Nissan produced appear below and demonstrate Nissan's knowledge of its panoramic sunroofs shattering as early as February 2013. These reports  can  also  be  accessed  at  https://static.nhtsa.gov/odi/inv/2014/INRD-EA14002-60025P.pdf; *accessed on December 21, 2016*.

      a. **2012 Nissan Murano:**

        Details of Incident:

32

FIFTH AMENDED CLASS ACTION COMPLAINT

1. how did the customer notice the incident

The sunroof glass broke.

- A loud noise occurred as the glass broke.

2. What are the incident conditions

According to the customer these are the conditions when the incident occurred:

- On Interstate 10 west of Tucson in the Marana area (mixed concrete and asphalt, at 85 mph.

- HVAC set at ~75, fan speed 2/5, fresh, face.

- Sunroof glass and shade fully closed.

- All vehicle windows closed.

Environmental data the day of the incident:

- Temperature max/min: 50F/32F.

- Precipitation: .5" (rain only, no reported hail)

- Humidity: 91%

- Wind speed max: 9 mph.

3. Inspection done & result

The sunroof glass is broken.

- Glass pane is completely broken into small segments (see photos).

- The remaining glass appears to be raised when viewed horizontally, as if pressure was applied from with the vehicle. Root cause not determined.

FIFTH AMENDED CLASS ACTION COMPLAINT

- The customer says they were "going about 85 mph on the freeway" when the incident occurred, with no abnormal influences.

- The customer says that the vehicle has experienced nothing abnormal.

- The vehicle has not been washed by the customer (in service only 13 days).

(Nissan Dealer Field Reports at NA-TR-2013-00633 – Date of Report: Feb. 28, 2013)

b. **2012 Nissan Murano:**

Details of Incident:

1. how did the customer notice the incident

The sunroof glass broke.

- A loud noise occurred as the glass broke.

2. What are the incident conditions

According to the customer these are the conditions when the incident occurred:

- On Interstate 17 in North Phoenix area (mixed concrete and asphalt, at 70 mph.

- HVAC set at ~75, fan speed 2/5, fresh, face.

- Sunroof glass and shade fully closed.

- All vehicle windows closed.

Environmental data the day of the incident:

- Temperature max/min: 115F/74F.

FIFTH AMENDED CLASS ACTION COMPLAINT

- Precipitation: 0"

- Humidity: 51%

- Wind speed max: 10 mph.

3. Inspection done & result

The sunroof glass is broken.

- Glass pane is completely broken into small segments (see photos).

- The remaining glass appears to be raised when viewed horizontally, as if pressure was applied from with the vehicle. Root cause not determined.

- The customer says they were "going about 70 mph on the freeway" when the incident occurred, with no abnormal influences.

- The customer says that the vehicle has experienced nothing abnormal.

- The vehicle has been washed by all varieties of equipment (hand wash, touch free, rotary brushes, reciprocating straps).

(Nissan Dealer Field Reports at NA-TR-2013-02084 – Date of Report: July 12, 2013)

   c.   **2014 Nissan Murano:**

Details of Incident:

Customer complaint/Inspection done & result:

FIFTH AMENDED CLASS ACTION COMPLAINT

This vehicle belongs to an NTCNA engineer. TSM spoke with the customer who states that while driving the sunroof glass shattered. Customer is not aware of anything hitting the glass. TSM inspected vehicle and observed the edge of the glass sticks upward all around the area that broke. Please see photos of sunroof glass in related documents.

Please note: TSM has had feedback from (2) other Detroit area dealers where customers state the sunroof glass had shattered on 2014 Muranos.

TSM will collect the glass frame and sunroof assembly, per FQI engineer's request, and will ship to DS at FQI for further analysis. TSM taped off the glass so it could be shipped with no further damage.

(Nissan Dealer Field Reports at NA-TR-2014-02757 – Date of Report: Aug. 8, 2014)

55. Consumer complaints produced by Nissan can be accessed at https://static.nhtsa.gov/odi/inv/2014/INRD-EA14002-60026P.pdf and include complaints that "the sun roof exploded" as early as February 1, 2013. *This website was last visited on December 21, 2016.*

56. A survey of the complaints reveals that the panoramic sunroofs often shatter within weeks or months of purchase, and consumer complaints to both Nissan and NHTSA, discussed above, show that drivers were reporting this problem as early as 2008.

57. In addition to monitoring NHTSA, Nissan internally tracks information regarding the panoramic sunroof failures through the collection of incident reports and other information

from drivers and dealers (as evident from its production in NHTSA's shattering panoramic sunroof investigation), including complaints, warranty claims, replacement parts data, dealings with insurance, and other aggregated data sources. Nissan has nearly exclusive access to this information, including pre-release testing of vehicle components, so it is implausible that Nissan had no knowledge very early on about the defect.

58. Nissan is also aware that other manufacturers—whose vehicles have similarly designed panoramic sunroofs and similar shattering problems—have voluntarily initiated safety recalls to notify drivers of the danger and repair shattered sunroofs free of cost.

59. Nissan claims its sunroofs shatter as a result of impact from roadway objects.

60. Rocks or other objects thrown up by cars and trucks on the roadway would not impact the sunroof with sufficient force to cause it to shatter, let alone to shatter *outward*, a fact that appears in many consumer complaints and of which Nissan is aware. Moreover, driver reports specifically contradict Nissan's position. Significantly, some Nissan panoramic sunroofs have spontaneously shattered while the vehicle was parked.

61. As mentioned above, Nissan has had at least one recall relating to shattering sunroofs. The recall was for its 2004 Maxima. While Nissan issued a recall that sunroof shattering problem that impacted only one model year of its Maxima, it has done nothing regarding the far more predominant problem relating to the panoramic sunroof shattering that affects potentially hundreds of thousands or more Nissan vehicles.

**D.  The Dangers Posed to Class Vehicle Occupants**

62. NHTSA, KATRI, and responsible automobile manufacturers have acknowledged that the spontaneous failure of panoramic sunroofs endangers drivers, passengers, and others on the road.

63. Panoramic sunroofs are an expensive upgrade option that can cost thousands of dollars in the purchase or lease price and over a thousand dollars to replace.

64. A reasonable person considering whether to purchase or lease a Nissan vehicle would want to be informed about the panoramic sunroof defect so that he or she could opt against paying the thousands of dollars for a "luxury upgrade" or simply forego purchasing or leasing the vehicle altogether.

65. When the Nissan panoramic sunroofs shatter, they usually make a sudden and extremely loud noise, followed by shards of glass raining down onto the driver and passengers. Drivers report that the falling shards of glass have cut them and their passengers and have also caused damage to the interior of the vehicles as well as scratching the vehicles' exterior paint. Drivers have also reported a number of near-miss accidents that occurred after they were startled or distracted by the shattering. Both Nissan and NHTSA have received reports of injuries resulting from Nissan panoramic sunroofs shattering.

66. Other manufacturers concur. When Nissan initiated a safety recall for shattering panoramic sunroofs, for example, it acknowledged that drivers "could be injured by falling glass," and that "[i]f the glass panel were to break while the vehicle is in motion, it could cause driver distraction, increasing the risk of a crash."[5] And when Hyundai initiated its recall, it too acknowledged that the shattering of panoramic sunroofs "relates to motor vehicle safety," including by posing a risk of cutting vehicle occupants.

---

[5] Jenna Reed, *NISSAN Recalls Certain Beetle Models Over Potential Panoramic Sunroof Issue*, glassBYTEs.com (Dec. 11, 2014), http://www.glassbytes.com/2014/12/Nissan-recalls-certain-beetle-models-over-potential-panoramic-sunroof-issue/; *accessed on December 21, 2016* and Nissan of America, Inc., *Nissan Issues Voluntary Recall* (Dec. 7, 2014), https://media.Nissan.com/release/856/; *accessed on December 21, 2016.*

FIFTH AMENDED CLASS ACTION COMPLAINT

67. In connection with the Hyundai recall, NHTSA wrote that the breaking of the panoramic sunroof could lead "to personal injury or a vehicle crash."  In connection with an Audi recall, NHTSA wrote that "should the sunroof's glass break while the vehicle is in use, the falling glass could cut and injure the driver or passengers [and] could also distract the driver, increasing the risk of a crash."

68. KATRI likewise concluded that the sudden shattering of a panoramic sunroof while driving may cause "abrasions due to shattered glass" and also cause the "risk of secondary accidents."

69. In December 2012, KATRI launched an investigation into exploding panoramic sunroofs of numerous automotive manufacturers, including Nissan. KATRI's investigation culminated in November 2013, when it met with numerous car manufacturers in Seoul, South Korea, and announced its finding that the ceramic tint in panoramic sunroofs substantially weakens the glass and compromises the safety of the glass. KATRI recommended widespread recalls.

70. KATRI's recommendations went unheeded by Nissan.

**E.  Nissan Refuses to Warn Drivers**

71. Despite the high number of complaints and the danger posed by the defect, Nissan continues to conceal its existence from current drivers and potential customers alike. Despite having a duty to alert potential customers to the existence of the Defect at the point of sale as this fact would be material to the potential customer's purchasing decision, Nissan chooses to intentionally conceal or, at best, omit the existence of the defect to consumers considering the purchase of a Nissan vehicle. Nissan similarly fails to warn drivers who experience a shattering event of the existence of the Defect and the danger of a shattering event reoccurring when those drivers bring their vehicles in for repair. Nissan knows of the defect yet continues to profit from the sale and lease of vehicles to unwitting consumers.

72. Nissan continues to conceal the defect even though it knows that the defect is not reasonably discoverable by drivers unless they experience a failure and are exposed to the attendant safety risks.

73. Nissan remains silent even as it continues to receive complaints from concerned drivers and NHTSA investigators.

74. As a result of Nissan's inaction and silence, consumers are unaware that they purchased or leased a vehicle that has a defective sunroof, and continue to drive these unsafe vehicles. Additionally, drivers who have experienced an exploding sunroof and bring their vehicles to a dealership for repairs are not told that identically defective sunroofs are installed as replacements in their vehicles.

75. Some manufacturers who have had vehicles with similar panoramic sunroof problems—Audi, Hyundai, and Nissan (on earlier models)—have voluntarily initiated safety recalls as a result, notifying drivers of the danger and offering to repair the sunroofs free of cost.

### F.  Nissan's Deceptive Warranty Process

76. Nissan advertises that it warranties "[e]very Nissan is backed by a 36-month/36,000-mile limited vehicle coverage and a 5-year/60,000-mile limited powertrain coverage." (https://owners.nissanusa.com/nowners/navigation/warrantyContent; accessed *December 24, 2016*). Nissan warrants to correct defects in materials or workmanship in all parts and components of new Nissan vehicles.

77. Certified pre-owned Nissan vehicles carry over from previous owner what remains of the new vehicle 36-month/36,000-mile "bumper-to-bumper" warranty, if any time remains.

78. The relevant terms of the warranties for each of the model years of the Class Vehicles are identical or substantially similar.

79. Plaintiffs and Class Members experienced damage from the sunroof defect within the warranty periods of their vehicles. Plaintiffs and Class Members reasonably expected that any and all damage that resulted from the sunroof defect would be covered under the warranty, and that they would not be charged for such repairs.

80. Nissan has systematically denied coverage with respect to the defective sunroofs. Plaintiffs and numerous Class Members have been forced to incur substantial repair bills and other related damages, including being forced to make claims under their automotive insurance policies and incurring substantial deductibles.

## V.   PLAINTIFFS' EXPERIENCES

**Sherida Johnson**

81. Sherida Johnson recently moved from Japan to California. This move required a lot of new things in Ms. Johnson's life, such as a new place to live, a new job, and a new car.

82. Now, Ms. Johnson lives in Murrieta, California. Her job at BioScreen Services, Inc. is in Torrance, California – approximately 81.5 miles from her home. Her commute from home to work takes approximately 1.5 hours in no traffic.

83. Ms. Johnson is a single mother of three children (ages 18, 11, and 8). As a single mother and an individual who commutes a significant distance to work daily, the purchase of a vehicle was a big decision in many regards (*e.g.*, financially, safety, efficiency). Ms. Johnson spent a significant amount of time and effort to research several vehicles and their features before selecting a car to purchase. Ms. Johnson's research included investigating safety features, engine specifications, complaints from other owners, reviews, and YouTube videos concerning the vehicles and/or specific features.

84. Ms. Johnson was willing to and did spend substantial money on a car that was safe, reliable, and that had the panoramic sunroof feature for her three children to enjoy as passengers with her.

85. Ultimately, Ms. Johnson selected to purchase a 2016 Nissan Maxima. According to her research, the car seemed to be safe and reliable. After satisfying herself that the Maxima was safe and reliable, Sherida Johnson chose the 2016 Maxima over other cars because the Maxima had the aesthetically pleasing panoramic sunroof feature. Additionally, Ms. Johnson believed the Maxima looked similar to a Tesla – a look she found pleasing. Ms. Johnson's decision to purchase the Nissan Maxima at issue was one that she put a great deal of consideration and monetary investment into.

86. During her research, Ms. Johnson did not encounter any information indicating that a panoramic sunroof could be dangerous. Nor did she observe any warnings about the potential for this type of sunroof to spontaneously explode. She did not know and never thought the panoramic sunroof feature was a danger.

87. Plaintiff Sherida Johnson purchased a certified pre-owned 2016 Nissan Maxima, VIN: IN4AA6AP6GC397907, with 14,422 miles on it from CarMax Auto Superstores California, LLC in August 2016 for a total cost of purchase on credit, including a $6,000 down payment, of $58,650.00. Thus, Ms. Johnson's financing consists of 72 payments of $731.25. The payments began in September 2016.

88. Ms. Johnson, being cautious and respecting safety for herself as well as her three children, paid extra money to purchase an extended service plan warranty from CarMax to cover her new vehicle.[6]

---

[6] MaxCare Extended Service Plan Contract #: 7196634294 expiring 8/13/2021 or 100,000 miles.

FIFTH AMENDED CLASS ACTION COMPLAINT

89. Because the car was a 2016 model Nisan Maxima and under three years old from original purchase date and under 36,000 miles, it came with what remained on the 3-year/36,000 mile bumper-to-bumper warranty which includes expressly warranting to repair or replace defects in materials or workmanship and, thus, her panoramic sunroof.

90. Ms. Johnson's purchased Maxima was equipped with a factory-installed panoramic sunroof.

91. About three months after purchasing her 2016 Nissan Maxima, Ms. Johnson started her job in Torrance, California. Since then, she has commuted 3 hours a day, five days a week for her job.

92. At approximately 3:40 a.m. on Monday, October 31, 2016, Sherida Johnson began her commute to work. The weather was clear - about 70 degrees, not raining or snowing - and traffic was light. Her Nissan had approximately 20,000 miles on it. She was on I-15 N going approximately 70 mph about to get on CA-91 W, when she suddenly heard what sounded like a gunshot. Ms. Johnson was startled, confused, and terrified.

93. Ms. Johnson, uncertain as to what had caused the sound, examined her surroundings. Seeing nothing suggesting a shooter was around, she then began to question whether something was wrong with her vehicle (e.g., had her tire blown out?). The vehicle appeared to be driving correctly, but she pulled over on the side of the highway to examine it. She looked up where her panoramic sunroof shade was open and saw that the sunroof itself had exploded. Some of the shards of glass fell into the car. But large portions of the glass sunroof were simply missing. Ms. Johnson was concerned the glass could have flown off and caused another vehicle to get into an accident. However, Ms. Johnson saw no other vehicles impacted and noted that no cars were directly beside or behind her when she first heard the loud gunshot-like noise.

94. At this time, Ms. Johnson's car was still covered by the remainder of the new car vehicle limited warranty of 36 months/36,000 miles because it was below the warranty age limit and

FIFTH AMENDED CLASS ACTION COMPLAINT

mileage. This bumper-to-bumper warranty warranted to correct all defects in materials and workmanship and thus covered the defective panoramic sunroof.

95. Because her vehicle was drivable and because Ms. Johnson had only been employed by BioScreen Services, Inc. for approximately three weeks, she got back into her car, closed the panoramic sunroof shade, said a prayer, and proceeded to drive to work. She arrived at her job a little after 5 a.m.

96. Below are photographs of the failed sunroof in Ms. Johnson's 2016 Nissan Maxima.





FIFTH AMENDED CLASS ACTION COMPLAINT



///



97. On her lunch break on October 31, Ms. Johnson took her car to the nearby Torrance CarMax. The CarMax employees who saw the car were in dismay at the damage. However, CarMax indicated that, while Ms. Johnson had purchased an additional warranty from CarMax to cover damage to her 2016 Nissan Maxima, they would not be able to repair the panoramic sunroof

FIFTH AMENDED CLASS ACTION COMPLAINT

damage. CarMax then informed Ms. Johnson that she should call her insurance company. Again, Ms. Johnson's new car vehicle warranty for bumper-to-bumper repairs that include the defective sunroof was still in effect.

98. Ms. Johnson called her insurance company who instructed her as to some of her options.

99. Then, Ms. Johnson called a local Nissan dealer, Nissan of South Bay in Torrance, California, who, after hearing Ms. Johnson describe the incident, told her to bring the car into the dealer. Ms. Johnson brought the car into Nissan of South Bay and, despite the fact that Ms. Johnson saw no rocks or debris while driving her car on the highway that morning, she was told "something hit glass" (*i.e.*, the panoramic sunroof).

100. Despite being a 2016 vehicle covered by the original manufacturer's warranty from Nissan and potentially covered by the additional warranty Sherida Johnson purchased from CarMax when she bought the vehicle, Nissan of South Bay informed Ms. Johnson that the sunroof shattering was "not covered under warranty."

101. The Nissan dealer kept Ms. Johnson's car to perform the repair of the shattered panoramic sunroof. An employee from the Nissan dealer called Ms. Johnson on approximately Tuesday, November 1, 2016, to inform her that the Nissan part needed for replacement of the sunroof had been ordered. He also informed her at that time that the car contained a part that was subject to a Nissan recall relating to the anti-lock brake system ("ABS").

102. Ms. Johnson's 2016 Nissan Maxima's ABS actuator is part of a larger Nissan recall. The reason for the recall is that the ABS "actuator may leak brake fluid" which will cause "the ABS warning lamp" to "illuminate and remain continually illuminated on the instrument panel." This continual illumination can "create an electrical short" which "may lead to a fire." (https://www.nissanusa.com/content/nissan-responsive/us/en/recalls-vin/abs.html; *accessed on December 20, 2016*).

103.    The Nissan dealer kept Ms. Johnson's 2016 Nissan Maxima for approximately one work week – from October 31 through November 4. They replaced the shattered panoramic sunroof with the ordered Nissan replacement part. The parts necessary to address the recall were not available at the time and Ms. Johnson was told to bring the car back at another time.

104.    Ms. Johnson paid $1,104.93 in repair costs to the Nissan dealer for the parts and labor associated with the replacement of the defective panoramic sunroof. The replacement sunroof part (LID ASSY-SUNROOF: FP NUMBER 91210-4RA1A) cost $844.93. Labor affiliated with the sunroof replacement cost $260.00.

105.    Ms. Johnson made a claim[7] with her insurance company, Geico, and paid a $50.00 deductible. In turn, her insurance company reimbursed her for the cost of the part and $125.00 worth of labor. Ms. Johnson paid approximately $185 out-of-pocket for the sunroof replacement for which she was not reimbursed.

106.    Ms. Johnson inquired whether Nissan would pay to replace the sunroof in the event the panoramic sunroof would explode unexpectedly again. The Nissan dealer replied "no" and told her she would be responsible for any and all repair costs in the future.

107.    Ms. Johnson is afraid the replacement sunroof will explode like the original one did. She has not used her sunroof since the replacement panoramic sunroof was installed due to this fear.

108.    Ms. Johnson is now scared to drive her vehicle. She would prefer not to drive or even own her 2016 Nissan Maxima anymore. However, she financed the vehicle and will be making payments on the car through 2021.[8]  Therefore, she feels, economically, she is stuck with this

---

[7] Geico claim number: 0571051900101017.

[8] At the time this Complaint was filed, Ms. Johnson has 67 payments of $731.25 remaining before the financing agreement on her 2016 Nissan Maxima is satisfied in full.

FIFTH AMENDED CLASS ACTION COMPLAINT

1   car – forced to drive in fear, 3 hours a day, five days a week, for nearly five more years. Had

2   Ms. Johnson known of the car's panoramic sunroof defect, she would have bought a less

3   expensive car without the panoramic sunroof upgrade.

4   109.   Had Nissan adequately disclosed the panoramic sunroof defect, Ms. Johnson would not

5   have purchased the vehicle or she would have paid substantially less for it. In addition, Ms.

6   Johnson would not have suffered the economic damages she sustained. Her vehicle remains

7   within the scope of the Nissan new vehicle warranty. She did not receive the benefit of her

8   bargain.

9

10   **Subrina Seenarain**

11   110.   In November 2015, Ms. Seenarain purchased a certified pre-owned 2014 Nissan Maxima

12   with a panoramic sunroof, VIN:  1N4AA5AP5EC456176, and odometer reading of 19,804

13   miles from Nissan of Garden City in Hempstead, Nassau County, New York. The purchase

14   price was $25,000 and included a payment for Nissan's extended service contract called

15   "Service + Plus".

16   111.   Ms. Seenarain did a significant amount of research before deciding upon her Maxima. She

17   researched new and used cars online for safety, reliability, and price. Her father owned a Nissan

18   Altima more many years and was very pleased with its reliability. In addition, Ms. Seenarain

19   had driven her father's Altima several times prior to purchasing her Maxima at issue and

20   likewise found it safe and reliable. Subrina Seenarain reviewed cars for sale privately and

21   found a private-sales BMW online that met her requirements for safety and cost, but it did not

22   come with the warranties and assurances of quality that the Nissan certified pre-owned offered.

23   In addition, she spoke at length with automobile sales representatives from Garden City Nissan

24   who assured her that the certified pre-owned Maxima met her requirements for safety,

25   reliability, and economy. The panoramic sunroof feature was then the clincher for Ms.

FIFTH AMENDED CLASS ACTION COMPLAINT

Seenarain because it was a beautiful feature that purported to improve the driving experience for driver and passengers. And Ms. Seenarain drives a great deal. So, Ms. Seenarain spent more money on a car for the panoramic sunroof upgrade.

112.    Ms. Seenarain lives in Schenectady, New York and works as a registered nurse at Montefiore Hospital in the Bronx where she works, at a minimum, three 12-hour shifts a week. The drive from her home to work is 2 ½ hours one way. Generally, she spends the night at her mother's house in Queens on working nights where she is scheduled the next day. With her home in Schenectady, job located in the Bronx, and her mother living in Queens, Ms. Seenarain drives a substantial distance weekly. Notably, Ms. Seenarain also attends to the needs of her family in the greater New York area and uses the car for other personal reasons.

113.    Ms. Seenarain put a great deal of thoughtful consideration and research into her decision to purchase the Nissan Maxima, which was a significant monetary investment for her.

114.    During her research, Ms. Seenarain did not encounter any information indicating that a panoramic sunroof could be dangerous. Nor did she observe any warnings about the potential for this type of sunroof to spontaneously explode. Until her sunroof exploded, she did not know and never thought the panoramic sunroof feature was a danger.

115.    On September 4, 2016 - a clear Sunday afternoon - at approximately 2:30 p.m., Ms. Seenarain was driving her Maxima with a passenger after having just dropped off and settled her five-year old nice and mother into a Long Island hospital. Her niece was being treated for a fever.

116.    Upon leaving the hospital in Long Island and just after entering the Grand Central Parkway, having reached a speed of about 40 miles per hour, Ms. Seenarain and her passenger heard a thunderous pop. Frightened and aware that the sound came from her car, Ms. Seenarain pulled onto the highway shoulder, got out of the car, and inspected the damage. She and her passenger

discovered a large hole bowed outward in the panoramic sunroof. There had been no collision, nor had any object struck the car prior to the noise and glass roof shattering. The closed shade caught most of the glass that would have fallen into the car.

117.     Below are photographs of the Seenarain vehicle's shattered sunroof in the 2014 Nissan Maxima.



///





118.   A highway patrolman stopped and informed Ms. Seenarain that she needed to move her car off of the highway shoulder for safety. Ms. Seenarain drove from the expressway straight to Nissan of Garden City where she purchased the vehicle. The service representative at the dealership told her that she needed to either file a claim through her insurance carrier or with Nissan, and that the damage was not something the dealership would cover. A representative from the dealership vacuumed out the glass inside the sunroof shade and car and secured the hole in the roof with plastic and tape.

119.   On September 8, 2016, Ms. Seenarain called Nissan from the Garden City dealership and was told by a Nissan representative that panoramic sunroofs were not covered under the glass warranty, but that other glass and sunroofs were. Ms. Seenarain was assigned a claim number from customer service representative "Ann", ID No. 457227. She followed up with Nissan via e-mail on the same day, trying to confirm that that Nissan of Garden City would repair the sunroof and reiterating her understanding that Nissan would cover the repair costs. She again requested of Nissan that they repair/replace the sunroof and Nissan refused.

120.   In addition, Ms. Seenarain contacted her automobile insurance carrier, GEICO, which informed her that any repair would cost her $1,000.00 "out-of-pocket" and that her claim had

to be filed under collision coverage (potentially raising her car insurance rates), even though there was no collision or other outside force which caused the sunroof to spontaneously shatter.

121.   Prior to choosing Nissan of Garden City to replace the defective sunroof, Ms. Seenarain contacted several other independent glass companies and was told that the sunroof could only be replaced with a Nissan factory sunroof. After comparing repair prices, she had the panoramic sunroof repaired at the dealership where she purchased the car at a cost to her of $1,100.69.

122.   Ms. Seenarain is anxious driving the "repaired" Maxima, fearful that the sunroof will again explode. Because she paid $10,000.00 down on the car and still has approximately five years' worth of monthly payments remaining, Ms. Seenarain feels financially bound to keep this vehicle. Had Ms. Seenarain known of the car's panoramic sunroof defect, she would have bought a less expensive car without the panoramic sunroof upgrade. Ms. Seenarain is no longer able to enjoy the panoramic sunroof feature that she paid extra money to have because she keeps the sunroof cover closed for fear of another sunroof shattering incident.

123.   Had Nissan adequately disclosed the panoramic sunroof defect at the point of sale or otherwise, Ms. Seenarain would not have purchased the vehicle at issue, would have paid substantially less for the car, or would have purchased a less expensive vehicle without a panoramic sunroof. Her vehicle was within the scope of the Nissan new vehicle warranty at the time the sunroof shattered and at the time of repair. She did not receive the benefit of the bargain she made with Nissan at the time of purchase.

**Chad Loury**

124.   In 2013 Mr. Loury purchased a 2012 Nissan Murano from Orange Motors in Ontario, California.

125.    In August 2015 while driving the vehicle he kept hearing an odd noise in the car. Upon inspection of the vehicle, Plaintiff noticed that the sunroof had shattered.

126.    Plaintiff went to Nissan of Duarte, California on three separate occasions requesting that Nissan repair the sunroof. Nissan denied each of his requests.

127.    Plaintiff had the sunroof repaired by Loyalty Auto Glass in West Covina, California at a cost of $700.00.

128.    Had Nissan adequately disclosed the panoramic sunroof defect, Mr. Loury would not have purchased the vehicle or he would have paid substantially less for it. In addition, Mr. Loury would not have suffered the economic damages he sustained. He did not receive the benefit of his bargain.

129.    Below are photographs of the Loury vehicle's shattered sunroof in the 2012 Nissan Murano:



FIFTH AMENDED CLASS ACTION COMPLAINT





**Linda Spry**

130.   On February 16, 2013, Ms. Spry purchased a 2012 Nissan Murano from Auto Nation

Nissan in Centennial, Colorado.

FIFTH AMENDED CLASS ACTION COMPLAINT

131.    Prior to purchasing her Class Vehicle, Ms. Spry engaged in conversation with a member of the Auto Nation Nissan sales staff who proceeded to discuss the vehicle's features and available upgrades, including the panoramic sunroof, in an attempt to persuade her to purchase the vehicle.  The sales person even demonstrated the sunroof as part of his sales pitch.  Ms. Spry also engaged in similar discussions with the manager of the dealership.  Although the salesperson and manager should have disclosed the Defect to Ms. Spry prior to purchase as it would likely have affected her purchasing decision, Ms. Spry was never informed of the existence of the Defect.

132.    Additionally, Ms. Spry reviewed advertisements pertaining to her Class Vehicle authored by or on behalf of Defendant in her local newspaper prior to purchase.  These advertisements made no mention of the Defect.

133.    On October 11, 2016 around 9:00 a.m. her sunroof shattered while driving approximately 60-70 MPH on Westbound C470 before the Belleview exit. The temperature was in the mid 70's and the traffic was light. Plaintiff was in an isolated pocket with the nearest car about 10 to 12 car lengths from her. Plaintiff heard a loud explosion and thought that there was either a wreck or that is was a gunshot. She then heard the wind blowing through the sunroof and glass blowing behind her in her rear view window.

134.    Plaintiff went to Auto Nation Nissan to have the sunroof repaired. After discussing the sunroof with Nissan for a week, Nissan refused to repair her sunroof.

135.    Plaintiff had and extended warranty for the vehicle, but Nissan said that the extended warranty did not pay for glass.

136.    The dealership repaired her vehicle at a cost of $1,114.00 to plaintiff.

137.    Had Nissan adequately disclosed the panoramic sunroof defect, Ms. Spry would not have purchased the vehicle or would have paid substantially less for it. In addition, Ms. Spry would

not have suffered the economic damages sustained. She did not receive the benefit of her bargain.

138.   Below are photographs of Ms. Spry's 2012 Nissan Murano:





FIFTH AMENDED CLASS ACTION COMPLAINT



**Lisa Sullivan**

139.    In May, 2012 Ms. Sullivan purchased a new 2012 Nissan Murano from Lokay Nissan in Clearwater, Florida.

140.    On August 12, 2015 at approximately 10:30 a.m. her sunroof shattered while at the intersection of Keystone Road and East Lake Road. Ms. Sullivan had been driving for forty-five minutes and the weather was clear and 90 degrees. There was traffic around her but there was no debris or objects that had fallen from any vehicle near hers.

141.    When the sunroof shattered Plaintiff thought that she heard a gunshot. She pulled over at the next exit and noticed that the sunroof had shattered.

142.    Plaintiff took the vehicle to Lokay Nissan in Clearwater, Florida to repair the sunroof. The dealership refuse to cover the cost of repairs.

143.    Plaintiff made an insurance claim and her insurance company paid for the repairs to her vehicle. She had to pay a deductible for the repair that took approximately three weeks.

FIFTH AMENDED CLASS ACTION COMPLAINT

144.   Had Nissan adequately disclosed the panoramic sunroof defect, Ms. Sullivan would not have purchased the vehicle or would have paid substantially less for it. In addition, Ms. Sullivan would not have suffered the economic damages sustained. She did not receive the benefit of her bargain.

145.   Below are photographs of Ms. Sullivan's 2012 Nissan Murano's exploded sunroof:



FIFTH AMENDED CLASS ACTION COMPLAINT



**April Ahrens**

146.    In April, 20015 April Ahrens purchased a new 2015 Nissan Rogue from Auffenberg Nissan in O'Fallon, Illinois.

147.    Prior to purchasing her Class Vehicle, Ms. Ahrens was engaged in conversation by Auffenberg Nissan sales staff who emphasized the vehicle's various features and optional upgrades in an attempt to sell her the vehicle.  Although Nissan should have disclosed the existence of the Defect prior to Ms. Ahrens' purchase of the vehicle as this fact would have been material to Ms. Ahrens' purchasing decision, Auffenberg Nissan staff failed to disclose the existence of the Defect.

148.    Additionally, Ms. Ahrens reviewed advertising materials shown to her by or on behalf of Defendant pertaining to her Class Vehicle prior to purchase.  These advertising materials made no mention of the Defect.

FIFTH AMENDED CLASS ACTION COMPLAINT

149.   On January 21, 2017 at approximately 2:00 p.m. her sunroof shattered while driving on the interstate. Plaintiff had been driving for five hours and the weather was clear and 60 degrees.

150.   When the sunroof shattered Plaintiff thought that she heard a gunshot. She pulled over at the next exit and noticed that the sunroof had shattered.

151.   Plaintiff took the vehicle to Watermark Nissan in Marion, Illinois to repair the sunroof. The dealership refuse to cover the cost of repairs, and replaced the shattered panoramic sunroof with an identical and equally defective one.

152.   Plaintiff made an insurance claim and her insurance company paid for the repairs to her vehicle.

153.   Had Nissan adequately disclosed the panoramic sunroof defect, Ms. Ahrens would not have purchased the vehicle or would have paid substantially less for it. In addition, Ms. Ahrens would not have suffered the economic damages sustained. She did not receive the benefit of her bargain.

154.   Below are photographs of Ms. Ahren's 2012 Nissan Rogue's exploded sunroof:



FIFTH AMENDED CLASS ACTION COMPLAINT



## VI.   CLASS ACTION ALLEGATIONS

155.   Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this case as a class action on behalf of themselves and all others similarly situated as members of the following proposed Nationwide and state classes of California, New Jersey, and New York (collectively, the "Classes"), on their federal and respective state claims as purchasers and lessees of "Class Vehicles." Class Vehicles include all models below that are equipped with factory-installed panoramic sunroofs:

       a.    model years 2008-present Maxima, Rogue, Sentra, Pathfinder, and Altima;

       b.    model years 2009-present Murano;

       c.    2011-present Juke; and

       d.    Model years 2008 – present Infiniti.

**California Class:**

156.   During the fullest period allowed by law, all persons and entities residing in California who purchased or leased a Class Vehicle in California.

FIFTH AMENDED CLASS ACTION COMPLAINT

**New York Class:**

157.     During the fullest period allowed by law, all persons and entities residing in New York who purchased or leased a Class Vehicle in New York.

**Colorado Class**

158.     During the fullest period allowed by law, all persons and entities residing in Colorado who purchased or leased a Class Vehicle in Colorado.

**Florida Class**

159.     During the fullest period allowed by law, all persons and entities residing in Florida who purchased or leased a Class Vehicle in Florida.

**Illinois Class**

160.     During the fullest period allowed by law, all persons and entities residing in Illinois who purchased or leased a Class Vehicle in Illinois.

161.     Excluded from the proposed class is Nissan; any affiliate, parent, or subsidiary of Nissan; any entity in which Nissan has a controlling interest; any officer, director, or employee of Nissan; any successor or assign of Nissan; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse; and members of the judge's staff; and anyone who purchased a Class Vehicle for the purpose of resale.

162.     Members of the proposed classes are readily ascertainable because the class definitions are based upon objective criteria.

163.     **Numerosity**. Nissan sold many thousands of Class Vehicles, including a substantial number in California. Members of the proposed Classes likely number in the thousands and are thus too numerous to practically join in a single action. Class Members may be notified of the pendency of this action by mail, supplemented by public notice (if deemed necessary or appropriate by the Court).

164. **Commonality and Predominance**. Common questions of law and fact exist as to all proposed members of the Classes and predominate over questions affecting only individual Class Members. These common questions include:

(a)     Whether the panoramic sunroofs in the Class Vehicles are designed defectively such that they have a propensity to spontaneously shatter;

(b)     Whether Nissan knew or should have known that its panoramic sunroofs are defectively designed such that they have a propensity to spontaneously shatter, and if so, when it discovered this;

(c)     Whether the knowledge of this propensity to shatter would be important to a reasonable person, for example, because, it poses an unreasonable safety hazard;

(d)     Whether Nissan failed to disclose to or concealed from potential consumers: the existence of the sunroofs' propensity to spontaneously shatter;

(e)     Whether Nissan breached its express warranty obligations;

(f)     Whether Nissan has a pattern and practice of attributing damages claimed by Plaintiffs and Class Members to causes other than the complained-of defect;

(g)     Whether Nissan should be required to notify Class Members about the panoramic sunroofs' propensity to spontaneously shatter;

(h)     Whether Nissan should be required to cease its practice of providing the same or substantially similar replacement sunroofs as the defective sunroofs;

(i)     Whether the Court may enter an injunction requiring Nissan to cease its practice of replacing shattered panoramic sunroofs with identically defective replacement sunroofs;

(j)     Whether this Court should grant other declaratory relief requested herein;

(j)     Whether Nissan had a duty to disclose to Plaintiffs and Class Members the

63

true character, quality, and nature of the Class Vehicles and the sunroof defect;

(k) Whether Nissan's conduct, as alleged herein, violates the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*;

(l) Whether Nissan's conduct, as alleged herein, violates the consumer protection laws of California;

(m) Whether Nissan's conduct, as alleged herein, violates the consumer protection laws of New York;

(n) Whether Nissan's conduct, as alleged herein, violates the consumer protection laws of Colorado;

(o) Whether Nissan's conduct, as alleged herein, violates the consumer protection laws of Florida;

(p) Whether Nissan's conduct, as alleged herein, violates the consumer protection laws of Illinois; and

(q) Whether Nissan's conduct, as alleged herein, entitles Plaintiffs and Class Members to restitution under federal law and the laws of their respective states.

165. **Typicality**. Plaintiffs' claims are typical of the claims of the proposed classes. Plaintiffs and the members of the proposed Classes all purchased or leased Class Vehicles with panoramic sunroofs that are inherently susceptible to spontaneous shattering, giving rise to substantially the same claims. As illustrated by Class Member complaints, some of which have been excerpted herein, each vehicle model included in the proposed class definitions suffers from the same or substantially similar defect.

166. **Adequacy**. Plaintiffs are adequate representatives of the proposed Classes because their interests do not conflict with the interests of the members of the Classes they seek to represent.

FIFTH AMENDED CLASS ACTION COMPLAINT

Plaintiffs have retained counsel who are competent and experienced in complex class action litigation, and will prosecute vigorously on Class Members' behalf.

167. **Superiority**. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class Member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Nissan economically feasible. Even if Class Members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the defective panoramic sunroofs, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

168. In the alternative, the proposed Classes may be certified because:

    (a)    the prosecution of separate actions by the individual members of the proposed Classes would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Nissan;

    (b)    the prosecution of individual actions could result in adjudications which, as a practical matter, would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests; and

    (c)    Nissan has acted or refused to act on grounds generally applicable to the proposed Classes, thereby making appropriate final and injunctive relief with respect to members of the proposed Classes as a whole.

FIFTH AMENDED CLASS ACTION COMPLAINT

## VII.   TOLLING OF THE STATUTES OF LIMITATIONS

169.   **Discovery Rule**. Plaintiffs' respective statutes of limitations accrued upon discovery that the panoramic sunroof installed in their Class Vehicle was defective in that this type of sunroof is manufactured in a way that causes spontaneous shattering, which, in turn, results in costly repairs. While Nissan knew and concealed the fact that the panoramic sunroofs installed in the Class Vehicles have a defect that causes spontaneous shattering, Plaintiffs and Class Members could not and did not discover this fact through reasonable diligent investigation until after they experienced such spontaneous shattering first-hand. Even then, Nissan claims its panoramic sunroofs shatter only as a result of impact from objects on the roadway and concealed and conceals from Plaintiffs and Class Members that the sunroofs are defective. Plaintiffs and Class Members who experienced exploding sunroofs also could not know that the new sunroofs that were installed in their Class Vehicles presented the same danger of spontaneously shattering.

170.   **Active Concealment Tolling**. Any statutes of limitations are tolled by Nissan's knowing and active concealment of the fact that the panoramic sunroofs installed in the Class Vehicles suffered from an inherent defect. Nissan kept Plaintiffs and Class Members ignorant of vital information essential to the pursuit of their claims, without any fault or lack of diligence on the part of Plaintiffs or the proposed Classes. The details of Nissan's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class Members. Plaintiffs and Class Members could not have reasonably discovered the fact that the panoramic sunroofs installed in their Class Vehicles were defective.

171.   **Estoppel**. Nissan was and is under a continuous duty to disclose to Plaintiffs and Class Members the true character, quality, and nature of the panoramic sunroofs installed in the Class Vehicles. At all relevant times, and continuing to this day, Nissan knowingly, affirmatively,

FIFTH AMENDED CLASS ACTION COMPLAINT

and actively misrepresented and concealed the true character, quality, and nature of the panoramic sunroofs installed in the Class Vehicles. The details of Nissan's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class Members. Plaintiffs reasonably relied upon Nissan's knowing, affirmative, and/or active concealment and affirmative misrepresentations. Based on the foregoing, Nissan is estopped from relying on any statutes of limitation in defense of this action.

172. **Equitable Tolling**. Nissan took active steps to conceal the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and/or leased Class Vehicles with defective panoramic sunroofs. The details of Nissan's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class Members. When Plaintiffs learned about this material information, they exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims. Nissan fraudulently concealed its above-described wrongful acts. Should such tolling be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

## VIII.    CLAIMS FOR RELIEF

### COUNT 1
Violation of the Magnuson-Moss Warranty Act ("MMWA"),
15 U.S.C. § 2301, *et seq.*
**(Plaintiffs individually, and on behalf of the representative State classes)**

173. Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

174.   The Magnuson-Moss Warranty Act, 15 U.S.C. §2301(d)(1), provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

175.   Plaintiffs and Class Members are "consumers" within the meaning of 15 U.S.C. § 2301(3).

176.   Nissan is a "supplier" and "warrantor" within the meanings of 15 U.S.C. §§ 2301(4)-(5).

177.   Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

178.   Nissan provided a written warranty for each Class Vehicle. Nissan's express warranties are written warranties within the meaning of the MMWA, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranties are covered under 15 U.S.C. §2301(7).

179.   Nissan breached the warranties by:

   a.   Extending a 36 month/36,000 mile New Vehicle Limited Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee;

   b.   Selling and leasing Class Vehicles with panoramic sunroofs that were defective in material and workmanship, requiring repair or replacement within the warranty periods; and

   c.   Refusing to honor the express warranties by not repairing or replacing the panoramic sunroofs free of charge.

180.   Plaintiffs and Class Members own Class Vehicles that experienced spontaneous panoramic sunroof shattering during the period of warranty coverage.

181.   Despite Nissan's warranty, Nissan has not repaired or replaced these shattered panoramic sunroofs at no charge to the consumers. In fact, Nissan has denied claims made under its warranty(ies) by consumers whose Class Vehicle panoramic sunroof shattered.

182.   Nissan's breach of express warranty(ies) has deprived Plaintiffs and Class Members of the benefit of the bargain.

183.   Plaintiffs and Class Members have had sufficient dealings with either Nissan or its franchisees, representatives, and agents to establish any required privity of contract. Nonetheless, privity is not required here because Plaintiffs and each of the other Class Members are intended third-party beneficiaries of contracts between Nissan and its dealers and specifically of Nissan's express and implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements with the Class Vehicles. The warranty agreements were designed for and intended to benefit the consumers only.

184.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000.00 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

185.   Nissan has been afforded reasonable opportunity to cure its breaches of warranty, including when every Plaintiff brought his or her vehicle in for repair of the defective panoramic sunroof.

186.   Pursuant to the provisions of 15 U.S.C. § 2310(e), Plaintiff and Class Members have all sufficiently notified Nissan, thus providing Nissan with reasonable opportunity to correct its business practices and cure its breach of warranties under the MMWA. Plaintiffs have already sent MMWA notice letters to Nissan or are sending concurrently with the filing of the instant complaint.

187.   Nissan has not cured the breach of warranty described above and continues to deny warranty coverage when Class Members present their vehicles for repair after their Class Vehicles' panoramic sunroofs spontaneously shattered.

188.    Resorting to any informal dispute settlement procedure or affording Nissan another opportunity to cure its breach of warranty is unnecessary and futile. Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as Nissan has repeatedly failed to disclose the panoramic sunroof defect or provide repairs at no cost and, therefore, has indicated no desire to participate in such a process at this time. Any requirement under the MMWA or otherwise that Plaintiffs submit to any informal dispute settlement procedure or otherwise afford Nissan a reasonable opportunity to cure its breach of warranty(ies) is excused and/or has been satisfied.

189.    As a direct and proximate result of Nissan's warranty(ies) breach, Plaintiffs and Class Members sustained damages and other losses to be determined at trial. Nissan's conduct damaged Plaintiffs and Class Members, who are entitled to recover damages, specific performance, costs, attorneys' fees, and other appropriate relief.

## COUNT 2

### Unjust Enrichment
### (Plaintiffs individually, and on behalf of the representative State classes)

190.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

191.    As described above, Nissan sold Class Vehicles to Plaintiff and Class Members even though the panoramic sunroofs installed in those Class Vehicles were defective and posed a safety hazard. Nissan failed to disclose its knowledge of the sunroof defect and the defect's attendant risks-- at the point of sale or otherwise.

192.    Nissan unjustly charged and charges Plaintiff and Class Members for repairs and/or replacement of the defective panoramic sunroofs without disclosing that the defect is widespread and that the repairs do not address the root cause of the defect.

193.  As a result of its acts and omissions related to the defective sunroofs, Nissan obtained

monies that rightfully belong to Plaintiff and Class Members.

194.  Nissan appreciated, accepted, and retained the non-gratuitous benefits conferred by

Plaintiffs and Class Members who, without knowledge of the defect, paid a higher price for

their vehicles than those vehicles were worth. Nissan also received monies for vehicles that

Plaintiffs and Class Members would not have otherwise purchased had they been aware of the

defect.

195.  It would be inequitable and unjust for Nissan to retain these wrongfully obtained profits.

196.  Nissan's retention of these wrongfully-acquired profits would violate fundamental

principles of justice, equity, and good conscience.

197.  Plaintiffs and Class Members pursue equitable unjust enrichment relief because they lack

an adequate remedy at law.

## **COUNT 3**

**Violation of the Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(Plaintiffs Sherida Johnson and Chad Loury individually,**
**and on behalf of the California Class)**

198.  Plaintiffs Sherida Johnson and Char Loury re-allege and incorporate by reference the

preceding paragraphs as if fully set forth herein.

199.  Nissan has violated and continues to violate California's UCL, Cal. Bus. & Prof. Code §

17200, et seq., which prohibits unlawful, unfair, and fraudulent business acts or practices.

200.  Nissan's acts and practices, alleged in this complaint, constitute unlawful, unfair, and

fraudulent business practices, in violation of the UCL. In particular, Nissan sold Class Vehicles

to Plaintiff Johnson and Class Members even though the panoramic sunroofs installed in those

FIFTH AMENDED CLASS ACTION COMPLAINT

Class Vehicles were defective, posing a safety hazard. Further, Nissan failed to disclose its knowledge of the defect and the attendant risks of the defect at the point of sale or otherwise.

201.    Nissan's business acts and practices are unlawful in that they violate the Consumers Legal Remedies Act, Cal. Civil Code § 1750, et seq. for the reasons set forth below.

202.    Nissan's acts and practices also constitute fraudulent practices in that they are likely to deceive a reasonable consumer. As described above, Nissan knowingly concealed, continues to conceal, failed, and continues to fail to disclose at the point of sale and otherwise that Class Vehicles' panoramic sunroofs have a propensity to spontaneously shatter, endangering the personal safety of drivers. Had Nissan disclosed that information, Plaintiff and Class Members would not have purchased Class Vehicles or would have paid significantly less for them. Furthermore, Nissan charges for repairs of Plaintiffs' and Class Members' shattered panoramic sunroofs without disclosing that the problem is widespread and that the repairs do not address the root cause(s) of the defect.

203.    Nissan's conduct also constitutes unfair business practices for at least the following reasons:

    (a)    The gravity of potential harm to Plaintiffs and Class Members as a result of Nissan's acts and practices far outweighs any legitimate utility of Nissan's conduct;

    (b)    Nissan's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and Class Members; and

    (c)    Nissan's conduct undermines or violates stated policies underlying the UCL—to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace.

204.    As a direct and proximate result of Nissan's business practices described herein, Plaintiffs and Class Members suffered a foreseeable injury-in-fact and lost money or property because

they purchased and paid for Class Vehicles that, had they known of the defect, they would not have purchased or, in the alternative, they only would have purchased for a lower amount.

205.    Plaintiffs and Class Members are entitled to equitable relief, including an order directing Nissan to disclose the existence of the defect inherent in its panoramic sunroofs and to provide restitution and disgorgement of all profits paid to Nissan as a result of its unfair, deceptive, and fraudulent practices, reasonable attorneys' fees and costs, and a permanent injunction enjoining such practices.

206.    Plaintiffs and Class Members pursue injunctive relief under the UCL because they lack an adequate remedy at law.

### COUNT 4

**Violation of the Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code § 1750, *et seq.***
**(Plaintiffs Sherida Johnson and Chad Loury individually,**
**and on behalf of the California Class)**

207.    Plaintiffs Sherida Johnson and Chad Loury re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

208.    Nissan is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770, and has provided "goods" within the meaning of Cal. Civ. Code §§ 1761 (b) and 1770.

209.    Plaintiffs and members of the proposed California Class are "consumers" within the meaning of Cal. Civ. Code §§ 1761(d) and 1770 and have engaged in a "transaction" within the meaning of Cal. Civ. Code §§ 1761 and 1770.

210.    Nissan's acts and practices, which were intended to result and which did result in the sale of Class Vehicles with defective panoramic sunroofs, violate the CLRA for at least the following reasons:

(a) Nissan represents that its vehicles with panoramic sunroofs had characteristics, values, or benefits which they do not have;

(b) Nissan advertises its goods with intent not to sell them as advertised;

(c) Nissan represents that its vehicles and panoramic sunroofs are of a particular standard, quality, or grade when they are not;

(d) Nissan represents that a transaction conferred or involved rights, remedies, or obligations which they do not; and

(e) Nissan represents that its goods have been supplied in accordance with a previous representation when they have not.

211. As described herein, Nissan sold vehicles to Plaintiffs and Class Members even though the panoramic sunroofs installed in those Class Vehicles are defective and pose a safety hazard, and Nissan failed to disclose its knowledge of its panoramic sunroof defect and further failed to disclose the attendant risks associated with that defect at the point of sale or otherwise. Nissan intended that Plaintiffs and Class Members rely on this omission in deciding to purchase their vehicles. Plaintiffs and Class Members did in fact rely on said omission.

212. Had Nissan adequately disclosed the defect inherent in its panoramic sunroofs, Plaintiffs and Class Members would not have purchased their Class Vehicles or, in the alternative, they would have only been willing to pay less for their Class Vehicles. Furthermore, Nissan charged Plaintiffs and Class Members (and continues to charge) for the repair and replacement of defective panoramic sunroofs without disclosing that this spontaneous shattering problem is widespread and that the repairs do not address the root cause(s) of the defect. Nor does Nissan disclose that the replacement part used in repairs is substantially identical to the original factory-installed panoramic sunroof, such that it may also spontaneously explode.

213.    On August 10, 2021, Nissan received a letter that complied with Section 1782(d) of the CLRA, which was prepared by Plaintiffs' counsel on behalf of the California Class. The letter gave Nissan notice of the allegations in this complaint. Nissan has failed to remedy the issues that gave rise to the allegations in this complaint—it has continued to sell the Class Vehicles without disclosing the panoramic sunroof defect or the attendant risks associated with that defect. As a result, Plaintiffs' request monetary damages, restitution, injunctive relief, and all other applicable relief under the CLRA, to provide compensation to Plaintiffs and class members, and to stop Nissan from continuing to engage in the aforementioned unfair and/or deceptive acts and omissions.

214.    Plaintiffs and Class Members pursue injunctive relief under the CLRA because they lack an adequate remedy at law.

215.    CLRA venue affidavits on behalf of Plaintiffs Sherida Johnson and Chad Loury are annexed hereto as Exhibits A and B respectively.

## COUNT 5

### Violations of New York Gen. Bus. Law § 349 ("GBL § 349")
### (Deceptive Acts and Practices)
### (Plaintiff Subrina Seenarain individually, and on behalf of the New York Class)

216.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

217.    Plaintiff, the New York Class Members, and Nissan are "persons" under GBL § 349.

218.    Nissan's actions as set forth herein occurred in the conduct of trade or commerce under GBL § 349.

219.    GBL § 349 makes unlawful "[d]eceptive acts for practices in the conduct of any business, trade or commerce."  Nissan's conduct, as set forth herein, constitutes deceptive acts or practices under this section.

220.   Nissan has long known that its panoramic sunroofs have a propensity to shatter spontaneously, posing a serious safety risk, which risk Nissan concealed and failed to disclose to Plaintiff and the proposed Class Members.

221.   Nissan has further engaged in deceptive acts or practices by representing that defects in the Class Vehicles would be covered under its warranty program, while systematically denying coverage with respect to the defective panoramic sunroofs.

222.   Nissan's deceptive acts or practices have repeatedly occurred in its trade or business and were and are capable of deceiving a substantial portion of the public. The acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

223.   Nissan's unfair acts and practices affect the public interest. The unfair acts and practices were committed in the general course of Nissan's business and have already injured thousands of individuals nationwide. There is a likelihood that Nissan's practices will injure other members of the public.

224.   As a direct and proximate result of Nissan's unfair acts or practices, Plaintiff and New York Class Members suffered injury-in-fact and pecuniary loss. Nissan's unfair or deceptive acts or practices resulted in Plaintiff and the New York Class Members: (i) expending out-of-pocket monies for repairs of the Class Vehicles' panoramic sunroofs, replacement of the Class Vehicles' panoramic sunroofs, and loss of use of the Class Vehicles while panoramic sunroofs were being repaired and/or replaced; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the Class Vehicles as warranted and the Class Vehicles containing the defect; and (iii) the diminution of resale value of the Class Vehicles resulting from the defect.

225.   As a result of the foregoing willful, knowing, and wrongful conduct of Nissan, Plaintiff and the New York Class have been damaged in an amount to proven at trial, and seek all just

and proper remedies, including but not limited to actual damages or $50, whichever is greater, treble damages up to $1,000.00, punitive damages to the extent available under the law, reasonable attorneys' fees and costs, an order enjoining Nissan's deceptive and unfair conduct, and all other just and appropriate relief under GBL § 349.

226.   Plaintiff and the New York Class are also entitled to injunctive relief in the form of an order prohibiting Nissan from engaging in the alleged misconduct and such othe7r equitable relief as the Court deems appropriate, including, but not limited to, disgorgement, for the benefit of the Class Members, of all or part of the ill-gotten profits Nissan received from the failure to disclose defects with Class Vehicle panoramic sunroofs.

## **COUNT 6**

**Breach of Express Warranty,**
**New York Uniform Commercial Code ("N.Y. UCC") §§ 2-313 and 2A-210**
**(Plaintiff Subrina Seenarain individually, and on behalf of the New York Class)**

227.   Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

228.   Nissan is and was at all relevant times a "merchant" with respect to motor vehicles under N.Y. UCC § 2A-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

229.   With respect to leases, Nissan is and was at all times relevant times a "lessor" of motor vehicles under N.Y. UCC § 2A-103(1)(p).

230.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC §§ 2-105(1) and 2A-103(1)(h). In connection with the purchase or lease of its new vehicles, Nissan provided an express New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first.

231.    This warranty covers any repairs needed to correct defects in materials or workmanship of all parts and components of each new Nissan vehicle supplied by Nissan subject to the exclusions listed under the heading "WHAT IS NOT COVERED" or, if the part is covered by one of the separate coverages described in the following sections of this warranty, that specific coverage applies instead of the basic coverage.

232.    Nissan provided all purchasers and lessees of the Class Vehicles with the express warranties described herein, which became part of the basis of the bargain. Accordingly, Nissan's warranties are express warranties under New York law.

233.    The parts affected by the defect, including the panoramic sunroofs, and the brackets and assemblies to which the sunroofs were attached, were manufactured and distributed by Nissan in the Class Vehicles and are covered by the warranties Nissan provided to all purchasers and lessors of Class Vehicles.

234.    Nissan breached these warranties by selling and leasing Class Vehicles with the panoramic sunroof defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties with free repairs or replacements during the applicable warranty periods.

235.    Nissan further breached these warranties by not correcting the defect. Although Nissan warranted that it would correct defects in materials and workmanship in the Class Vehicles, Nissan instead replaced shattered sunroofs in the Class Vehicles with identical defective sunroofs and thus has not corrected the defect. Nissan has failed and refused to conform the panoramic sunroofs in the Class Vehicles to the express warranty. Nissan's conduct has voided any attempt to disclaim liability for its actions.

236.    Plaintiff and New York Class Members notified Nissan of the breach within a reasonable time or else they were not required to do so, because affording Nissan a reasonable opportunity

to cure its breach of written warranty would have been futile. Nissan also knew of the defect and chose to conceal it and to fail to comply with its warranty obligations.

237.    Nissan's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under these circumstances. Nissan's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

238.    Nissan's attempt to limit its express warranty in a manner that would result in replacing its defectively designed panoramic sunroofs with identical defective sunroofs causes the warranty to fail its essential purpose and renders the warranty null and void.

239.    The time limits contained in Nissan's warranty period were and are also unconscionable and inadequate to protect Plaintiff and New York Class Members. Among other things, Plaintiff and New York Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Nissan. A gross disparity in bargaining power exists between Nissan and the New York Class Members, and Nissan knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before the end of the vehicles' useful lives.

240.    Plaintiff and New York Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of those obligations as a result of Nissan's conduct described herein.

241.    As a direct and proximate cause of Nissan's breach, Plaintiff and the other New York Class Members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value. Plaintiffs and the New York Class Members have also incurred and will

continue to incur costs for repair and replacement of defective panoramic sunroofs and damage resulting from the spontaneous shattering of such sunroofs.

242.    Accordingly, recovery by Plaintiff and the other New York Class Members is not restricted to the limited warranty promising to repair and/or correct a manufacturing defect, and Plaintiff, individually and on behalf of the other New York Class Members, seek all remedies as allowed by law.

243.    Plaintiff and New York Class Members are entitled to legal and equitable relief against Nissan, including damages, consequential damages, specific performance, attorneys' fees, costs of suit, and such further relief as the Court may deem proper. Plaintiff and the other New York Class Members have been damaged in an amount to be determined at trial.

### COUNT 7

**Breach of the Implied Warranty of Merchantability,**
**New York Uniform Commercial Code §§ 2-314 and 2A-212**
**(Plaintiff Subrina Seenarain individually, and on behalf of the New York Class)**

244.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

245.    Nissan is and was at all relevant times a "merchant" with respect to motor vehicles under N.Y. UCC § 2-104(1) and "seller" of motor vehicles under § 2A-103(d).

246.    With respect to leases, Nissan is and was at all times relevant a "lessor" of motor vehicles under N.Y. UCC § 2A-103(1)(p).

247.    The Class Vehicles are and were at all times "goods" within the meaning of N.Y. UCC §§ 2-105(1) and 2A-103(1)(h).

248.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.Y. UCC §§ 2-314 and 2A-212.

249.  These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles all were fitted with defective panoramic sunroofs having the propensity to spontaneously explode.

250.  Nissan was and is in actual or constructive privity with Plaintiff and New York Class Members.

(a)  Plaintiff and the New York Class Members had and continue to have sufficient direct dealings with Nissan and/or its authorized dealers, franchisees, representatives, and agents to establish any required privity of contract. Nissan's authorized dealers, franchisees, representatives, and agents were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles. The warranty agreements were designed for and intended to benefit only the ultimate purchasers and lessees of the Class Vehicles, i.e., Plaintiffs and the New York Class Members.

(b)  Privity is not required to assert this claim because Plaintiff and the New York Class Members are intended third-party beneficiaries of contracts between Nissan and its dealers, franchisees, representatives, and agents.

(c)  By extending express written warranties to end-user purchasers and lessees, Nissan brought itself into privity with Plaintiffs and New York Class Members.

251.  At all relevant times, New York law imposed upon Nissan a duty that the sunroofs installed in the Class Vehicles were fit for the ordinary purposes for which panoramic sunroofs are used and that they pass without objection in the trade under the contract description.

252.    Nissan has not validly disclaimed, excluded, or modified the implied warranties or duties described above, and any attempted disclaimer or exclusion of the implied warranties was and is ineffectual.

253.    The sunroofs installed in the Class Vehicles were defective at the time they left Nissan's possession. Nissan knew of this defect at the time the purchase and lease transactions occurred. Thus, the sunroofs installed in the Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition or quality because they are not fit for their ordinary intended purpose and they do not pass without objection in the trade under the contract description.

254.    Nissan failed to inform Plaintiff and New York Class Members of the defective condition of the panoramic sunroofs. The failure to warn Plaintiff and New York Class Members of this defective condition constitutes a further breach by Nissan of the implied warranties of merchantability.

255.    Plaintiff and New York Class Members used the sunroofs installed in the Class Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Nissan or by operation of law in light of Nissan's unconscionable conduct.

256.    Nissan had actual knowledge of, and received timely notice regarding, the defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

257.    In addition, Nissan received, on information and belief, numerous consumer complaints and other notices from customers advising of the defect associated with the sunroofs installed in the Class Vehicles.

258.    By virtue of the conduct described herein, Nissan breached the implied warranty of merchantability.

259.    As a direct and proximate result of Nissan's breach of warranties, Plaintiff and New York Class Members suffered economic damage, including loss attributable to the diminished value of their Class Vehicles, loss of use of their Class Vehicles and other tangible property, as well as the monies spent and to be spent to repair and/or replace their sunroofs.

260.    Plaintiff and New York Class Members are entitled to legal and equitable relief against Nissan, including damages, consequential damages, specific performance, attorney fees, costs of suit, and such further relief as the Court may deem proper.

261.    As a direct and proximate result of Nissan's breach of the implied warranty of merchantability, Plaintiff and New York Class Members have been damaged in amount to be proven at trial.

### **COUNT 8**

**Violations of New York Gen. Bus. Law § 350 ("GBL § 350")**
**(False Advertising)**
**(Plaintiff Subrina Seenarain individually, and on behalf of the New York Class)**

262.    Plaintiff incorporates by reference each preceding paragraphs as if fully set forth herein.

263.    Nissan was engaged in the "conduct of business, trade or commerce." GBL § 350. False advertising includes "advertising, including labeling, of a commodity. . . if such advertising fails to reveal facts material in light of . . . representations [made] with respect to the commodity. . ." GBL § 350-a.

264.    Nissan caused to be made or disseminated through New York, via advertising, marketing, and other publications, statements, and omissions that were untrue or misleading to Plaintiff and New York Class Members.

265.    Below is a current advertisement for a Nissan Maxima panoramic sunroof:

**Dual Panel Panoramic Moonroof**

*The panoramic moonroof is simply massive. So big that it reaches over the back seats, allowing co-pilots and navigators alike to enjoy the feeling of an open atmosphere and an unfettered view of the sky above.*

(http://www.nissanusa.com/buildyournissan/vehicle-images/2016/MAX/XGC60NIC051C0/3a49a64abb81897202d2f791cf4ed819/Maxima/SL/Dual-Panel-Panoramic-Moonroof/Interior; *website accessed on September 20, 2016*.)

266.   Nissan made numerous material misrepresentations and omissions of fact with intent to mislead and deceive concerning the Class Vehicles, particularly with regard to the sustainability/fitness of the panoramic sunroofs. Specifically, Nissan intentionally concealed and suppressed material facts concerning the quality of the Class Vehicles in order to intentionally and grossly defraud and mislead Plaintiff and New York Class Members concerning the safety of the panoramic sunroof feature.

267.   The misrepresentations and omissions set forth above were material and likely to deceive a reasonable consumer. The inherent defect was undetectable to the ordinary consumer.

FIFTH AMENDED CLASS ACTION COMPLAINT

268.   Nissan intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and New York Class Members.

269.   Nissan's false advertising was likely to and did, in fact, deceive reasonable consumers including Plaintiff and New York Class Members about the true characteristics of the panoramic sunroof.

270.   Nissan's violations of GBL § 350 present a continuing risk to Plaintiff and to the general public. Nissan's deceptive acts and practices affect the public interest.

271.   The Class Vehicles do not perform as advertised and make them far less valuable than advertised.

272.   Plaintiff and New York Class Members who purchased Class Vehicles either would not have purchased those vehicles at all or else paid less for the Class Vehicles but for Nissan's false advertising in violation of  GBL § 350. New York Class Members who leased Class Vehicles either would not have leased them at all or would have leased them at a lower cost but for Nissan's false advertising in violation of  GBL § 350.

273.   Plaintiff and New York Class have suffered injury-in-fact and/or actual damages and ascertainable loss as a direct and proximate result of the Nissan's false advertising in violation of  GBL § 350, including but not limited to purchasing or leasing a diminished value or complete lost value for the Class Vehicles purchased or leased.

274.   Plaintiff and New York Class have suffered lost or diminished use, enjoyment, and utility of their Class Vehicles along with suffering annoyance, aggravation, and inconvenience resulting from Nissan's violations of  GBL § 350.

275.   Plaintiff and New York Class Members seek monetary relief against Nissan measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500.00 each for New York Class Members. Because Nissan's

conduct was committed willingly and knowingly, Plaintiff and New York Class Members are entitled to recover three times actual damages, up to 10,000.00.

276.    Plaintiff and New York Class also seek an order enjoining Nissan's false advertising and further seeks attorneys' fees and any other just and proper relief under GBL § 350.

## COUNT 9

Violations of the Colorado Consumer Protection Act
(Col. Rev. Stat. § 6-1-101, *et seq.)*
**(Plaintiff Linda Spry individually, and on behalf of the Colorado Class)**

277.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

278.    Plaintiff Linda Spry brings this action on behalf of herself and the Colorado Class.

279.    Defendant is a "person[s]" under § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), Col. Rev. Stat. § 6-1-101, *et seq.*

280.    Plaintiff and Colorado Class members are "consumers" for purposes of Col. Rev. Stat § 6-1-113(1)(a) who purchased or leased one or more Class Vehicles.

281.    The Colorado CPA prohibits deceptive trade practices in the course of a person's business. Nissan engaged in deceptive trade practices prohibited by the Colorado CPA, including: (1) knowingly making a false representation as to the characteristics, uses and benefits of the Class Vehicles that had the capacity or tendency to deceive Colorado Class Members; (2) representing that the Class Vehicles are of a particular standard, quality and grade even though Nissan knew or should have known they are not; (3) advertising the Class Vehicles with the intent not to sell them as advertised; and (4) failing to disclose material information concerning the Class Vehicles that was known to Nissan at the time of advertisement or sale with the intent to induce Colorado Class members to purchase, lease or retain the Class Vehicles.

282.    In the course of their business, Nisan concealed and suppressed material facts concerning the Class Vehicles. Nissan made numerous material misrepresentations and omissions of fact with intent to mislead and deceive concerning the Class Vehicles, particularly with regard to the sustainability/fitness of the panoramic sunroofs. Specifically, Nissan intentionally concealed and suppressed material facts concerning the quality of the Class Vehicles in order to intentionally and grossly defraud and mislead Plaintiff and Colorado Class Members concerning the safety of the panoramic sunroof feature.  Nissan should have disclosed the Defect to consumers prior to purchasing decisions being made as the existence of the Defect would have influenced the consumer's purchasing decision.

283.    Defendants thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Class Vehicles. Nissan's actions as set forth above occurred in the conduct of trade or commerce. Nissan intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the Colorado Class. Nissan knew or should have known that its conduct violated the Colorado CPA.

284.    Nissan owed Plaintiff a duty to disclose public health and safety risks and the devaluing of safety at Nissan, because Nissan made incomplete representations about the safety of the Class Vehicles, while purposefully withholding material facts from Plaintiff and the Colorado Class that contradicted these representations.

285.    Defendants concealed the defective panoramic sunroofs in the Class Vehicles resulting in a raft of negative publicity once the defects finally began to be disclosed. The value of the Class Vehicles has therefore greatly diminished. In light of the stigma attached to those

vehicles by Nissan's conduct, the Class Vehicles are now worth significantly less than they otherwise would be worth.

286.    Nissan's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true quality of the Nissan brand, and the devaluing of the integrity at Nissan, and the true value of the Class Vehicles.

287.    Plaintiff and the Colorado Class suffered ascertainable loss and actual damages as a direct and proximate result of Nissan' misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Colorado Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or – if the Vehicles' true nature had been disclosed and mitigated - would have paid significantly less for them. Plaintiff and the Colorado Class also suffered diminished value of their vehicles, as well as lost or diminished use.

288.    Nissan had an ongoing duty to all Nissan customers to refrain from unfair and deceptive practices under the Colorado CPA. All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Nissan's deceptive and unfair acts and practices made in the course of Nissan's business.

289.    Plaintiff and Colorado Class members risk irreparable injury as a result of Nissan's acts and omissions in violation of the Colorado CPA, and these violations present a continuing risk to Plaintiff and Class members as well as to the general public. Nissan's unlawful acts and practices complained of herein affect the public interest.

290.    As a direct and proximate result of Nissan's Defendants' violations of the Colorado CPA, Plaintiff and Colorado Class have suffered injury-in-fact and/or actual damage.

291.    Pursuant to Colo. Rev. Sat. § 6-1-113, Plaintiff, individually and on behalf of the Colorado Class, seeks monetary relief against Nissan measured as the greater of (a) actual damages in

an amount to be determined at trial and discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for each Plaintiff and each Colorado Class member.

292.    Plaintiff also seeks an order enjoining Nissan's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

### COUNT 10

**Breach of The Implied Warranty of Merchantability**
**(Col. Rev. State. §§ 4-2-313 and 4-2.5-212)**
**(Plaintiff Linda Spry individually, and on behalf of the Colorado Class)**

293.    Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

294.    Plaintiff Spry brings this Count on behalf of the Colorado Class against Nissan.

295.    Nissan is and was at all relevant times "merchant[s]" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and a "seller[s]" of motor vehicles under § 4-2-103(1)(d).

296.    With respect to leases, Nissan was at all relevant times a "lessor[s]" of motor vehicles under Colo. Rev. Stat. § 4-2-.5-103(1)(p).

297.    The Class Vehicles are and were at all relevant times "goods' within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

298.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-212).

299.    These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purposed for which vehicles are used. Specifically, the Class Vehicles are inherently defective in that time.

300.   Nissan was provided notice language re notice of these issues by the investigations of federal regulators, numerous complaints filed against it including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of Class Vehicle defects became public.

301.   Nissan was and is in actual or constructive privity with Plaintiff and Colorado Class Members.

    (a)   Plaintiff and the Colorado Class Members had and continue to have sufficient direct dealings with Nissan and/or its authorized dealers, franchisees, representatives, and agents to establish any required privity of contract. Nissan's authorized dealers, franchisees, representatives, and agents were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles. The warranty agreements were designed for and intended to benefit only the ultimate purchasers and lessees of the Class Vehicles, i.e., Plaintiffs and the Colorado Class Members.

    (b)   Privity is not required to assert this claim because Plaintiff and the Colorado Class Members are intended third-party beneficiaries of contracts between Nissan and its dealers, franchisees, representatives, and agents.

    (c)   By extending express written warranties to end-user purchasers and lessees, Nissan brought itself into privity with Plaintiff and Colorado Class Members.

302.   At all relevant times, Colorado law imposed upon Nissan a duty that the sunroofs installed in the Class Vehicles were fit for the ordinary purposes for which panoramic sunroofs are used and that they pass without objection in the trade under the contract description.

303.    Nissan has not validly disclaimed, excluded, or modified the implied warranties or duties described above, and any attempted disclaimer or exclusion of the implied warranties was and is ineffectual.

304.    The sunroofs installed in the Class Vehicles were defective at the time they left Nissan's possession. Nissan knew of this defect at the time the purchase and lease transactions occurred. Thus, the sunroofs installed in the Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition or quality because they are not fit for their ordinary intended purpose and they do not pass without objection in the trade under the contract description.

305.    Nissan failed to inform Plaintiff and Colorado of the defective condition of the panoramic sunroofs. The failure to warn Plaintiff and Colorado Class Members of this defective condition constitutes a further breach by Nissan of the implied warranties of merchantability.

306.    Plaintiff and Colorado Class Members used the sunroofs installed in the Class Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Nissan or by operation of law in light of Nissan's unconscionable conduct.

307.    Nissan had actual knowledge of, and received timely notice regarding, the defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

308.    In addition, Nissan received, on information and belief, numerous consumer complaints and other notices from customers advising of the defect associated with the sunroofs installed in the Class Vehicles.

309.    By virtue of the conduct described herein, Nissan breached the implied warranty of merchantability.

FIFTH AMENDED CLASS ACTION COMPLAINT

310.    As a direct and proximate result of Nissan's breach of warranties, Plaintiff and Colorado Class Members suffered economic damage, including loss attributable to the diminished value of their Class Vehicles, loss of use of their Class Vehicles and other tangible property, as well as the monies spent and to be spent to repair and/or replace their sunroofs.

311.    Plaintiff and Colorado Class Members are entitled to legal and equitable relief against Nissan, including damages, consequential damages, specific performance, attorney fees, costs of suit, and such further relief as the Court may deem proper.

312.    As a direct and proximate result of the Nissan Defendants' breach of the implied warranty of merchantability, Plaintiffs and other Colorado Class members have been damaged in an amount to be proven at trial.

**<u>COUNT 11</u>**
**Violations of Florida's Deceptive And**
**Unfair Trade Practices Act ("FDUPTA")**
**(Fla. Stat. § 501.201, et seq.)**
**(Plaintiff Lisa Sullivan individually, and on behalf of the Florida Class)**

313.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

314.    Plaintiff Sullivan brings this action on behalf of themselves and the Florida Class against Nissan.

315.    Plaintiff and the Florida Class members are "consumers" within the meaning of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

316.    Defendants are engaged in "trade or commerce" within the meaning of Fla. Stat. §501.203(8).

317.    FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce ..." Fla. Stat. § 501.204(1). Defendants participated in unfair and deceptive trade practices that violated the FDUTPA as described herein.

318.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles.

319.   Nissan owed Plaintiff and the Florida Class a duty to disclose the foregoing panoramic sunroof defects and public health and safety risks of the Class Vehicles because they:

    a.   intentionally concealed the defects in the panoramic sunroofs from regulators, Plaintiff, Class members; and/or

    b.   made incomplete representations, purposefully withholding material facts from Plaintiffs that contradicted these representations.

320.   Because Nissan fraudulently concealed the true nature of the panoramic sunroofs, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Class Vehicles has greatly diminished.

321.   Nissan's fraudulent concealment of the true characteristics of the "panoramic sunroofs" was material to Plaintiff and the Florida Class.

322.   Nissans' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiff and Florida Class members, about the quality of the Nissan brand, the devaluing of integrity at Nissan, and the true value of the Class Vehicles.

323.   Plaintiff and the Florida Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and their concealment of and failure to disclose material information. Plaintiff and the Florida Class members who purchased or leased the Class Vehicles would not have purchased or leased the vehicles at all, or alternatively, would have paid less for them. Plaintiff and the Florida Class also suffered diminished value of their vehicles, as well as lost or diminished use.

FIFTH AMENDED CLASS ACTION COMPLAINT

324.    Defendants had an ongoing duty to all Nissan customers to refrain from unfair and deceptive practices under the FDUTPA. All owners of Class Vehicles suffered ascertainable loss in the form of the purchase or lease price as well as the diminished value of their vehicles as a result of Defendants' deceptive and unfair acts and practices.

325.    Plaintiff and Florida Class members risk irreparable injury as a result of Defendants ' acts and omissions in violation of the FDUTPA, and these violations present a continuing risk to Plaintiff as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

326.    As a direct and proximate result of Defendants ' violations of the FDUTPA, Plaintiff and the Florida Class have suffered injury-in-fact and/or actual damage.

327.    Plaintiff and the Florida Class are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

328.    Plaintiff also seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FDUTPA.

**COUNT 12**
**Violations of Illinois Consumer Fraud And Deceptive**
**Business Practices Act**
**(815 ILCS 505/1, *et. seq.* and 720 ILCS 295/1a)**
**(Plaintiff April Ahrens individually, and on behalf of the Illinois Class)**

329.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

330.    Plaintiff Ahrens brings this action on behalf of herself and the Illinois Class against Nissan.

331.    Defendants are "person[s]" as that term is defined in 815 ILCS 505/ l (c).

332.    Plaintiff and the Illinois Class are "consumers" as that term is defined in 815 ILCS 505/l(e).

333.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA")
prohibits "unfair or deceptive acts or practices, including but not limited to the use or
employment of any deception, fraud, false pretense, false promise, misrepresentation or  the
concealment, suppression or omission of any material fact, with intent that others rely upon
the concealment, suppression or omission of such material fact ... in the conduct of trade or
commerce ... whether any person has in fact been misled, deceived or damaged thereby." 815
ILCS 505/2.

334.     In the course of their business, including at the point of sale while attempting to persuade
potential customers to purchase Nissan vehicles, Nissan concealed, suppressed, and
intentionally omitted material facts concerning the Class Vehicles. Plaintiff and Illinois Class
members had no way of discerning that Nissan's representations were false and misleading.
Plaintiff and Illinois Class members did not and could not unravel Nissan's deception on their
own.

335.     Nissan thus violated the Act by, at minimum willfully failing to disclose and actively
concealing the manufacturing defect in the panoramic sunroofs.

336.     Nissan engaged in misleading, false, unfair or deceptive acts or practices that violated the
Illinois CFA by failing to disclose and actively concealing the manufacturing defect their
panoramic sunroofs.

337.     Nissan intentionally and knowingly misrepresented material facts regarding the Class
Vehicles with intent to mislead Plaintiff and the Illinois Class.

338.     Nissan knew or should have known that its conduct violated the Illinois CFA. Nissan owed
Plaintiff and the Illinois Class a duty to disclose the illegality and public health and safety risks
of the Class Vehicles because they:

a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles with a manufacturing defect throughout the United States;

b.   intentionally concealed the foregoing from regulators, Plaintiff, Illinois Class members; and/or

c.   made incomplete representations about the manufacturing defects in the Class Vehicles while purposefully withholding material facts from Plaintiff and Illinois Class members that contradicted these representations.

339.   Nissan concealed the manufacturing defects in their panoramic sunroofs resulting in a raft of negative publicity once the defects finally began to be disclosed. The value of the Class Vehicles has greatly diminished. In light of the stigma attached to those vehicles by Nissan's conduct, they are now worth significantly less than they otherwise would be worth.

340.   Nissan's fraudulent concealment of the true characteristics of their panoramic sunroofs was material to Plaintiff and the Illinois Class.

341.   Nissan's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiff, about the true quality of the Nissan brand, the devaluing of integrity at Nissan, and the true value of the Class Vehicles.

342.   Plaintiff and the Illinois Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Illinois Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or-if the Vehicles' true nature had been disclosed and mitigated, and would have paid significantly less for them. Plaintiff and Class members also suffered diminished value of their vehicles, as well as lost or diminished use.

FIFTH AMENDED CLASS ACTION COMPLAINT

343.   Nissan had an ongoing duty to all of their customers to refrain from unfair and deceptive practices under the Illinois CFA. All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Nissan's deceptive and unfair acts and practices made in the course of Nissan's business.

344.   Nissan's violations present a continuing risk to Plaintiff as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

345.   As a direct and proximate result of Defendants' violations of the Illinois CFA, Plaintiff and the Illinois Class have suffered injury-in-fact and/or actual damage.

346.   Pursuant to 815 I LCS 505/1Oa(a), Plaintiff and the Illinois Class seek monetary relief against Nissan in the amount of actual damages, as well as punitive damages because Nissan acted with fraud and/or malice and/or was grossly negligent.

347.   Plaintiff also seeks an order enjoining Nissan's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 50511 et seq.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves and the Classes request that the Court enter a judgment awarding the following relief:

A.   An order certifying the proposed classes and appointing Plaintiffs' counsel to represent the classes;

B.   An order awarding Plaintiffs and Class Members their actual damages, punitive damages, and/or any other form of monetary relief provided by law;

C.   An order awarding Plaintiffs and Class Members restitution, disgorgement, or other equitable relief as the Court deems proper because they lack an adequate remedy at law;

FIFTH AMENDED CLASS ACTION COMPLAINT

D.   An order requiring Nissan to adequately disclose and repair the defective panoramic sunroofs;

E.   An order awarding Plaintiffs and Class Members pre-judgment and post-judgment interest as allowed under the law;

F.   An order awarding Plaintiffs and Class Members reasonable attorneys' fees and costs of suit, including expert witness fees; and

G.   An order awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury all issues so triable under the law.

DATED:  March 25, 2022                         Respectfully submitted,

*s/Gregory F. Coleman*
Gregory F. Coleman (*pro hac vice*)
Mark E. Silvey (*pro hac vice*)
Adam A. Edwards (*pro hac vice*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
First Horizon Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone:  (865) 247-0080
Facsimile:  (865) 522-0049
gcoleman@milberg.com
msilvey@milberg.com
aedwards@milberg.com

Mitchell M. Breit*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Telephone: (516) 741-5600
mbreit@milberg.com

FIFTH AMENDED CLASS ACTION COMPLAINT

Crystal Foley (SBN 224627)
**SIMMONS HANLY CONROY LLC**
100 N. Sepulveda Blvd., Suite 1350
El Segundo, CA 90245
Telephone: (310) 322-3555
cfoley@simmonsfirm.com

***Attorneys for Plaintiffs***

FIFTH AMENDED CLASS ACTION COMPLAINT

1
2

### CERTIFICATE OF SERVICE
### *Sherida Johnson, et al., v. Nissan North America, Inc., et al.*
### USDC Court Case No. 3:17-cv-1012

3

     I am a citizen of the United States and employed in Knox County, Tennessee. I am over

4

the age of eighteen years and not a party to the within-entitled action. My business address is 800

5

S. Gay Street, Suite 1100, Knoxville, TN 37929.

6

     On March 25, 2022, I served the following document:

7
8

### FIFTH AMENDED CLASS ACTION COMPLAINT

9

     in this action by:

10

    ⊠     By CM/ECF NOTICE OF ELECTRONIC FILING.

11

     I electronically filed the document(s) with the Clerk of Court by using the CM/ECF system.

12

Participants in the case who are registered CM/ECF users will be served by CM/ECF system.

13

     I declare under penalty of perjury under the laws of the State of California that the

14

foregoing is true and correct, and that I am employed in the office of a member of the bar of this

15

Court at whose direction the service was made.

16

     Executed on March 25, 2022, at Knoxville, Tennessee

17
18
19
20

_____

21

**Mark Silvey**

22
23
24
25
26
27
28

FIFTH AMENDED CLASS ACTION COMPLAINT